1  Michael J. Bettinger (SBN 122196)
   mbettinger@sidley.com
2  SIDLEY AUSTIN LLP
   555 California Street, Suite 2000
3  San Francisco, California  94104-1715
   Telephone: (415) 772-1200
4  Facsimile: (415) 772-7400

5  Gordon D. Todd (*pro hac vice*)
   gtodd@sidley.com
6  Kimberly Leaman (*pro hac vice*)
   kimberly.leaman@sidley.com
7  SIDLEY AUSTIN LLP
   1501 K Street, N.W.
8  Washington, D.C. 20005
   Telephone: (202) 736-8000
9  Facsimile: (202) 736-8711

10 *Attorneys for Defendants*
   *JANSSEN BIOTECH, INC.,*
11 *JANSSEN ONCOLOGY, INC.,*
   *JANSSEN RESEARCH & DEVELOPMENT, LLC,*
12 *and JOHNSON & JOHNSON*

13                **UNITED STATES DISTRICT COURT**

14              **NORTHERN DISTRICT OF CALIFORNIA**

                  **SAN FRANCISCO DIVISION**
15

16 | UNITED STATES OF AMERICA, STATES | Case No.: 3:17-cv-07250-JST |
   | OF CALIFORNIA, COLORADO, | |
17 | CONNECTICUT, DELAWARE, FLORIDA, | |
   | GEORGIA, HAWAII, ILLINOIS, INDIANA, | **DEFENDANTS' NOTICE OF MOTION,** |
18 | IOWA, LOUISIANA, MICHIGAN, | **MOTION, AND MEMORANDUM OF** |
   | MINNESOTA, MONTANA, NEVADA, | **POINTS AND AUTHORITIES IN** |
   | NEW JERSEY, NEW MEXICO, NEW | **SUPPORT OF MOTION TO TRANSFER** |
19 | YORK, NORTH CAROLINA, OKLAHOMA, | **VENUE UNDER 28 U.S.C. § 1404(a)** |
   | RHODE ISLAND, TENNESSEE, TEXAS, | |
20 | VERMONT, AND WASHINGTON; THE | Judge: Hon. Jon S. Tigar |
   | COMMONWEALTHS OF | Date:  April 4, 2019 |
21 | MASSACHUSETTS AND VIRGINIA; and | Time:  2:00 P.M. |
   | THE DISTRICT OF COLUMBIA, | Place:  Courtroom 9, 19th Floor, Phillip Burton |
22 | | Federal Building |
   | *ex rel.* ZACHARY SILBERSHER, | |
23 | | |
   |               Plaintiffs, | |
24 | | |
   |         vs. | |
25 | | |
   | JANSSEN BIOTECH, INC., JANSSEN | |
26 | ONCOLOGY, INC., JANSSEN RESEARCH | |
   | & DEVELOPMENT, LLC, and JOHNSON & | |
27 | JOHNSON, | |
   | | |
28 |               Defendants. | |

                                    i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................iii

NOTICE OF MOTION AND MOTION .................................................................................v

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................................1

    I.       INTRODUCTION ......................................................................................1

    II.      STATEMENT OF ISSUE TO BE DECIDED...........................................1

    III.    BACKGROUND ........................................................................................1

    IV.    LEGAL STANDARD.................................................................................3

    V.      ARGUMENT ..............................................................................................3

            A.     This Case "Might Have Been Brought" In The District Of New Jersey. ..........3

            B.     The Relevant Factors Support Transfer. ..........................................................3

                  1.     Familiarity With The Governing Law. ................................................4

                  2.     Plaintiff's Choice Of Forum. ..............................................................4

                  3.     The Parties' Contacts With The Chosen Forum. .................................5

                  4.     The Cause Of Action's Contacts With The Chosen Forum...................6

                  5.     The Costs Of Litigation. ......................................................................7

                  6.     The Ease Of Access To Evidence. .......................................................7

                  7.     Public Policy Of Promoting Judicial Economy. .................................7

                  8.     All Factors Taken Together. ................................................................8

    VI.    CONCLUSION...........................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States ex rel. Adrian v. Regents of Univ. of Cal.*,
  No. 99-cv-3864, 2002 WL 334915 (N.D. Cal. Feb. 25, 2002) ....................................1, 4

*BTG Int'l, Ltd. et al. v. Amneal Pharm. LLC, et al*,
  No. 2:15-cv-05909-KM-JBC (D.N.J. Oct. 31, 2018) ..........................................2, 7

*Eli Lilly & Co. v. Genentech, Inc.*,
  No. 13-cv-0919, 2013 WL 4396718 (N.D. Cal. Aug. 13, 2013) ...............................7, 8

*Hatch v. Reliance Ins. Co.*,
  758 F.2d 409 (9th Cir. 1985) ......................................................................3

*Jones v. GNC Franchising, Inc.*,
  211 F.3d 495 (9th Cir. 2000) ...............................................................3, 7, 8

*United States ex rel. Modglin v. DJO Glob. Inc.*,
  48 F. Supp. 3d 1362 (C.D. Cal. 2014) ............................................................6

*U.S. ex rel. Ogawa v. Rieadco Corp.*,
  No. C-10-04578-JW, 2011 WL 7293397 (N.D. Cal. Apr. 7, 2011) ...........................3, 4

*Panetta v. SAP America, Inc.*,
  No. 05-cv-1696, 2005 WL 1774327 (N.D. Cal. July 26, 2005) ...............................5, 6

*San Francisco Tech. v. The Glad Prod. Co.*,
  No. 10-cv-00966, 2010 WL 2943537 (N.D. Cal. July 26, 2010) ......................... *passim*

*Sandoval v. Redfin Corp.*,
  No. 14-4444-SC, 2015 WL 65085 (N.D. Cal. Jan. 5, 2015)......................................7

*Seely v. Cumberland Packing Corp.*,
  No. 10-CV-02019-LHK, 2010 WL 5300923 (N.D. Cal. Dec. 20, 2010) ..................4, 5

*Tarasovsky v. Guardian Life Ins. Co. of Am.*,
  No. 17-cv-03464, 2017 WL 5495822 (N.D. Cal. Nov. 16, 2017) ...........................3, 5

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011)....................................................................8

*United States v. Cmty. Recovery Res., Inc.*,
  No. 13-cv-01004, 2017 WL 2257175 (E.D. Cal. May 23, 2017) ...............................4

*United States v. Loving Care Agency, Inc.*,
  226 F. Supp. 3d 357 (D.N.J. 2016) ...............................................................4

iii

*Van Dusen v. Barack*,
  376 U.S. 612 (1964) ................................................................................................3

*West v. Quality Gold, Inc.*,
  No. 11-cv-02531, 2012 WL 1067558 (N.D. Cal. Mar. 28, 2012) ...................................4

**Statutes**

28 U.S.C. § 1404(a) ...........................................................................................v, 1, 3

31 U.S.C. § 3729 ..................................................................................................1

31 U.S.C. § 3732(a) ..............................................................................................3

Federal False Claims Act ...................................................................................4, 6, 7

Hatch-Waxman Act .............................................................................................2

iv

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

      PLEASE TAKE NOTICE THAT on April 4, 2019 at 2:00 p.m., or as soon thereafter as the matter may be heard in the above-entitled Court located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendants Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, and Johnson & Johnson will, and they hereby do, move to transfer venue of this case to the United States District Court for the District of New Jersey.

      This motion is brought under 28 U.S.C. § 1404(a) and is based on this notice and the accompanying memorandum of points and authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, and Johnson & Johnson ("J&J") (collectively, "Defendants") respectfully move pursuant to 28 U.S.C. § 1404(a) to transfer this action to the District of New Jersey.

## I.      INTRODUCTION

This is a *qui tam* action brought under the federal False Claims Act ("FCA"), 31 U.S.C. § 3729, and similar state laws, in which the federal and state governments have declined to intervene.  Ordinarily, a *qui tam* relator's "choice of forum is *not* given substantial weight."  *United States ex rel. Adrian v. Regents of Univ. of Cal.*, No. 99-cv-3864, 2002 WL 334915, at *3 (N.D. Cal. Feb. 25, 2002).  This rule has particular purchase in this case where the *only* apparent connection to this District is Relator's *lawyers*—not even Plaintiff-Relator Zachary Silbersher ("Relator") himself—a connection that has repeatedly been rejected as immaterial for establishing venue.  The case's ties to the District of New Jersey, on the other hand, are overwhelming.  Two defendants, much of the underlying conduct, potential documentary evidence, and likely witnesses are all located in New Jersey, and Relator himself is located adjacently in New York City.  Even more compelling, District of New Jersey Judge Kevin McNulty just concluded a trial concerning the same underlying subject matter as this action, J&J's patent rights in its anti-cancer drug, Zytiga®.  Transfer would therefore promote judicial economy, avoid unnecessarily duplicative work, and be less burdensome for the parties and witnesses.  For all these reasons, the Court should transfer the case to New Jersey.

## II.      STATEMENT OF ISSUE TO BE DECIDED

Whether this Court should transfer the case to the United States District Court for the District of New Jersey where most of the relevant factors under 28 U.S.C. § 1404(a) strongly favor transfer and none of the factors weigh against it?

## III.      BACKGROUND

Relator, a patent law attorney in private practice in New York City, alleges that Defendants violated the FCA and similar state laws, when providing pricing information for Zytiga® to the government in connection with direct government sales and government-funded drug

1

1   reimbursement programs.  Am. Compl., ECF No. 7, ¶¶ 104–10.  Specifically, Relator alleges that

2   Defendants falsely represented Zytiga® prices as being "fair and reasonable" when in fact the

3   prices had been "artificially inflated" after J&J barred potentially cheaper generic drugs from the

4   market by improperly securing a patent for Zytiga®.  J&J secured that patent, Relator claims,

5   through fraudulent representations or omissions to the Patent and Trademark Office ("PTO")

6   during patent prosecution.  *Id.* ¶ 93.  Needless to say, Defendants dispute vigorously both Relator's

7   legal theory and his factual claims, but those issues are for another day.

8          This is not the first case to consider J&J's Zytiga® patent.  This past year, the District of

9   New Jersey held a trial in a patent infringement action under the Hatch-Waxman Act, *see BTG*

10  *Int'l, Ltd. et al. v. Amneal Pharm. LLC, et al*, No. 2:15-cv-05909-KM-JBC (D.N.J. Oct. 31, 2018),

11  where the court studied carefully the mechanics of the patent and its prosecution history, including

12  the questions of "commercial success" that are central to Relator's theory of fraud on the PTO.

13  That case concluded at the end of October 2018 and is currently on appeal at the United States

14  Court of Appeals for the Federal Circuit.  *See* Plaintiffs' Notice of Appeal, *BTG Int'l, Ltd. et al. v.*

15  *Amneal Pharm. LLC, et al*, No. 2:15-cv-05909-KM-JBC (D.N.J. Oct. 31, 2018), ECF No. 573.

16  Additionally, the Patent Trial and Appeal Board entertained five *inter partes* review petitions

17  seeking review of that same Zytiga® patent, several of which decisions have been consolidated

18  with the New Jersey action for review by the Federal Circuit.

19         Relator's suit followed this well-worn and very public path to litigation.  Relator filed this

20  *qui tam* action on behalf of the federal government and twenty-nine States in December 2017—

21  more than two years *after* the institution of the New Jersey patent infringement case and the filing

22  of the first of five *inter partes* review petitions, while the last of the five petitions predated

23  Relator's lawsuit by approximately ten months.  The United States declined to intervene.  *See*

24  Gov't's Notice of Election to Decline Intervention, ECF No. 6.  Every named State likewise

25  declined to intervene.[1]  *See* States' Notice of Election to Decline Intervention, ECF No. 9.

26  Accordingly, the Court unsealed Relator's Amended Complaint on October 30, 2018.

27  _____

[1] Upon the State of Maryland's notice to decline intervention, and in accordance with Maryland state

28  law, the claims brought on behalf of Maryland were dismissed without prejudice, leaving just

1

## IV.    LEGAL STANDARD

Section 1404 provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought …." 28 U.S.C. § 1404(a).  That entails a two-step inquiry.  *U.S. ex rel. Ogawa v. Rieadco Corp.*, No. C-10-04578-JW, 2011 WL 7293397, at *1 (N.D. Cal. Apr. 7, 2011).  First, the court must decide whether the action "might have been brought" in the transferee court.  *See id.*  Second, and if so, the court undertakes an "individualized, case-by-case consideration of convenience and fairness when weighing [ ] various factors."  *Tarasovsky v. Guardian Life Ins. Co. of Am.*, No. 17-cv-03464, 2017 WL 5495822, at *2 (N.D. Cal. Nov. 16, 2017); *see also, e.g.*, *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985) (same).  The statute is designed to "prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barack*, 376 U.S. 612, 616 (1964).

## V.    ARGUMENT

Both steps of the venue inquiry are readily satisfied here:  this case could have been brought in New Jersey; and the balance of factors firmly favors transfer to that District.

### A.  This Case "Might Have Been Brought" In The District Of New Jersey.

There should be no serious question that the case could have been brought in New Jersey.  The FCA's broad venue provision states that such an action "may be brought in any judicial district in which the defendant, or in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any fact proscribed by 3729 occurred."  31 U.S.C. § 3732(a).  Among other things, J&J is based in New Jersey, Am. Compl. ¶ 23, which by itself is sufficient.

### B.  The Relevant Factors Support Transfer.

The Ninth Circuit has articulated a list of eight factors to consider in the second step of the transfer analysis:  "(1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the

---

twenty-eight States.  *See* States' Notice of Election to Decline Intervention, ECF No. 9, p. 2; Md. Code Ann., Health Gen, § 2-604(a)(7).

respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel the attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).  In addition, "the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing." *Id.*

Factors (1) and (7) are inapplicable:  there are no relevant agreements or known unwilling non-party witnesses in this action.  The remaining factors make clear that this case has no valid connection to the Northern District of California but has many strong connections to New Jersey.

### 1.   Familiarity With The Governing Law.

This factor is neutral.  Relator asserts claims under the federal False Claims Act, which this Court and the District of New Jersey are "equally capable" of addressing.  *See West v. Quality Gold, Inc.*, No. 11-cv-02531, 2012 WL 1067558, at *3 (N.D. Cal. Mar. 28, 2012); *San Francisco Tech. v. The Glad Prod. Co.*, No. 10-cv-00966, 2010 WL 2943537, at *6 (N.D. Cal. July 26, 2010) (finding one federal court "is not necessarily better able to apply the false marking statute than federal courts in other districts").  The additional state-law claims do not change that conclusion: Relator has asserted claims under California and New Jersey law, which both simply mirror their federal counterpart.  *See, e.g.*, *United States v. Cmty. Recovery Res., Inc.*, No. 13-cv-01004, 2017 WL 2257175, at *15, n.5 (E.D. Cal. May 23, 2017) ("courts rely on federal decisions as persuasive authority in interpreting both the state and federal provisions"); *United States v. Loving Care Agency, Inc.*, 226 F. Supp. 3d 357, 363–64 (D.N.J. 2016) (New Jersey statute "is nearly identical to the federal statute and thus requires the same showings").

### 2.   Plaintiff's Choice Of Forum.

Relator's choice of forum is "entitled to little deference."  *Ogawa*, 2011 WL 7293397, at *2; *San Francisco Tech.*, 2010 WL 2943537, at *7 (collecting cases).  Unlike ordinary plaintiffs, whose choice of forum generally receives considerable deference, "a plaintiff's choice of forum is *not* given substantial weight when the plaintiff is a *qui tam* relator."  *Adrian*, 2002 WL 334915, at *3. That is because a *qui tam* plaintiff is just "one of many potential plaintiffs, all equally entitled

1  voluntarily to invest themselves with the cause of action and all of whom could with equal show of

2  right go into their many home courts."  *Seely v. Cumberland Packing Corp.*, No. 10-CV-02019-

3  LHK, 2010 WL 5300923, at *3 (N.D. Cal. Dec. 20, 2010) (quotations omitted) (collecting cases).

4  Not only that, but Relator's allegations stem from "products at issue [that] could have been

5  purchased anywhere the product is sold, meaning anywhere in the United States," further

6  diminishing the significance of his chosen forum. *Id.* (granting "limited deference" in such

7  circumstances).  And "[d]eference to plaintiff's choice of forum is … significantly diminished when

8  plaintiff initiates an action in a state in which he … is not a resident."  *Panetta v. SAP America, Inc.*,

9  No. 05-cv-1696, 2005 WL 1774327, at *5 (N.D. Cal. July 26, 2005).  This factor therefore does not

10  weigh against transfer.

11                          **3.   The Parties' Contacts With The Chosen Forum.**

12          This factor favors New Jersey for both Relator and Defendants.  For his part, Relator himself

13  is a citizen of New York, just a stone's throw from New Jersey.  More than that, Relator appears to

14  be based in New York City, which is a mere ten miles from Newark, New Jersey—where the earlier

15  patent infringement case took place.  By contrast, Relator has no apparent connection to the

16  Northern District of California.  Relator's contacts and location, if anything, favor New Jersey.  *See*

17  *Tarasovsky*, 2017 WL 5495822, at *2 (finding that this factor favors transfer when plaintiff "lives in

18  New Jersey and has not lived in this district for roughly six years," and "failed to show that he has

19  any contacts, apart from his counsel, with this forum").  This suit's only discrete connection to this

20  District is the "the location of plaintiff's counsel," which "is immaterial to a determination of the

21  convenience and justice of a particular forum."  *Panetta*, 2005 WL 1774327, at *5.

22          Defendants' contacts with New Jersey likewise outweigh any contacts with the Northern

23  District of California.  J&J is incorporated and has its principal place of business in New Jersey.

24  Defendant Janssen Research & Development is likewise headquartered in New Jersey.  Neither of

25  the other two subsidiary defendants has any connection to this District:  one is incorporated in

26  Pennsylvania, and the other in Delaware.  Am. Compl. ¶¶ 20–23.  The complaint alleges that J&J—

27  again, based in New Jersey—is the party that "filed" with the PTO the documents that underlie

28  Relator's claims.  *Id.* ¶ 23.  The only contact with this forum is the fact that Zytiga® was sold in the

1   Northern District of California as part of its nationwide distribution—a fact that does not favor this

2   District over any other.  This factor thus "weighs in favor of Defendants, as their respective contacts

3   with California are dwarfed by their contacts with the forum[ ] to which they move to transfer."  *San

4   *Francisco Tech.*, 2010 WL 2943537, at *8.

5                      **4.   The Cause Of Action's Contacts With The Chosen Forum.**

6          This factor likewise favors transfer, as Relator's claims have no connection to this District

7   but copious connections to New Jersey.

8          An FCA claim "requires four essential elements:  (1) a false statement or fraudulent course

9   of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out

10  money or forfeit moneys due."  *United States ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d

11  1362, 1386 (C.D. Cal. 2014).  None of Relator's allegations shares anything more than incidental

12  contact (through nationwide sales) with the Northern District of California.  The complaint itself,

13  however, alleges New-Jersey-based contacts for several elements of the cause of action.  Relator

14  alleges that J&J was the entity to "file[ ] false, misleading, and fraudulent documents with the

15  USPTO," Am. Compl. ¶ 23, and J&J is based in New Jersey.  In other words, on its face Relator's

16  complaint pleads conduct tied to New Jersey, but no corresponding conduct relating to the Northern

17  District of California.  Nor could it.  The two attorneys responsible for prosecuting the patent were

18  both located in New Jersey in June 2013, the time at which the alleged fraud occurred.  *Id.* ¶¶ 75–

19  77, 80 (alleging misstatements and/or omissions in a June 4, 2013 submission to the PTO); *see also*

20  Declaration of Harman A. Grossman In Support Of Defendants' Motion to Transfer Venue

21  ("Grossman Decl.") ¶¶ 11–12.  Additionally, the J&J employees involved in calculating and

22  submitting pricing information to the government in advance of Zytiga®'s participation in

23  government-funded drug programs were also located in New Jersey in 2017, which appears to be

24  the relevant time period.  *See* Am. Compl. ¶¶ 12–13 (referring to payments and reimbursements for

25  Zytiga® in 2017); *see also* Grossman Decl. ¶¶ 18–21.  This factor strongly favors transfer.  *See,*

26  *e.g.*, *San Francisco Tech.*, 2010 WL 2943537, at *8 (favoring transfer when, among other things,

27  employees making the relevant decisions were "located outside of the Northern District of

28  California").

### 5.   The Costs of Litigation.

Litigation would be less costly in New Jersey.  The allegations focus on conduct of a New Jersey entity (J&J), and there is no allegation that *any* witness or evidence, putting aside an unspecified number of allegedly false claims, is located in this District.  Although Relator does not actually live in New Jersey, he "is no more inconvenienced as a potential witness by a [New Jersey] forum than by a California forum," and New Jersey is in fact *much* "closer to his home state" of New York.  *Panetta*, 2005 WL 1774327, at *4–5.

### 6.   The Ease Of Access To Evidence.

This factor also favors transfer, for many of the same reasons.  Relator's complaint makes J&J the principal party of interest, and the teams responsible for submitting the relevant pricing information to the government and for prosecuting the Zytiga® patent are both primarily located in New Jersey.  *See* Grossman Decl. ¶¶ 10–13, 17–21.  None of the relevant witnesses are located in this District.  For example, one of the patent prosecution attorneys and the J&J employees tasked with providing pricing information for Zytiga® are presently located in New Jersey.  *See id.* ¶¶ 12, 18–22.  The PTO is located outside Washington, D.C., and New Jersey is also much closer to the PTO than this District.  Litigating the matter in New Jersey would thus permit better access to potentially relevant documents or witnesses.  *See Jones*, 211 F.3d at 499 (favoring forum where "more of the relevant witnesses and other sources of proof" were located).

### 7.   Public Policy Of Promoting Judicial Economy.

The final consideration for transfer is the policy of the forum state, if any.  *Jones*, 211 F.3d at 99.  California has a "public policy of judicial economy and the avoidance of inconsistent judgments."  *San Francisco Tech.*, 2010 WL 2943537, at *12.  In fact, this policy has been described as "paramount" and often outcome determinative.  *Eli Lilly & Co. v. Genentech, Inc.*, No. 13-cv-0919, 2013 WL 4396718, at *6 (N.D. Cal. Aug. 13, 2013).  To promote the policy whenever possible, an "important consideration" is "the pendency of a related case in the transferee forum."  *Sandoval v. Redfin Corp.*, No. 14-4444-SC, 2015 WL 65085, at *2 (N.D. Cal. Jan. 5, 2015); *see also San Francisco Tech.*, 2010 WL 2943537, at *12 (fact that defendant was litigating a related action in transferee forum favored transfer).

7

This too favors transfer.  The validity of the patent in question has been the subject of extensive litigation in the District of New Jersey.  *See BTG Int'l, Ltd. et al v. Amneal Pharm. LLC, et al.*, No. 2:15-cv-05909-KM-JBC (D.N.J. Oct. 31, 2018).  That case involved a two-week bench trial, post-trial briefing, and a 72-page opinion examining the evidence and setting forth findings of fact and conclusions of law.  Judge McNulty in New Jersey—who ruled *against* J&J on the merits—is thus well-versed in the underlying patent, the patent prosecution record, and the "commercial success" of J&J's patented invention, all of which feature in Relator's FCA theory. Assessing Relator's claims of fraud on the PTO, moreover, requires an evaluation of the materiality of each alleged misstatement or omission to the overall issuance of the patent.  *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291–92 (Fed. Cir. 2011).  The New Jersey court's "working familiarity" with the underlying patent would therefore aid in the fair and expeditious disposition of the instant case and conserve judicial resources.  *Eli Lilly*, 2013 WL 4396718, at *6; *see also San Francisco Tech.*, 2010 WL 2943537, at *12 (finding in favor of transfer).  This factor provides an emphatic final point in support of transfer.

### 8.  All Factors Taken Together.

The tally of all *Jones* factors together is powerful:  five (party and cause of action contacts with the forum, costs of litigation, ease of access to evidence, and policy of judicial economy) firmly support transfer; one (familiarity with governing law) is neutral; one (Relator's choice of forum) is entitled to little or no weight; and two are inapplicable.  In short, this case belongs in New Jersey.

## VI.   CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion and transfer this case to the District of New Jersey.

Dated: February 12, 2019

By:  /s/ *Michael J. Bettinger*
　　　Michael J. Bettinger (SBN 122196)
　　　mbettinger@sidley.com
　　　SIDLEY AUSTIN LLP
　　　555 California Street, Suite 2000
　　　San Francisco, California  94104-1715
　　　Telephone: (415) 772-1200

1

Facsimile: (415) 772-7400

2

Gordon D. Todd (*pro hac vice*)
gtodd@sidley.com

3

Kimberly Leaman (*pro hac vice*)
kimberly.leaman@sidley.com

4

SIDLEY AUSTIN LLP
1501 K Street N.W.

5

Washington, D.C. 20005
Telephone: (202) 736-8000

6

Facsimile: (202) 736-8711

7

*Attorneys for Defendants*
*JANSSEN BIOTECH, INC.,*

8

*JANSSEN ONCOLOGY, INC.,*
*JANSSEN RESEARCH & DEVELOPMENT,*

9

*LLC, and JOHNSON & JOHNSON*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9