Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Nicomedes Sy Herrera (State Bar No. 275332)
Kevin Rayhill (State Bar No. 267496)
Kyla Gibboney (State Bar No. 301441)
Anupama K. Reddy (State Bar No. 324873)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
        swilliams@saverilawfirm.com
        nherrera@saverilawfirm.com
        jchen@saverilawfirm.com
        krayhill@saverilawfirm.com
        kgibboney@saverilawfirm.com
        asatyasai@saverilawfirm.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA; STATES OF CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VERMONT, AND WASHINGTON; THE COMMONWEALTHS OF MASSACHUSETTS AND VIRGINIA; AND THE DISTRICT OF COLUMBIA,<br><br>*ex rel.* ZACHARY SILBERSHER,<br><br>                Plaintiffs,<br><br>       v.<br><br>JANSSEN BIOTECH, INC., JANSSEN ONCOLOGY, INC., JANSSEN RESEARCH & DEVELOPMENT, LLC, and JOHNSON & JOHNSON,<br><br>                Defendants. | Case No. 3:17-cv-07250-JST<br><br>**PLAINTIFF-RELATOR'S OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a) (ECF NO. 30)**<br><br>Judge: Hon. Jon S. Tigar<br><br>Date: Originally noticed for April 4, 2019<br>      Stipulated date for April 18, 2019<br><br>Time: 2:00 p.m.<br><br>Place: Courtroom 9, 19th Floor, Phillip Burton Federal Building |

# **TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION .................................................................................................1

II.   BACKGROUND ..................................................................................................3

    A.   Defendants' Fraudulent Scheme .................................................................3

    B.   Many of The Underlying Facts Took Place in California................................6

III.  ARGUMENT .......................................................................................................8

    A.   Legal Standard ...........................................................................................8

    B.   Defendants Have Not Made A Requisite Strong Showing That It Is Inconvenient for Them to Litigate in This District ...........................................................9

    C.   The Convenience of The Witnesses Favors This District ...............................9

    D.   The *Jones* Factors Favor Maintaining Venue in the Northern District of California...... 10

        1.   Location Where the Relevant Agreements Were Negotiated and Executed Favors This District .......................................................... 10

        2.   Courts' Familiarity With the Law is Neutral .....................................11

        3.   Plaintiffs' Choice of Forum Should Be Accorded Deference ...............11

        4.   The Respective Parties' Contacts With This Forum Is Neutral .............13

        5.   The Contacts Relating to the Plaintiff's Causes of Action in The Chosen Forum Favors This District ....................................................13

        6.   The Difference in The Costs of Litigation Favors This District ..........13

        7.   The Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses is Neutral...........................................14

        8.   The Ease of Access to Sources of Proof is Neutral...............................14

        9.   Public Policy Considerations Favor This District ...............................15

        10.  The Relative Court Congestion and Time of Trial in Each Forum Favors This District.................................................................................15

IV.   CONCLUSION ..................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU of N. Cal. v. Burwell*, No. 16-cv-03539-LB, 2017 U.S. Dist. LEXIS 65285 (N.D. Cal. Apr. 28, 2017) ....................................................................................................... 9

*U.S. ex rel. Adrian v. Regents of Univ. of California*, No. C 99-3864 TEH, 2002 WL 334915 (N.D. Cal. Feb. 25, 2002), aff'd, 363 F.3d 398 (5th Cir. 2004) ......................... 12

*Amerigen Pharms. Ltd. v. Janssen Oncology, Inc* (IPR2016-00286) ................................. 3, 5, 14

*U.S. ex rel. Brooks v. Stevens-Henager Coll., Inc.*, No. 1:13-CV-00009-BLW, 2015 WL 758988 (D. Idaho Feb. 23, 2015) ....................................................................................... 10

*United States* ex rel. *Campie v. Gilead Scis., Inc.*, 862 F.3d 890 (9th Cir. 2017) ...................... 11

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986) ....................... 1, 8

*Earth Island Inst. v. Quinn*, 56 F. Supp. 3d 1110 (N.D. Cal. 2014) ........................................... 8

*Eli Lilly & Co. v. Genentech, Inc.*, No. 13-CV-0919 YGR, 2013 U.S. Dist. LEXIS 114460 (N.D. Cal. Aug. 13, 2013) ............................................................................................... 11

*Ellis v. Costco Wholesale Corp.*, 372 F. Supp. 2d 530 (N.D. Cal. 2005) (*overruled in part on other grounds*, 657 F.3d 970 (9th Cir. 2011)) ................................................................. 11, 12

*Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086 (N.D. Cal. 2002) ............... 9, 10

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ...................................................................... 1, 8

*Hendricks v. StarKist Co.*, 2014 WL 1245880 (N.D. Cal. Mar. 25, 2014) ................................. 3

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) ............................................ 8, 10

*Miracle v. N.Y.P. Holdings, Inc.*, 87 F. Supp. 2d 1060 (D. Haw. 2000) ..................................... 9

*Panetta v. SAP Am., Inc.*, No. C0501696RMW, 2005 WL 1774327 (N.D. Cal. July 26, 2005) .......................................................................................................................................... 9

*United States ex rel. Poehling v. Unitedhealth Grp., Inc.*, No. CV1608697MWFSSX, 2017 WL 10316266 (C.D. Cal. Sept. 28, 2017) ......................................................................... 14

*Seely v. Cumberland Packing Corp.*, No. 10-CV-02019-LHK, 2010 WL 5300923 (N.D. Cal. Dec. 20, 2010) .................................................................................................... 12, 13

## TABLE OF AUTHORITIES (cont.) Page(s)

*U.S.,* ex rel. *Solis v. Millennium Pharm., Inc.*, No. 2:09-CV-03010-MCE, 2015 WL 1469166 (E.D. Cal. Mar. 30, 2015)................................................................2

*STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551 (N.D. Cal. 1988) ...............................11

*United States v. Acad. Mortg. Corporation*, No. 16-CV-02120-EMC, 2018 WL 4053484 (N.D. Cal. Aug. 24, 2018), *motion to certify appeal denied*, No. 16-CV-02120-EMC, 2018 WL 6592782 (N.D. Cal. Dec. 14, 2018) ...................................... 14

*Wellens v. Daiichi Sankyo Co.*, No. C 13-00581 CW, 2013 U.S. Dist. LEXIS 89831 (N.D. Cal. June 25, 2013) ...................................................................*passim*

### Federal Statutes

28 U.S.C. § 1391................................................................................................ 2, 12

28 U.S.C. § 1404(a)...........................................................................................1, 7, 8

31 U.S.C. § 3729(a)(1)(A) ..................................................................................... 2

31 U.S.C. § 3729(a)(1)(B) ..................................................................................... 2

31 U.S.C. § 3731(a)............................................................................................ 14

31 U.S.C. § 3732.................................................................................................. 2

31 U.S.C. § 3732(a)............................................................................................11

35 U.S.C. 103.................................................................................................... 4

### State Statutes

Cal. Gov't Code §§ 12650–12656........................................................................ 12

### Regulations

37 C.F.R. § 1.56 ................................................................................................. 1

RELATOR'S OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(A) (ECF NO. 30)

Plaintiff-Relator Zachary Silbersher ("Relator"), on behalf of himself and the United States of America; the States of California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Michigan, Minnesota, Montana, Nevada, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Vermont, and Washington; the Commonwealths of Massachusetts and Virginia; and the District of Columbia (the foregoing states, commonwealths and the District of Columbia collectively, "the Plaintiff States"), responds to Defendants' Motion to Transfer Venue ("Motion"), as follows:

## I.     Introduction

Defendants Janssen Biotech, Inc. Janssen Oncology Inc., Janssen Research & Development LLC, and Johnson & Johnson (collectively, "Defendants") seek to transfer the venue of this action to the District of New Jersey. Under 28 U.S.C. §1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a).

Defendants bear the burden of demonstrating "a strong showing of inconvenience" to justify transfer under § 1404(a). *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Unless "the balance is strongly in favor" of transfer, Defendants motion should be denied. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). Defendants have not met their burden of proof in justifying the necessity of the transfer.

The First Amended Complaint ("FAC") alleges that Defendants caused the submission of false claims for payment of their blockbuster drug, Zytiga® (abiraterone acetate) ("Zytiga"). Zytiga costs over $9,000 per month and generates $2 billion in annual revenue for Defendants, most of it paid for by government health funds. (FAC, ¶¶ 2-3) Relator alleges that Defendants fraudulently obtained U.S. Patent 8,822,438 ("the '438 Patent") unlawfully to exclude generic competitors from offering a lower-priced generic alternative to Zytiga, thereby inflating the price by 650%. (FAC, ¶ 54) In particular, the FAC alleges that Defendants fraudulently obtained the '438 Patent by knowingly making material misrepresentations to the United States Patent Office ("USPTO") in prosecuting the patent application—even though Defendants had an affirmative, statutory duty of "candor and good faith" to

the USPTO under 37 C.F.R. § 1.56. (FAC, ¶¶ 64, 67-77) To qualify Zytiga for payment from government health programs, Defendants listed Zytiga on the Federal Supply Schedule ("FSS"). In doing so, Defendants expressly and impliedly represented that Zytiga prices were "fair and reasonable." As Relator alleges, Defendants knew the pricing was not "fair and reasonable" because Defendants artificially inflated them using a fraudulently obtained patent to exclude competitors.[1] (FAC, ¶¶ 104-112)

Because of Defendant's fraudulent course of conduct, the federal government and the Plaintiff States, including California, paid thousands of false claims for Zytiga. Because the bulk of the false claims violating the False Claims Act occurred and were paid for in California (including through Medi-Cal)—more than six times the number of false claims made in New Jersey—California has a stronger public interest in having this action pursued in this district.

Other factors favor maintaining the action here, including the convenience of the witnesses. Many of the key witnesses (including non-party witnesses) are located in California, and they would be far more burdened by a transfer to New Jersey. Plaintiffs' choice of forum is also due considerable deference. This is particularly true where, as here, the venue provision in the False Claims Act, 31

---

[1] Relator alleges that Defendants violated the False Claims Act in three ways.

First, Defendants caused false or fraudulent claims for payment of Zytiga to be submitted because those claims sought payment for prices that Defendants knew were artificially inflated through Defendants' unlawful conduct, even though Defendants had represented the prices were "fair and reasonable." *See* 31 U.S.C. § 3729(a)(1)(A) (any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" violates the False Claims Act).

Second, many states require or permit pharmacists to substitute available generic unless the prescription specifically requires that a brand drug be dispensed. (FAC ¶ 56, 99) But for Defendants' misrepresentations, approximately 90% or more of the Zytiga subscriptions paid or reimbursed through government health programs would have instead been for significantly lower-priced generic Zytiga. (FAC ¶¶ 56, 99, 101) Each claim for payment or reimbursement for Zytiga that would have been substituted for a less expensive generic equivalent therefore constituted a false claim, similar to situations where drug prescriptions are procured through anti-competitive conduct, such as through unlawful kickbacks. *See, e.g.,* 31 U.S.C. § 3729(a)(1)(A); *U.S.,* ex rel. *Solis v. Millennium Pharm., Inc.*, No. 2:09-CV-03010-MCE, 2015 WL 1469166, at *6 (E.D. Cal. Mar. 30, 2015).

Third, Defendants fraudulently obtained the '438 Patent through misrepresentations and omissions of material fact to the USPTO in violation of Defendants' affirmative duties of good faith and candor. Those misrepresentations and omissions constituted "false records or statements material to a false or fraudulent claim" for Zytiga. 31 U.S.C. § 3729(a)(1)(B).

U.S.C. § 3732, is more permissive than the general venue statute in 28 U.S.C. § 1391. The case is also more likely to reach a speedy conclusion in this district.

Defendants' motion relies on two primary arguments. First, Defendants say that the headquarters of the parent corporation (Johnson & Johnson) and another defendant is in New Jersey. (Motion, PP. 1, 5-6) That is insufficient to justify transfer, because "[c]ourts give less consideration to the convenience of party witnesses or witnesses employed by a party because these witnesses can be compelled by the parties to testify regardless of where the litigation will occur." *Hendricks v. StarKist Co.*, 2014 WL 1245880, at *3 (N.D. Cal. Mar. 25, 2014). Moreover, many of the key non-party witnesses are more conveniently located in California. Second, Defendants say that Defendants filed patent infringement actions against generic competitors in New Jersey, so the courts there are more familiar with the patent invalidity issues. (Motion, at 8) This argument is misguided. The original complaint in this case was filed on December 21, 2017. Thereafter, in January 2018, the Patent Trial and Appeal Board ("PTAB") invalidated the '438 Patent. *See Amerigen Pharms. Ltd. v. Janssen Oncology, Inc,* (IPR2016-00286). The PTAB proceedings occurred in Washington, D.C., not in New Jersey. In October 2018, the District of New Jersey also invalidated all of Defendants' claims in the '438 Patent. That opinion is under appeal to the Federal Circuit, and it is longer pending in the District of New Jersey. No judicial efficiency would therefore be gained by transfer to the District of New Jersey.

Defendants' argument also rests on a false premise. Patent invalidity is not a key issue in this case, because the '438 Patent has already been invalidated. Instead, the key issues in this case will center around (1) Defendants' fraud when making important representations to the USPTO that Defendants knew were inaccurate and misleading, and (2) the overcharges paid by government health funds from Defendants' unlawful exclusion of generic competitors. These are issues that this Court is capable of efficiently determining, and they were not addressed by the New Jersey court.

## II.   BACKGROUND

### A.   Defendants' Fraudulent Scheme

Defendants manufacture, sell, and distribute Zytiga, which is used to treat patients with metastatic castration-resistant prostate cancer (mCRPC). In the United States, a one-month

RELATOR'S OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(A) (ECF NO. 30)

prescription of Zytiga typically costs over $9,000. Zytiga is covered by Medicare, Medicaid, and other government programs, which paid an average price of over $9,000 per prescription in 2016, the last year for which statistics are available. *See*, § II.B, *infra*. Defendants reported U.S. sales of $1.8 billion for Zytiga in 2018. Approximately 80% of prostate cancer patients in the United States are covered by Medicare. Plaintiff States' Medicaid programs also cover Zytiga. (FAC, § 3) Additionally, the United States Government purchases Zytiga through numerous programs, including, without limitation, the Veterans' Health Administration. *Id*.

The Defendants have listed the '438 Patent in the Orange Book for Zytiga. (**Exh. 1**) The '438 Patent expires in 2027. The '438 Patent teaches administration of abiraterone in combination with the steroid prednisone. (**Exh. 2**) Defendants' application for the '438 Patent (Application No. 13/034,340, "the '340 Application"), was rejected by the Patent Office several times because the administration of abiraterone with prednisone was obvious in light of prior art. Defendants attempted to rebut the patent examiner's rejections by arguing that Zytiga's commercial success was evidence of a secondary consideration[2] that demonstrated the '340 Application was not obvious. However, the USPTO refused to allow the patent absent specific representations that Zytiga had successfully captured market share against other mCRPC treatments, where the purported commercial success in gaining market share was attributable to the claimed invention in the '340 Application (*i.e.,* a method for administering abiraterone acetate with prednisone). (FAC ¶ 67-74)

In response, on June 4, 2013, Defendants made fraudulent and misleading statements to the USPTO that Defendants represented to be valid evidence of the required nexus between the '340 Application's claimed invention and Zytiga's successful market share performance against other mCRPC treatments. Defendants claimed that Zytiga had gained significant market share in the market for chemo-naïve[3] mCRPC patients against Xtandi® and bicalutamide. Those representations were false

---

[2] Pursuant to the Patent Office's Examination Guidelines for Determining Obviousness Under 35 U.S.C. 103, an applicant may submit "objective evidence relevant to the issue of obviousness . . . , sometimes referred to as 'secondary considerations,' [which] may include evidence of commercial success, long-felt but unsolved needs, failure of others, and unexpected results." (**Exh. 3**.) Evidence of secondary considerations is often submitted to rebut a *prima facie* finding of obviousness.

[3] "Chemo-naïve" refers to a patient that has not yet received chemotherapy.

and misleading for the reasons set forth in detail in the complaint. (FAC, ¶¶ 75-82) For instance, Xtandi had not been approved by the FDA for the chemo-naïve market during the time specified by Defendants. (FAC ¶ 77(a)-(d)) This misrepresentation was particularly egregious because in the same submission, Defendants sought to justify Zytiga's relatively poor market share against other mCRPC treatments by saying that Zytiga had not been approved by the FDA for that use during the relevant time period. (FAC ¶ 77(d)) This demonstrated that Defendants knew FDA approval was material to a fair determination of relative market success—and they carefully provided such information when it suited them, but assiduously avoided mentioning it when such information would have caused the USPTO to reject the '340 Application.

As another example, Defendants compared Zytiga's market share to that of another drug, bicalutamide, that was no longer widely used to treat mCRPC due to research showing it did not increase survivability. Thus, any "gain" in Zytiga's market share relative to bicalutamide was due to the decrease in use of bicalutamide because of concerns regarding that drug's effectiveness, and not to the claimed invention in the '340 Application. (FAC ¶ 77) Defendants also failed to disclose to the USPTO that much of Zytiga's commercial success resulted from the fact that another patent, which expired in December 2016, was a blocking patent that excluded competitors from introducing generic abiraterone acetate into the market prior to that date. (FAC ¶ 77(e)) Indeed, this was one of the reasons the PTAB invalidated the '438 Patent. *Amerigen*, IPR2016-00286.

To qualify Zytiga for payment through government health programs, including Medicare, Medicaid, and the Veterans' Health Administration, Defendants knowingly gave express and implied certifications to the government that the price of Zytiga was fair and reasonable. (FAC ¶¶ 104-116) As a result of these false certifications, thousands of false claims seeking payment for Zytiga at an unlawfully inflated price were submitted to, and paid by, the federal government and the Plaintiff States.

Defendants asserted their fraudulently acquired '438 Patent in several objectively baseless infringement actions to prevent generic manufacturers from entering the market. (FAC ¶ 90) By filing the infringement lawsuits, Defendants triggered a 30-month stay on FDA approval of the Abbreviated New Drug Application filed by generic manufacturers seeking to enter the market for Zytiga. (FAC

¶¶90, 94) The generic manufacturers had been ready to enter the market in December 2016, when a prior patent covering Zytiga expired, but they have been prevented from doing so because of Defendants' fraudulent scheme. (FAC ¶¶85-93)

### B.    Many of The Underlying Facts Took Place in California

The number and amount of Medicaid and Medicare claims for Zytiga paid in California dwarfs the number and amount paid in New Jersey by six times. *See* Table 1, below.

**Table 1 2016 Medicare and Medicaid Payments For California And New Jersey[4]**

|            | 2016[5] | |
|------------|---------------|----------------|
|            | Prescriptions | Payments       |
| California | 9,773         | $81,755,109    |
| New Jersey | 1,566         | $13,579,068    |

In addition, likely witnesses in this action reside in California. Although Janssen currently distributes Zytiga, and Janssen is located in New Jersey, Zytiga was first developed by Cougar Biotechnology, Inc. ("Cougar Biotechnology"). Cougar Biotechnology was located in Los Angeles, California from its inception in 2003 until its purchase by Johnson & Johnson in 2009. Alan H. Auerbach, Cougar Biotechnology's Founder, Chief Executive Officer, President and a Member of its Board of Directors, continued to work on the development of Zytiga from his office in Los Angeles after the sale to Johnson & Johnson, "provid[ing] leadership and oversight for the development and global commercialization of Cougar's lead product candidate, abiraterone acetate," *i.e.*, Zytiga. Mr. Auerbach continues to work and reside in Los Angeles. (**Exh. 4**)

Mr. Auerbach was not simply the CEO of Cougar Biotechnology, but also listed as the first-named inventor on the '340 Application, filed on February 24, 2011, which eventually issued as the '438 Patent. From July 2009 until January 2010, Mr. Auerbach served as Co-Chairman of the

---

[4] (Data: https://data.medicaid.gov/State-Drug-Utilization/Drug-Utilization-2018-California/d2af-4zjm & https://data.medicaid.gov/State-Drug-Utilization/Drug-Utilization-2018-New-Jersey/q74m-aekx).

[5] 2016 is the last year for which complete statistics are available. For Medicare, this data excludes prescriptions written by providers where the number of prescriptions written by that provider is fewer than 11 per year. For Medicaid, this data excludes prescriptions submitted to payors where the number of such prescriptions is fewer than 11 per quarter per payor.

Integration Steering Committee at Cougar (as part of Johnson & Johnson) that provided leadership and oversight for the development and global commercialization of Cougar's lead product candidate, abiraterone acetate. Mr. Auerbach was thus likely keenly aware why the drug was or would be successful or capture market share from other cancer treatments. The second-named inventor on the '340 Application is Arie S. Belldegrun, MD, who also resides in Los Angeles. (**Exh. 5**) As named inventors on the '340 Application, Mr. Auerbach and Dr. Belldegrun had an affirmative duty of candor and good faith throughout the prosecution of the patent application. They both likely will be key witnesses in this case.

According to a document filed with the California Secretary of State on May 4, 2012, Cougar Biotechnology changed its name to Janssen Oncology on that date. (**Exh. 6**) Janssen Oncology, a wholly-owned subsidiary of Johnson & Johnson, is the assignee of the '438 Patent, and was identified as a Real-Party-In-Interest in the *Inter Partes Review* proceedings before the PTAB that invalidated the '438 Patent . (**Exh. 7**) A document filed with the California Secretary of State on May 15, 2018, indicates that Janssen Oncology, and at least three of its top executives, including its CEO, CFO, and secretary, are still located in Los Angeles. (**Exh. 8**)

The attorney who prosecuted the '340 Application was a Johnson & Johnson assistant patent attorney (formerly senior patent attorney) named Andrea Kamage. Ms. Kamage signed the June 4, 2013 amendment asserting Zytiga's commercial success as a secondary consideration. (**Exh. 9**) Ms. Kamage has also held the title of Assistant Secretary, Cougar Biotechnology, Inc. (**Exh. 10**) Ms. Kamage is located in La Jolla, California. *See*, Declaration of Harman A. Grossman in Support of Defendants' Motion to Transfer Venue under 28 U.S.C. § 1404(a), ECF No. 30-1, at § 11 (Mr. Grossman is Johnson & Johnson's assistant general counsel). Ms. Kamage is likely one of the most important witnesses in this action given that she signed the critical communication to the Patent Office embodying the alleged fraudulent statements regarding Zytiga's commercial success.

These individuals are likely to be key witnesses. The number and identity of Janssen Oncology or former Cougar employees involved in the development of Zytiga or the prosecution of the '340 Application are known only to Defendants at this time. But there are likely many other California-based

legacy Cougar employees who were involved in decisions and actions relating to the development of Zytiga and prosecution of the '438 patent.

### III.   ARGUMENT

#### A.   Legal Standard

Section 1404(a) of Title 28 of the United States Code provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." A court has "broad discretion to adjudicate motions for transfer on a case-by-case basis, considering factors of convenience and fairness." *Wellens v. Daiichi Sankyo Co.*, No. C 13-00581 CW, 2013 U.S. Dist. LEXIS 89831, at \*3-4 (N.D. Cal. June 25, 2013). However, "unless the balance of factors is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil*, 330 U.S. 501, 508; *accord*, *Decker Coal*, 805 F.2d 834, 843 ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum") (citation omitted).

When considering a motion to transfer, "the court must first determine whether the potential transferee district is one where the case could originally have been brought." *Earth Island Inst. v. Quinn*, 56 F. Supp. 3d 1110, 1117 (N.D. Cal. 2014). The court then considers: "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interest of justice." *Id*. Other factors a court may consider include: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). The *Jones* court also held that "the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing." *Id.* 499; *see also*, *Decker Coal*, 805 F.2d 834, 843 (9th Cir. 1986) (same).

**B.    Defendants Have Not Made A Requisite Strong Showing That It Is Inconvenient for Them to Litigate in This District**

Defendants argue that Relator is no more inconvenienced in New Jersey than in California because Relator lives in New York. (Motion, p. 7) But the burden is on Defendants to make a "strong showing of inconvenience." *Daiichi Sankyo* 2013 U.S. Dist. LEXIS 89831, at *4. Defendants have made no such showing. Indeed, "in this era of fax machines and discount air travel, it is not unreasonable to require a party to litigate in a distant forum." *Miracle v. N.Y.P. Holdings, Inc.*, 87 F. Supp. 2d 1060, 1073 (D. Haw. 2000) (quotation omitted) (denying motion to transfer to defendant's home state). Moreover, "courts discount any inconvenience to the parties' employees, whom the parties can compel to testify." *ACLU of N. Cal. v. Burwell*, No. 16-cv-03539-LB, 2017 U.S. Dist. LEXIS 65285, at *14 (N.D. Cal. Apr. 28, 2017) ("*ACLU*") (quotations omitted).

This district is more convenient than New Jersey because many key witnesses are located in California. Janssen Oncology, which is the assignee of the '438 Patent, is located in California. The two inventors of the '438 Patent live in California. Defendants' in-house attorney who prosecuted the '438 Patent on Defendants' lives in California. Defendants rely on *Panetta v. SAP Am., Inc.*, No. C0501696RMW, 2005 WL 1774327, at *5 (N.D. Cal. July 26, 2005), but such reliance is misplaced, because most of the key witnesses in that case were located in the district to which transfer was sought, whereas no witnesses were located in the transferor state. Here, in contrast, many if not most of the key witnesses are located in California, much closer to this district than to New Jersey. *See* § II.B, *supra*.

**C.    The Convenience of The Witnesses Favors This District**

"The convenience of witnesses is often the most important factor in deciding whether to transfer an action." *ACLU*, 2017 U.S. Dist. LEXIS 65285, at *14 (citation omitted). Several of the key witnesses are located in California and are not employees of Defendants. For example, the two inventors of the '438 Patent are both located in California. One of the inventors—Alan Auerbach—worked for Defendants for approximately seven months in 2009-2010, and the other inventor—Arie Belldegrun—was never employed by Defendants. *See* § II.B, *supra*.

Travel to this district from southern California is significantly more convenient than travel to New Jersey. The trip is far less expensive, can easily be accomplished within one day, and does not

require overnight hotel accommodations. With shorter travel times and no change in time zone, such travel imposes a significantly lighter burden on the witness. "If the forum chosen by plaintiff will be most convenient for the witnesses, this is the most powerful argument against transfer." *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1092-93 (N.D. Cal. 2002) (*quoting* 15 Wright, Miller & Cooper*, Federal Practice and Procedure: Jurisdiction* § 3851, at 264)). "Here, courts look to who the witnesses are, where they are located, what their testimony will be, and why such testimony is relevant." *Id.* (*quoting A.J. Industries, Inc. v. United States Dist. Ct.*, 503 F.2d 384, 389 (9th Cir. 1974)). Accordingly, for known witnesses that are not employed by Defendants, this district is significantly more convenient.

### D. The *Jones* Factors Favor Maintaining Venue in the Northern District of California

#### 1. Location Where the Relevant Agreements Were Negotiated and Executed Favors This District

Defendants claim this first factor is inapplicable. (Motion, at 4) In considering where relevant agreements were negotiated and executed, the first factor essentially focuses on where the action giving rise to the claims arose. *See U.S. ex rel. Brooks v. Stevens-Henager Coll., Inc.*, No. 1:13-CV-00009-BLW, 2015 WL 758988, at *4 (D. Idaho Feb. 23, 2015) ("The first factor—where the relevant agreements were negotiated and executed—is more relevant in a contract case. In a fraud case such as this, it is more useful to ask where the bulk of the claim arose. Put differently, the Court should determine where the crux of the case lies.") (citations omitted).

Here, the bulk of the claim arose in California. Zytiga was developed in California by Cougar Biotechnology, Inc., and the two inventors still live here. So does Defendant's in-house attorney who prosecuted the '340 Application. Documents filed with the California Secretary of State show that Janssen Oncology, the assignee of the '438 Patent, has been located in California since at least 2005, and at least three of its top executives, including its CEO, CFO, and secretary, all of whom are likely to be key witnesses, are still located in California. (**Exhs. 6, 8, 11. 12**)

Moreover, the number and amount of Medicare and Medicaid claims for Zytiga paid in California is six times the number and amount paid in New Jersey. *See* § II.B, *supra*. Just as the court in *Brooks* examined the "sheer numbers" of false claims originating in each state, 2015 WL 758988, at *5,

RELATOR'S OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(A) (ECF NO. 30)

1   the number of false claims originating in California compared with those originating in New Jersey

2   favors maintaining the action in this district. The *Brooks* court also looked at the amount of federal

3   money spent on false claims in each state, stating, "[d]etermining where the federal money ultimately

4   landed is also relevant in terms of determining the location of the fraud." *Id*. at *6. These factors

5   demonstrate why this action should remain in this district.

6          Because the bulk of the false claims were submitted and paid in California, it is particularly

7   appropriate that the sufficiency of Relator's allegations should be determined under Ninth Circuit law.

8   The Ninth Circuit recently decided *United States* ex rel. *Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 901

9   (9th Cir. 2017). The facts and holding of *Campie* confirm the sufficiency of Relator's complaint.

           **2.   Courts' Familiarity With the Law is Neutral**

10

11         Courts routinely hold that when jurisdiction is based on a federal question, courts' familiarity

12  with the law is neutral. *See e.g., Eli Lilly & Co. v. Genentech, Inc.*, No. 13-CV-0919 YGR, 2013 U.S. Dist.

13  LEXIS 114460, at *15 n.3 (N.D. Cal. Aug. 13, 2013) ("Familiarity with the governing law is a non-factor

14  in federal question cases where both fora are federal courts"); *Daiichi Sankyo*, 2013 U.S. Dist. LEXIS

15  89831, at *13 (same). This factor does not favor either district. Defendants contend that they sued

16  generic competitors for infringing the '438 Patent in New Jersey and lost those cases there. But the

17  PTAB was the first tribunal to invalidate the '438 Patent after the original complaint was filed, and that

18  took place in Washington, D.C. In any event, this case addresses fundamentally different question than

19  those at issue in the New Jersey actions. The invalidity of the '438 Patent has been established (subject

20  to the resolution of the appeal before the Federal Circuit) and does not need to be relitigated here. By

21  contrast, this action will address how Defendants' representations to the USPTO regarding Zytiga's

22  commercial success violated Defendants' statutory duty of good faith and candor.

           **3.   Plaintiffs' Choice of Forum Should Be Accorded Deference**

23

24         Defendants say that Relator's choice of forum is entitled to little deference. (Motion, at 4) Not

25  so. "In seeking to transfer a case to a different district, a defendant bears a heavy burden of proof to

26  justify the necessity of the transfer. The plaintiff's choice of forum should not be easily overturned."

27  *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1555–56 (N.D. Cal. 1988). Where, as here, "venue is

28

governed by a more permissive standard, a plaintiff's choice is entitled to greater deference as a matter of law . . . ." *Ellis v. Costco Wholesale Corp.*, 372 F. Supp. 2d 530, 537 (N.D. Cal. 2005) (*overruled in part on other grounds*, 657 F.3d 970 (9th Cir. 2011)).

Under 31 U.S.C. § 3732(a), venue is proper "in any judicial district . . . in which any act proscribed by section 3729 occurred." Thus, venue is proper in any district where even a *single* false claim was presented. In contrast, the general venue provision under 28 U.S.C. § 1391 provides that venue is proper where "a substantial part of the events or omissions giving rise to the claim occurred." The False Claim Act's venue provision is more permissive than that granted under § 1391. Accordingly, Relator's choice of venue is "entitled to greater deference as a matter of law." *Ellis*, 272 F.Supp. 2d at 537; *accord, Daiichi Sankyo*, 2013 U.S. Dist. LEXIS 89831, at *6.

Defendants reliance on *U.S. ex rel. Adrian v. Regents of Univ. of California*, No. C 99-3864 TEH, 2002 WL 334915, (N.D. Cal. Feb. 25, 2002), aff'd, 363 F.3d 398 (5th Cir. 2004) is misplaced. The Adrian court based its reasoning primarily on the premise that "the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter." *Id.* at *3. Here, by contrast, the operative facts took place largely within California: Zytiga was developed in California, the assignee of the fraudulently acquired patent—Janssen Oncology—is located in California, and many of the key witnesses are in California. Moreover, a large number of false claims for Zytiga were submitted and paid in California. These facts should weigh heavily in favor of maintaining venue in this Court.

Defendants' reliance on *Seely v. Cumberland Packing Corp.*, No. 10-CV-02019-LHK, 2010 WL 5300923 (N.D. Cal. Dec. 20, 2010), is similarly unavailing. There, the plaintiff alleged false patent marking because he purchased a package of sweetener that was marked with an expired patent, which had already been the subject of a lawsuit making the exact same false patent marking allegation. *Id.* at **1-2. The court declined to accord the plaintiff's choice of forum the customary deference because he was "one of many potential plaintiffs, all equally entitled voluntarily to invest themselves with the . . . cause of action and all of whom could with equal show of right go into their many home courts." *Id.* at *3 (quotation omitted). Here, in contrast, Relator is an original source who uncovered Defendants' fraudulent scheme through careful investigation, and there are no other persons bringing

Case 2:19-cv-12107-KM-ESK   Document 35   Filed 02/26/19   Page 17 of 20 PageID: 948

suit. Moreover, six times as many false claims were submitted and paid in California than in New

Jersey, and Relator asserts causes of action under California's false claims statute. Cal. Gov't Code §§

12650–12656. California thus has by far the larger interest in this case compared with New Jersey.

### 4. The Respective Parties' Contacts With This Forum Is Neutral

Defendants have many contacts with both New Jersey and this district. As Defendants point

out, two of the defendants' headquarters are in New Jersey. But Defendants also have significant

contacts with this district. For example, Johnson & Johnson maintains Innovation Centers in Menlo

Park and South San Francisco. It has a surgical manufacturing and research & development facility in

Milpitas, and a surgical robotics research & development facility in Mountain View. Janssen has a

research & development facility in Fremont and a biotech facility in South San Francisco. Defendants

also sell their products, including Zytiga, throughout this district. Finally, Janssen Oncology maintains

its primary place of business in California, and Janssen has Research & Development Centers in La Jolla

and Los Angeles. Indeed, Janssen has more research and development centers in California (three

centers) than in New Jersey (two centers).

### 5. The Contacts Relating to the Plaintiff's Causes of Action in The Chosen Forum Favors This District

Defendants assert that many of the false statements made to the USPTO during prosecution of

the '340 Application resulting in the '438 Patent originated in New Jersey. Defendants also say their

fair and reasonable certifications to the federal government to qualify Zytiga for payment by

government health programs originated in New Jersey.

These contacts do not outweigh the fact that six times as many false claims were presented in

California than in New Jersey. Moreover, even though the submissions to the USPTO bore a New

Jersey mailing address, they were submitted by an in-house patent attorney living in California.

California has a far stronger interest in this litigation than does New Jersey.

### 6. The Difference in The Costs of Litigation Favors This District

Counsel for Relator are located in this district, but so are Defendants' counsel. Sidley Austin's

offices are located at 555 California Street. Although one of the three Defendants is headquartered in

New Jersey, the key witnesses are in California. Thus, Defendants' assertion that it will incur a higher

Case No.3:17-cv-07250-JST

RELATOR'S OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(A) (ECF NO. 30)

burden litigating in California is insufficient to justify transfer: "The motion [to transfer] may be denied if the increased convenience to one party is offset by the added inconvenience to the other party." *Daiichi Sankyo* 2013 U.S. Dist. LEXIS 89831, at *4.

The Defendants also provide no facts or figures to substantiate their claim that litigation will be less expensive in New Jersey. But even if that were true, Defendants are sizeable corporations that can absorb those costs better than an individual plaintiff. *See Seely v. Cumberland Packing Corp.*, No. 10-CV-02019-LHK, 2010 WL 5300923, at *6 (N.D. Cal. Dec. 20, 2010) ("as a corporation, Cumberland can likely absorb these costs more easily than Seely . . . . Therefore, on balance, litigation costs are weighted neutrally in the transfer analysis").

### 7. The Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses is Neutral

As Defendants point out, there are no known, unwilling non-party witnesses in this action. (Motion, p. 5) Under the False Claims Act, however, "courts appear to have nationwide subpoena power under 31 U.S.C. § 3731(a). . . . In that event, the witnesses would be available to testify regardless of where they reside; potential problems with compelling witness testimony does not favor either forum." *United States v. Acad. Mortg. Corporation*, No. 16-CV-02120-EMC, 2018 WL 4053484, at *6 (N.D. Cal. Aug. 24, 2018), *motion to certify appeal denied*, No. 16-CV-02120-EMC, 2018 WL 6592782 (N.D. Cal. Dec. 14, 2018).

### 8. The Ease of Access to Sources of Proof is Neutral

Relevant evidence in this case is likely to include documents relating to revenue-drivers for Zytiga, Defendants' prosecution of the '340 Application, the *Amerigen* IPR, Defendants' generic defense analyses for Zytiga, Defendants' market share erosion models for Zytiga, and Defendants' internal marketing, sales, and other financial and strategic documents relating to Zytiga. Nearly all of these documents are likely to be stored electronically. For any documents that are not stored electronically, that parties can make arrangements to have them scanned on-site and converted to an electronically stored format. "Given technological advances in document storage and retrieval, transporting documents between districts does not generally create a burden." *Daiichi Sankyo*, 2013 U.S. Dist. LEXIS 89831, at *11-12. New Jersey's relative physical proximity to the USPTO is

insignificant. Accordingly, there is no difference between the two venues for this factor.

### 9. Public Policy Considerations Favor This District

Defendants assert that California's "public policy of judicial economy and the avoidance of inconsistent judgments" favors transfer. This is wrong for several reasons. As an initial matter, judicial economy benefits by combining two matters if they are (a) related and (b) pending. This would result in one adjudication of two same or similar causes of action. *See e.g.*, *United States ex rel. Poehling v. Unitedhealth Grp., Inc.*, No. CV1608697MWFSSX, 2017 WL 10316266, at *4–5 (C.D. Cal. Sept. 28, 2017). The litigation in the District of New Jersey regarding the validity of the '438 Patent is not related to this action, which concerns false claims to the federal government and the Plaintiff States. No allegations of fraud were made or adjudicated in those case. Those cases involve different claims, different parties, different statutes, and different material facts.

Moreover, the New Jersey action is not pending. That case has already been decided, and absent a remand from the Federal Circuit, there will be no more proceedings in that district. Even if the cases were related—they are not—they could not be joined now, and no judicial economy would be gained by transferring it.

Finally, the Northern District of California has a greater public policy interest in the controversy because the number of Medicare and Medicaid claims for reimbursement of Zytiga were more six times greater than the claims in New Jersey, and Relator has asserted claims under California law.

### 10. The Relative Court Congestion and Time of Trial in Each Forum Favors This District

Defendants have not met their heavy burden in demonstrating that transfer would be convenient and fair. In considering relative congestion of the courts' dockets, the median time from filing to trial is 30 months for the district.[6] In the District of New Jersey, the median time from filing is 48.9 months. Therefore, the relative court congestion is lower in the Northern District of California, and this factor weighs in favor of denying the Defendants motion to transfer venue.

---

[6] Federal Court Statistics available at:
https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0930.2018.pdf.

## IV.    Conclusion

For the foregoing reasons, Defendants' motion to transfer should be denied.

Dated: February 26, 2019                         JOSEPH SAVERI LAW FIRM, INC.

                                                 By:    */s/ Nicomedes Sy Herrera*
                                                         Nicomedes Sy Herrera

                                                 Joseph R. Saveri (State Bar No. 130064)
                                                 Steven N. Williams
                                                 Nicomedes Sy Herrera (State Bar No. 275332)
                                                 Kevin Rayhill (State Bar No. 267496)
                                                 Kyla Gibboney (State Bar No. 301441)
                                                 Anupama K. Reddy (State Bar No. 324873)
                                                 JOSEPH SAVERI LAW FIRM, INC.
                                                 601 California Street, Suite 1000
                                                 San Francisco, California 94108
                                                 Telephone: (415) 500-6800
                                                 Facsimile: (415) 395-9940

                                                 *Attorneys for Plaintiff-Relator*