Michael J. Bettinger (SBN 122196)
mbettinger@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, California 94104-1715
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

Gordon D. Todd (*pro hac vice*)
gtodd@sidley.com
Kimberly Leaman (*pro hac vice*)
kimberly.leaman@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

*Attorneys for Defendants*
JANSSEN BIOTECH, INC.,
JANSSEN ONCOLOGY, INC.,
JANSSEN RESEARCH & DEVELOPMENT, LLC,
and JOHNSON & JOHNSON

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, STATES OF CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VERMONT, AND WASHINGTON; THE COMMONWEALTHS OF MASSACHUSETTS AND VIRGINIA; and THE DISTRICT OF COLUMBIA,<br><br>*ex rel.* ZACHARY SILBERSHER,<br><br>   Plaintiffs,<br><br>   vs.<br><br>JANSSEN BIOTECH, INC., JANSSEN ONCOLOGY, INC., JANSSEN RESEARCH & DEVELOPMENT, LLC, and JOHNSON & JOHNSON,<br><br>   Defendants. | Case No.: 3:17-cv-07250-JST<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)**<br><br>Judge: Hon. Jon S. Tigar<br>Date:  April 18, 2019<br>Time:  2:00 P.M.<br>Place: Courtroom 9, 19th Floor, Phillip Burton Federal Building |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

ARGUMENT ..................................................................................................................1

    I.    THE SECTION 1404(A) FACTORS FAVOR TRANSFER .....................................1

        A.    Relator Misconstrues The Showing Necessary To Support Transfer Of An FCA *Qui Tam* Action..............................................................................2

        B.    The *Jones* Factors Strongly Favor Transfer......................................................2

            1.    Relator's Choice of Forum Is Entitled To Little Deference ...............3

            2.    The Parties Have No Relevant Contacts To The Northern District Of California, But Do With The District Of New Jersey.................................................................................................4

            3.    The Bulk Of The Relevant Conduct Occurred In New Jersey............5

            4.    Litigation In New Jersey Is More Cost Efficient For Both Parties...................................................................................................7

            5.    The Ease Of Access To Sources Of Proof Favors Transfer................7

            6.    Transfer To The District Of New Jersey Furthers Judicial Economy ..............................................................................................8

CONCLUSION..............................................................................................................10

# TABLE OF AUTHORITIES

**Cases**                                                   **Page(s)**

*United States ex rel. Adrian v. Regents of Univ. of Cal.*,
   No. C-99-cv-3864-TEH, 2002 WL 334915 (N.D. Cal. Feb. 25, 2002) ................................. 2, 3, 4

*United States ex rel. Brooks v. Stevens-Henager Coll., Inc.*,
   No. 1:13-CV-00009-BLW, 2015 WL 758988 (D. Idaho Feb. 23, 2015) ..................................... 6

*BTG Int'l v. Amneal Pharm. LLC*,
   No. 2:15-cv-05909-KM-JBC, 2018 WL 5734626 (D.N.J. Oct. 31, 2018) ................................ 10

*United States ex rel. Campie v. Gilead Scis., Inc.*,
   862 F.3d 890 (9th Cir. 2017) ..................................................................................................... 6

*Decker Coal Co. v. Commonwealth Edison Co.*,
   805 F.2d 834 (9th Cir. 1986) ..................................................................................................... 2

*Ellis v. Costco Wholesale Corp.*,
   372 F. Supp. 2d 530 (N.D. Cal. 2005) ....................................................................................... 3

*Glaxo Grp. Ltd. v. Genentech, Inc.*,
   No. C-10-00675-JSW, 2010 WL 1445666 (N.D. Cal. Apr. 12, 2010) ........................................ 2

*Hendricks v. StarKist Co.*,
   No. 13-cv-729-YGR, 2014 WL 1245880 (N.D. Cal. Mar. 25, 2014) ......................................... 7

*Italian Colors Rest. v. Am. Express Co.*,
   No. 03-CV-03719-SI, 2003 WL 22682482 (N.D. Cal. Nov. 10, 2003) ...................................... 5

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2000) .................................................................................................. 1, 2

*KSR Int'l Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007) ............................................................................................................. 9, 10

*United States ex rel. Ogawa v. Rieadco Corp.*,
   No. C-10-04578-JW, 2011 WL 7293397 (N.D. Cal. Apr. 7, 2011) ........................................... 3

*Panetta v. SAP America, Inc.*,
   No. C-05-CV-01696-RWM, 2005 WL 1774327 (N.D. Cal. July 26, 2005) .............................. 4

*San Francisco Tech., Inc. v. The Glad Prod. Co.*,
   No. 10-CV-00966-JF, 2010 WL 2943537 (N.D. Cal. July 26, 2010) ........................................ 3

*Seely v. Cumberland Packing Corp.*,
   No. 10-CV-02019-LHK, 2010 WL 5300923 (N.D. Cal. Dec. 20, 2010) ................................... 3

*Silva v. Aviva PLC*,
   No. 15-CV-02665-PSG, 2016 WL 1169441 (N.D. Cal. Mar. 25, 2016) ............................. 2, 5, 6

*Tarasovsky v. Guardian Life Ins. Co. of Am.*,
   No. C-17-cv-03464-WHA, 2017 WL 5495822 (N.D. Cal. Nov. 16, 2017) ................................ 1

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011) ........................................................................................... 9

*Zut v. Harrah's Entm't, Inc.*,
   No. C13-2372-TEH, 2013 WL 5442282 (N.D. Cal. Sept. 30, 2013) ......................................... 5

**Statutes**

28 U.S.C. § 1404(a) ................................................................................................................. 1, 3, 6

Defendants Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, and Johnson & Johnson ("J&J") (collectively, "Defendants") respectfully submit this Reply in support of their Motion to Transfer this action to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404(a).

## INTRODUCTION

Relator's Opposition to Defendants' Motion to Transfer Venue ("Opposition" or "Opp.") goes long on arguing the merits of his substantive claims, which are irrelevant to the question of transfer, but offers little to justify keeping this case in this District. Indeed, Relator fails to identify *a single* contact between his case and this District other than the location of his counsel, and ignores authority from this District making clear that that particular contact does not weigh in the balance. Relator identifies a handful of purported connections with Los Angeles, which is itself 400 miles away in a different forum, and those claimed contacts are themselves, as will be discussed, incorrect or irrelevant. Relator otherwise misunderstands and/or misapplies the *Jones* factors. Most egregiously, Relator misrepresents the nature of the prior and ongoing action in the District of New Jersey, which covered most of the factual questions and legal issues underlying Relator's most inventive FCA theory. Because the *Jones* factors overwhelmingly support transfer, and because the interests of judicial economy would be best served by not having a second federal court retry the same complex patent issues, the Court should exercise its discretion to transfer the matter to the District of New Jersey.

## ARGUMENT

### I.   THE SECTION 1404(A) FACTORS FAVOR TRANSFER

Relator does not contest that he could have filed in the District of New Jersey. *Tarasovsky v. Guardian Life Ins. Co. of Am.*, No. C-17-cv-03464-WHA, 2017 WL 5495822, at *2 (N.D. Cal. Nov. 16, 2017). The only issue, therefore, is appropriate application and weighing of the *Jones* factors and the public policy interest of the forum state. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). Relator argues the factors are either neutral or support remaining in this District, but Relator's factual assertions and legal contentions are deeply flawed. A proper consideration of the *Jones* factors strongly favors transfer to New Jersey—at no increased burden to

1

Relator. When those factors are balanced against the deference afforded to Relator's choice of venue—in this case, very little—transfer furthers the interests of convenience and justice.

### A. Relator Misconstrues The Showing Necessary To Support Transfer Of An FCA *Qui Tam* Action

Relator's Opposition rests first and foremost on a misunderstanding of the showing required to support transfer. *See Silva v. Aviva PLC*, No. 15-CV-02665-PSG, 2016 WL 1169441, at *4 (N.D. Cal. Mar. 25, 2016). Relator asserts that Defendants must make "a strong showing" that it is inconvenient to litigate in the chosen forum. Opp. at 1, 8–9. What is required, however, is a "showing of inconvenience *to warrant upsetting the plaintiff's choice of forum*." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (emphasis added). While this showing may be challenging in many cases, in a *qui tam* action the relator's choice of forum is *not* given significant weight. *United States ex rel. Adrian v. Regents of Univ. of Cal.*, No. C-99-cv-3864-TEH, 2002 WL 334915, at *3 (N.D. Cal. Feb. 25, 2002). And, as this Court has previously recognized, "[a]s deference accorded to a Plaintiff's choice of forum decreases, a defendant's burden to upset the plaintiff's choice of forum also decreases." *Glaxo Grp. Ltd. v. Genentech, Inc.*, No. C-10-00675-JSW, 2010 WL 1445666, at *4 (N.D. Cal. Apr. 12, 2010). In light of the minimal deference afforded to Relator's choice of forum as both a *qui tam* plaintiff and a non-resident plaintiff, a far lesser showing is required.

### B. The *Jones* Factors Strongly Favor Transfer

Whatever the showing required, however, the facts and the law strongly support transfer. Again, in weighing transfer, the Court considers the following *Jones* factors: (1) where the relevant agreements were negotiated and executed; (2) which state is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the parties' contacts with the forum; (5) contacts between the cause of action and the chosen forum; (6) the costs of litigation; (7) the availability of compulsory process to compel the attendance of unwilling nonparty witnesses; and (8) ease of access to sources of proof. *Jones*, 211 F.3d at 498–99.

Factors one, two, and seven do not weigh in the balance. As to the first factor, Relator does not dispute that there are no "relevant agreements" to consider, Mot. to Transfer at 4, ECF 30, but

goes on to conflate the first prong with the fourth and fifth factors, the parties' and the claims' contacts with the District, Opp. at 10. To avoid repetition, we address Relator's arguments in discussing factors four and five. As to the second factor, Relator agrees that the courts have equal familiarity with the law. *Id.* at 11. And, as to the seventh factor, Relator agrees that there are no known concerns over unwilling non-party witnesses. *Id.* at 14. Every other factor and consideration favors transfer.

### 1. Relator's Choice Of Forum Is Entitled To Little Deference

Relator contends that his choice of forum should not be "easily overturned" and declares that given the FCA's permissive venue provision his choice merits even greater deference. *Id.* at 11–12. Relator's arguments, however, rely on inapplicable authorities and ignore a host of decisions recognizing that a *qui tam* plaintiff's choice of forum deserves *minimal* deference under § 1404(a).

Relator relies principally on *Ellis v. Costco Wholesale Corp.*, 372 F. Supp. 2d 530, 537 (N.D. Cal. 2005), a Title VII case. There, the Court concluded that because Congress had given civil rights plaintiffs broader latitude in selecting where to file their particular grievance, such plaintiffs' choice of forum deserved greater deference. This suit, however, arises under the FCA, not Title VII, which vindicates entirely distinct interests. While Title VII protects the individual rights of the employee-plaintiff selecting the forum, the FCA protects the interests of the Government as a whole, not the rights of the particular Relator. Accordingly, the rationale behind Title VII's permissive venue does not apply in the FCA context.

No wonder, then, that multiple Courts have recognized that a *qui tam* plaintiff's choice of forum is "entitled to little deference." *United States ex rel. Ogawa v. Rieadco Corp.*, No. C-10-04578-JW, 2011 WL 7293397, at *2 (N.D. Cal. Apr. 7, 2011); *see also Seely v. Cumberland Packing Corp.*, No. 10-CV-02019-LHK, 2010 WL 5300923, at *3 (N.D. Cal. Dec. 20, 2010) ("[S]ignificant authority holds that the forum choice of a *qui tam* plaintiff … deserves little deference."); *San Francisco Tech., Inc. v. The Glad Prod. Co.*, No. 10-CV-00966-JF, 2010 WL 2943537, at *6 (N.D. Cal. July 26, 2010) ("[T]here is substantial persuasive authority supporting … that a plaintiff's choice of forum is entitled to less weight in a *qui tam* action."); *Adrian*, 2002 WL 334915, at *3.

Relator's attempt to evade *Adrian* is misplaced. *See* Opp. at 12. There, the Court made clear that "a plaintiff's choice of forum is *not* given substantial weight when the plaintiff is a *qui tam* relator, asserting the rights of the United States government." *Adrian*, 2002 WL 334915, at *3. In attempting to distinguish *Adrian* as concerned with the lack of ties between the cause of action and the forum state, Relator conflates the *Jones* factors and ignores the Court's clear ruling regarding the minimal deference afforded to *qui tam* plaintiffs. In any event, here, as there, the nucleus of operative fact bears no relationship to this District. Relator's attempt to distinguish *Seely* similarly misses the mark. *See* Opp. at 12. Relator argues that he is an "original source." *Id.* Putting aside that he is not—as explained in Defendants recently filed Motion to Dismiss—Relator offers nothing to show why an original source *qui tam* plaintiff would be treated any differently than a non-original source *qui tam* plaintiff. Indeed, given the public disclosure bar, one would expect the vast majority of *qui tam* plaintiffs to be original sources of the information. There, as in *Adrian*, the Court held clearly that a *qui tam* plaintiff's choice of forum warrants minimal deference, and Relator here cites no authority to the contrary.

Any deference to Relator's choice of this District is further undermined by the fact that he himself is a stranger to the Northern District of California (and, indeed, to the West Coast). Deference is "significantly diminished" when a plaintiff initiates an action in a state in which he is not a resident. *See Panetta v. SAP America, Inc.*, No. C-05-CV-01696-RWM, 2005 WL 1774327, at *5 (N.D. Cal. July 26, 2005) (citing *Pac. Car & Foundry Co. v. Spence*, 403 F.2d 949, 954 (9th Cir. 1968)). Here, Relator is a New York resident whose only tie to this District is the location of his lawyer, and thus "deference to his choice of forum carries diminished weight." *Id.*

### 2. The Parties Have No Relevant Contacts To The Northern District Of California, But Do With The District Of New Jersey

Neither party has any relevant contact with this District. With respect to Relator, for all the pages and exhibits he expends purporting to tie this case to his chosen forum, he fails to identify a single personal contact with the Northern District of California other than his lawyer. Relator does not dispute that the location of his counsel "is immaterial," *see id.* at *5, offering only weakly that Defendants' counsel also have an office in San Francisco. True, and equally irrelevant. Relator's

silence speaks volumes as he fails to identify any contact *he* may share with the Northern District. *See* Opp. at 13.

With respect to Defendants, Relator points to a handful of J&J research and development facilities in Northern California, *see id.*, but "none of these contacts specifically relate to Plaintiff's cause of action." *Zut v. Harrah's Entm't, Inc.*, No. C13-2372-TEH, 2013 WL 5442282, at *2 (N.D. Cal. Sept. 30, 2013). Conversely, Defendants' contacts to the District of New Jersey overwhelm any contacts to the Northern District of California. As Relator cannot dispute, two of the four defendants (J&J and Janssen Research & Development) are located in New Brunswick, New Jersey, Opp. at 13, while a third (Janssen Biotech, Inc.) is located next door in Horsham, Pennsylvania. The fourth defendant (Janssen Oncology, Inc.) is not located in the Northern District of California, but 400 miles away in Los Angeles. In the final analysis, given Defendants' relationship with New Jersey, and the lack of any countervailing ties to this District, this factor militates in favor of transfer.

### 3. The Bulk Of The Relevant Conduct Occurred In New Jersey

Relator's brief treatment of this factor is telling. *Id.* Relator does not dispute *any* of Defendants' showing that the vast majority of the conduct underlying Relator's claims occurred in and around New Jersey. Mot. at 6. Indeed, Relator's only relevant substantive response is to assert that Defendants' responses to the USPTO were submitted by an "in house patent attorney living in California." Opp. at 13. Even this is incorrect, as the lawyer in question was, at the time of those submissions, living in New Jersey. *See* Grossman Decl. in Support of Mot. to Transfer ¶ 11, ECF No. 30-1. And, as Relator himself notes, the location of party-controlled witnesses are largely irrelevant to the issue of transfer as they will presumably be produced to testify where needed.

Relator relies principally on a highly misleading and irrelevant comparison of incomplete prescription data from California and New Jersey. Opp. at 6, 6 nn.4–5, 13. As an initial matter, this is not an "apples to apples" comparison. While the "New Jersey" data includes only the single District of New Jersey, the "California" data includes all four California federal judicial districts. It

5

is improper to "conflate California with this [D]istrict." *Silva*, 2016 WL 1169441, at *6.[1] Once one backs out the Eastern, Central, and Southern Districts, including the greater Los Angeles area, any disparity likely disappears, if not reverses. Conversely, if nearby districts are fair game, then adding the Southern and Eastern Districts of New York and the Eastern District of Pennsylvania would, again, more than balance the scales.[2] In any event, Zytiga sales do not import any special significance to this District as forum over any other. Sales here are a fraction of total sales nationwide, and sales here reflect a nationwide marketing and sales strategy. Nothing about sales volume creates any greater nexus here than anywhere else.[3]

Lastly, Relator contends that many of the underlying facts took place in California. Opp. at 6–8, 10–11. Once again, Relator has the wrong District, as he contends Zytiga was developed in *Southern* California, the patent inventors reside in *Southern* California, and the J&J patent attorney who made the submission at issue *currently* lives in *Southern* California. *Id.* at 10. Moreover, Relator fails to explain why or how the *development* of Zytiga relates to his current lawsuit for false claims for *reimbursement* of Zytiga. Judging from Relator's Complaint, Zytiga's development, its inventors, or executives of Cougar Biotechnology, Inc. are irrelevant to his claims relating to Zytiga's subsequent commercial success, or lack thereof, and representations made by Defendants to the USPTO. Relator offers no relevant background underlying the gravamen of his actual claims that relates in any way to this District or, indeed, to California.

---

[1] Courts have repeatedly rejected the proposition that California's large population makes it the appropriate venue for most significant nationwide suits. *See Italian Colors Rest. v. Am. Express Co.*, No. 03-CV-03719-SI, 2003 WL 22682482, at *3 (N.D. Cal. Nov. 10, 2003). Section 1404(a) "cannot require such a result." *Silva*, 2016 WL 1169441, at *6.

[2] Relator's reliance on *United States ex rel. Brooks v. Stevens-Henager Coll., Inc.*, No. 1:13-CV-00009-BLW, 2015 WL 758988 (D. Idaho Feb. 23, 2015), is misplaced. The *Brooks* court's assessment of "sheer numbers" simply followed from the court's prior conclusion that the defendants had their largest presence in the transferee forum. *Id.* at *5. Specifically, the court found that the transferee forum was "the center of gravity for [the] lawsuit" because "[a] majority of material events occurred" there. *Id.* at *6.

[3] Lastly, and most peculiarly, Relator suggests that the case should remain here because the Ninth Circuit's recent decision in *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 901 (9th Cir. 2017), is favorable to his claim. Opp. at 11. While *Campie* does not, in fact, support Relator's claim, plaintiffs do not ordinarily feature considerations for forum shopping quite so prominently in arguing against transfer.

### 4. Litigation In New Jersey Is More Cost Efficient For Both Parties

Relator's cost analysis fixates on the location of counsel and the location of key witnesses. However, as discussed *supra*, the location of counsel is not a relevant factor in the transfer analysis. Moreover, while one key witness is located in California (Andrea Kamage), she is a party witness employed by J&J and any increased cost in travel for that witness will be borne by Defendants. Indeed, as Relator's own authority makes clear, "[c]ourts give less consideration to the convenience of party witnesses or witnesses employed by a party because these witnesses can be compelled by the parties to testify regardless of where the litigation will occur." *Hendricks v. StarKist Co.*, No. 13-cv-729-YGR, 2014 WL 1245880, at *3 (N.D. Cal. Mar. 25, 2014); *see* Opp. at 3. Notably, Relator is silent as to the burden for him personally to litigate a case in the Northern District of California while he resides in New York. Thus, unlike other situations where transfer would merely shift the burden from one party to another, transfer here relieves the burden for *both* sets of parties.

### 5. The Ease Of Access To Sources Of Proof Favors Transfer

In attempting to diminish the relevance of this factor, Relator focuses exclusively on documentary evidence. Relator does not dispute that because Defendants' government pricing team is located in New Jersey and because the patent in question was prosecuted from New Jersey, then potentially relevant documentation is likely to be in New Jersey. However, he argues, eDiscovery and the ready transmission of data render this a non-factor. Opp. at 14. To be sure, electronic transmission and storage mitigates the burdens associated with discovery across the country. However, that data and any "hard copy" records must still nonetheless be gathered and turned into transmittable electronic data, so the burden is not fully alleviated.

Beyond documentary evidence, Relator ignores completely the separate issue of ease of access to key witnesses. As an initial matter, Relator's most critical witness is himself, located in New York City conveniently adjacent to the transferee forum. Key defense witnesses are likely to include individuals from the government pricing team and the J&J attorneys who prosecuted the patent in question. The majority of these individuals are located in New Jersey and, as noted, the sole defense witness located in *Southern* California will travel to New Jersey at Defendants' expense.

Relator points to a handful of other individuals in California, but these bear little relationship to the FCA action and are unlikely to have relevant testimony. For instance, Relator points to Mr. Auerbach and Dr. Belldegrun, the two inventors on the patent application. *Id.* at 9–10. But on the face of the application, the patent was assigned to Johnson & Johnson, and neither of these individuals made the purportedly fraudulent submissions to the USPTO. Relator claims that Mr. Auerbach provided "leadership and oversight for the development and global commercialization of … abiraterone acetate," thus making him knowledgeable about "why the drug was or would be successful or capture market share from other cancer treatments." *Id.* at 7. But, according to Relator's own exhibit, Mr. Auerbach occupied this role from July 2009 through January 2010—over three years *before* the allegedly fraudulent statements and omissions about market share and commercial success and well before the period of market share and commercial success at issue here. *Id.* at 6. Relator provides no explanation at all for why Dr. Belldegrun would be a relevant witness. Relator observes that Dr. Belldegrun owed a duty of candor to the USPTO, but does not claim that Dr. Belldegrun breached that duty, or offer any basis to believe he would have any insights into anyone else doing so.

Relator also summarily refers to "likely many other California-based legacy Cougar employees who were involved in decisions and actions relating to the development of Zytiga and prosecution of the '438 patent." *Id.* at 7–8. However, as discussed *supra*, the development of Zytiga is not relevant to the claims raised by Relator's FCA lawsuit. *See, e.g.*, *id.* at 2 n.1 (describing three ways in which Defendants allegedly violated the FCA without mentioning the invention or development of Zytiga). Moreover, Defendants are presently not aware of legacy Cougar employees involved in prosecuting the '340 Application which led to the issuance of the '438 Patent.

**6.     Transfer To The District Of New Jersey Furthers Judicial Economy**

While Relator acknowledges that judicial economy is served by considering related and pending cases together, he disputes that his FCA claim is at all related to the patent infringement case in New Jersey. *Id.* at 15. Relator contends that (i) the New Jersey case is no longer pending, and (ii) that the patent validity issues previously tried in New Jersey are not relevant to this case. Relator is incorrect on both points.

8

First, the patent infringement actions from the District of New Jersey, along with the *inter partes* review proceedings, are ongoing and are presently consolidated for appeal before the United States Court of Appeals for the Federal Circuit. The ultimate issues of patent validity, including considerations of commercial success, are not final and the Federal Circuit may reverse the lower tribunals' findings and/or could remand for additional fact-finding.[4] While the District of New Jersey does not presently have jurisdiction, the case remains pending and any remand returns the action to the District of New Jersey.

Second, Relator's allegations of fraud on the USPTO based on misrepresentations concerning commercial success are inextricably bound up with the previously-litigated question of patent validity. This is why Relator, while arguing the merits of his case in the introduction of his Opposition, characterizes the New Jersey actions as "objectively baseless." *Id.* at 5. In order to prevail in his FCA suit, Relator will have to demonstrate that the District of New Jersey presided over not a legitimate legal dispute between parties acting in good faith but rather a farce. "Fraud" in the patent context requires Relator to show more than just impropriety on the part of those prosecuting the patent. Relator must also demonstrate that any misrepresentation or omission before the USPTO was material to the issuance of the '438 Patent. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). That is, Relator must prove that but-for the alleged malfeasance, the patent examiner would have concluded the claim was obvious. *See id.* at 1291 ("[T]he materiality required to establish inequitable conduct is but-for materiality."). *Cf. KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 407 (2007) ("If … the claimed subject matter was obvious, the claim is invalid under [35 U.S.C.] § 103.").

Despite Relator's insistence that the "cases involve different claims … different statutes, and different material facts," Opp. at 15, his own Opposition recognizes that evidence of commercial success is relevant "to the issue of obviousness." *Id.* at 4 n.2; *see KSR Int'l Co.*, 550 U.S. at 406

---

[4] Relator seems to find some significance in the fact that the PTAB invalidated the '438 Patent first and that the PTAB is located in Washington, D.C. and not New Jersey. Opp. at 3. While unclear as to Relator's point in this regard, the District of New Jersey's decision was entirely independent of the PTAB's decision, and that the PTAB reached a similar conclusion does not somehow diminish the District of New Jersey's experience and familiarity with the '438 Patent and its application.

9

("Such secondary considerations as commercial success … might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented." (quoting *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17–18 (1966))). Relator's entire FCA claim turns on his allegation that Defendants committed fraud in a single June 4, 2013 submission. *See* Am. Compl. ¶ 75. And this submission, Relator contends, pertained solely to Zytiga's commercial success. *Id*. Thus, Relator's allegations cannot be separated from the previously-litigated questions of the patent's validity, but instead will require any adjudicating court to examine the patent, the claimed invention, the purported misrepresentations and omissions in the June 4 submission, and the relevance of those omissions and misrepresentations to the patent examiner's ultimate issuance of the patent. The District of New Jersey has already engaged in this very analysis. Consolidated Opinion at 46–49, *BTG Int'l v. Amneal Pharm. LLC*, No. 2:15-cv-05909-KM-JBC (D.N.J. Oct. 31, 2018) (Ex. A to Grossman Decl., ECF 30-2).

Accordingly, the District of New Jersey court's familiarity with the patent and the patent record would conserve judicial resources and facilitate the expeditious resolution of this case. Thus, even if the District of New Jersey has a higher median time from filing to trial overall, its understanding of the patent and its prosecution record would likely reduce the timeline in this particular case. Moreover, transfer would conserve resources in this District. Lastly, if the Federal Circuit were to remand for additional fact-finding, transfer would help avoid potentially inconsistent judgments concerning the same patent.

## CONCLUSION

While the Northern District of California is certainly convenient for Relator's Counsel, it is not convenient for anyone or anything else. The totality of factors for the convenience of both parties favor a venue transfer to the District of New Jersey. For the foregoing reasons, the Court should grant Defendants' Motion to Transfer Venue.

Dated: March 5, 2019

By: */s/ Michael J. Bettinger*
Michael J. Bettinger (SBN 122196)
mbettinger@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000

10

| | |
|---|---|
| 1 | San Francisco, California 94104-1715 |
| 2 | Telephone: (415) 772-1200<br>Facsimile: (415) 772-7400 |
| 3 | Gordon D. Todd (*pro hac vice*) |
| 4 | gtodd@sidley.com<br>Kimberly Leaman (*pro hac vice*) |
| 5 | kimberly.leaman@sidley.com<br>SIDLEY AUSTIN LLP |
| 6 | 1501 K Street N.W.<br>Washington, D.C. 20005 |
| 7 | Telephone: (202) 736-8000<br>Facsimile: (202) 736-8711 |
| 8 | *Attorneys for Defendants* |
| 9 | *JANSSEN BIOTECH, INC.,*<br>*JANSSEN ONCOLOGY, INC.,* |
| 10 | *JANSSEN RESEARCH & DEVELOPMENT,*<br>*LLC, and JOHNSON & JOHNSON* |

11