UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br><br>Plaintiffs, <br><br>v. <br><br>JANSSEN BIOTECH, INC., et al., <br><br>Defendants. | Case No. 17-cv-07250-JST <br><br>**ORDER GRANTING MOTION TO TRANSFER VENUE** <br><br>Re: ECF No. 30 |

Before the Court is a motion to transfer venue filed by Defendants Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, and Johnson & Johnson. ECF No. 30. Plaintiff-Relator Zach Silbersher opposes the motion. ECF No. 35. The Court will grant the motion.

## I.   BACKGROUND

Defendants manufacture, sell, and distribute the drug Zytiga, which is widely used to treat certain types of prostate cancer, generating over $1 billion in annual sales within the United States. First Amended Complaint ("FAC"), ECF No. 7 ¶¶ 2-3. The chemical compound patent that originally covered Zytiga, U.S. Patent No. 5,604,213 ("the '213 patent") expired on December 13, 2016. *Id.* ¶ 4.

In this *qui tam* action, Relator Silbersher alleges that Defendants fraudulently obtained a new – but wholly meritless – patent for Zytiga, U.S. Patent No. 8,822,438 ("the '438 patent"), thereby blocking numerous generic drug manufacturers from entering the market after December 13, 2016. *Id.* ¶ 4. Accordingly, Silbersher argues, Defendants maintained an artificially high price for Zytiga. *Id.* Further, various federal and state programs, including Medicare and Medicaid, either reimburse patients for, or directly purchase, Zytiga. *Id.* ¶¶ 6-7. Silbersher contends that

Case 2:19-cv-12107-KM-JBC   Document 51   Filed 04/29/19   Page 2 of 12 PageID: 1184

Defendants therefore "knowingly presented, or caused to be presented, false or fraudulent claims for payment of Zytiga," in violation of the False Claims Act ("FCA"). *Id.* ¶ 119; *see also* 31 U.S.C. § 3729(a)(1). Silbersher similarly asserts violation of various state false claims acts. *See* FAC ¶¶ 124-473.

Silbersher filed this action on December 21, 2017, on behalf of the United States and various individual states. ECF No. 1. Both the federal government and the States elected not to intervene. ECF Nos. 6, 9. On February 12, 2019, Defendants filed this motion to transfer venue to the U.S. District Court for the District of New Jersey. ECF No. 30.

## II. JURISDICTION

The Court has subject matter jurisdiction over Silbersher's FCA claims under 28 U.S.C. § 1331 and 31 U.S.C. §§ 3730(b)(1), 3732(a). The Court exercises jurisdiction over Silbersher's state-law claims pursuant to 28 U.S.C. § 1367(a) and 31 U.S.C. § 3732(b).

## III. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks and citation omitted). A motion for transfer lies within the broad discretion of the district court and must be determined on an individualized basis. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) ("Under § 1404(a), the district court has discretion 'to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'" (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988))).

Courts considering transfer must engage in a two-step analysis. First, courts determine whether the action could have been brought in the target district. *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960). Second, courts "weigh in the balance a number of case-specific factors" to undertake an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc.*, 487 U.S. at 29 (second quoting *Van Dusen*, 376 U.S. at 616). The factors the Court

2

should consider include:

> (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

*Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001); *see also Jones*, 211 F.3d at 498-99. The moving party bears the burden of showing that the transferee district is the more appropriate forum for the action. *Jones*, 211 F.3d at 499.

## IV. DISCUSSION

### A. Venue in the Target District

Transfer is appropriate only if the action could have been brought in the District of New Jersey. 28 U.S.C. § 1404(a). "A district court is one in which an action could have been brought originally if (1) it has subject matter jurisdiction; (2) defendants would have been subject to personal jurisdiction; and (3) venue would have been proper." *Duffy v. Facebook, Inc.*, No. 16-CV-06764-JSC, 2017 WL 1739109, at *3 (N.D. Cal. May 4, 2017) (citing *Hoffman*, 363 U.S. at 343).

Defendants contend, and Silbersher does not dispute, that the District of New Jersey meets these requirements. ECF No. 30 at 8. The Court agrees. As noted above, federal district courts have subject matter jurisdiction over this action. Further, proper venue and personal jurisdiction exist in that district because Defendant Johnson & Johnson ("J&J"), the parent corporation of the other Janssen Defendants, maintains its corporate headquarters and principal place of business in Brunswick, New Jersey. *See* 31 U.S.C. § 3732(a); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Accordingly, the Court finds that this case could have been brought in the District of New Jersey.

### B. Transfer for the Convenience of the Parties and the Interests of Justice

#### 1. Plaintiff's Choice of Forum

Courts generally accord "great weight" to plaintiff's choice of forum. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). This weight is diminished, however, when the plaintiff is a *qui tam*

3

relator asserting the rights of the Government. *See S.F. Tech. v. Glad Prods. Co*., No. 10-CV-00966 JF (PVT), 2010 WL 2943537, at *7-8 (N.D. Cal. July 26, 2010) (concluding, in line with "substantial persuasive authority," that in a *qui tam* action plaintiff's choice of forum "is not entitled to the considerable weight it typically receives"); *United States ex rel. Adrian v. Regents of Univ. of Cal.*, No. C 99-3864 TEH, 2002 WL 334915, at *3 (N.D. Cal. Feb. 25, 2002) ('[A] plaintiff's choice of forum is *not* given substantial weight when the plaintiff is a *qui tam* relator, asserting the rights of the United States government." (emphasis in original)).

    Courts have identified at least two rationales for this approach. First, some courts have focused on the fact that "the United States, rather than relators, is the real party in interest." *United States ex rel. Haight v. Catholic Healthcare W.*, No. C-01-1202 PJH, 2001 WL 1463792, at *4 (N.D. Cal. Nov. 9, 2001); *see also United States v. Acad. Mortg. Corp.*, No. 16-CV-02120-EMC, 2018 WL 4053484, at *5 (N.D. Cal. Aug. 24, 2018) (noting that "Relator is a *qui tam* plaintiff bringing suit on behalf of the U.S. government"). Second, some courts have analogized to class actions, suggesting that less deference is merited in part because "[l]ike a class action plaintiff, a qui tam plaintiff, or relator, is one of many 'potential plaintiffs, all equally entitled voluntarily to invest themselves with the . . . cause of action and all of whom could with equal show of right go into their many home courts.'" *Seely v. Cumberland Packing Corp.*, No. 10-CV-02019-LHK, 2010 WL 5300923, at *3 (N.D. Cal. Dec. 20, 2010) (quoting *S.F. Tech*, 2010 WL 2943537, at *7) (alteration in original)).

    Silbersher first argues that his choice of forum is entitled to greater deference because the FCA's venue provision, 31 U.S.C. § 3732(a), is broader than the default venue provision, 28 U.S.C. § 1391.[1] Silbersher relies on cases involving Title VII of the Civil Rights Act of 1964, which likewise includes a broad venue provision. ECF No. 35 at 16 (citing *Wellens v. Daiichi*

---

[1] The FCA permits an action to "be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." 31 U.S.C. § 3732(a). By contrast, 28 U.S.C. § 1391 provides for venue based on a defendant's residency only where "all defendants are residents of the State in which the district is located," and for venue based on events only where "a *substantial part* of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(1)-(2) (emphasis added).

4

*Sankyo Co.*, No. C 13-00581 CW, 2013 WL 3242294, at *2 (N.D. Cal. June 25, 2013); *Ellis v. Costco Wholesale Corp.*, 372 F. Supp. 2d 530, 537 (N.D. Cal. 2005), *overruled in part on other grounds by* 657 F.3d 970, 988 (9th Cir. 2011)). In that context, courts in this district have held that "[w]here venue is governed by a more permissive standard, a plaintiff's choice [of forum] is entitled to greater deference as a matter of law, even where that case is brought as a class action." *Ellis*, 372 F. Supp. 2d at 537; *Wellens*, 2013 WL 3242294, at *3 (same). Courts have reached similar conclusions based on the broad venue provisions contained in securities laws. *See Gen. Ret. Sys. of City of Detroit v. Wells Fargo Mortg. Backed Sec. 2006-AR18 Tr.*, No. C 09-1376 SI, 2009 WL 2137094, at *4 (N.D. Cal. July 16, 2009) ("Without question, the intent of the venue and jurisdiction provisions of the securities laws is to grant potential plaintiffs liberal choice in their selection of a forum, and unless the balance of factors is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed." (quoting *Sec. Investor Prot. Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985)).

But this is not a civil rights or securities lawsuit. The considerations that go into the weighing process differ under the FCA, where the real party in interest is the United States government, rather than a plaintiff seeking to vindicate his or her own individual rights. *See United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 794 (9th Cir. 2017). Given the different interests at stake, it does not necessarily follow that the Court should apply the reasoning of Title VII or securities cases and infer a deferential approach to plaintiff's choice of forum from the statute. Rather, as explained above, courts have consistently accorded *less* deference to a *qui tam* plaintiff's chosen forum in FCA cases. *See, e.g.*, *United States ex rel. Tutanes-Luster v. Broker Sols., Inc.*, No. 17-CV-04384-JST, 2019 WL 1024962, at *3 (N.D. Cal. Mar. 4, 2019); *Catholic Healthcare W.*, 2001 WL 1463792, at *4. Silbersher cites no on-point authority to the contrary and offers no analysis specific to the FCA's venue provision. Accordingly, the Court follows the line of authority giving less weight to Silbersher's choice of forum, notwithstanding the breadth of 31 U.S.C. § 3732(a).

Next, Silbersher attacks the reasoning in *qui tam* cases that have analogized to class action cases. Silbersher points to the FCA's "original source" exception, which requires a court to

5

dismiss a *qui tam* action that is based on certain categories of publicly disclosed information, unless the relator "either (i) prior to a [covered] public disclosure . . . , has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(A). Silbersher alleges that his investigation into Defendants' conduct qualifies him as an original source and therefore, he argues, this factor differentiates him from the many potential plaintiffs that exist in class actions. Although not supported by any authority, Silbersher's argument does have some intuitive appeal. Assuming without deciding that Silbersher is an original source,[2] it undermines the analogy to class action transfer cases. But even setting aside this rationale, an action on behalf of the United States does not warrant the same deference to the plaintiff's choice of forum. *See Catholic Healthcare W.*, 2001 WL 1463792, at *2.

Moreover, to the extent that Silbersher's independent investigation makes him a more critical participant than a prototypical class action plaintiff, any additional weight is undermined by the fact that Silbersher himself has no connection to this district. In determining the appropriate level of deference, courts in both *qui tam* and non-*qui tam* cases consider a plaintiff's residence and whether "the operative facts supporting the lawsuit have [a]" connection to the district. *Catholic Healthcare W.*, 2001 WL 1463792, at *2; *see also Gemini Capital Grp. v. Yap Fishing Corp.*, 150 F.3d 1088, 1091 (9th Cir. 1998) (citing the general rule that "'plaintiff's choice of forum is entitled to only minimal consideration' when 'the forum of original selection . . . has no particular interest in the parties or subject matter'" (alteration in original) (quoting *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968)). Here, Silbersher resides in New York, FAC ¶ 17, and does not identify any contacts that he has with the Northern District of California, let alone any contacts related to his "original source" investigation. If anything, New Jersey

---

[2] Janssen has also filed a motion to dismiss in which it argues that Silbersher has not adequately pleaded that he is an original source. ECF No. 32 at 19-20. That issue is not yet before the Court, and the Court concludes that its resolution is unnecessary to deciding this particular motion.

appears to be a far more convenient forum for Silbersher.

Silbersher also claims that Defendants have significant contacts with this district related to operative facts of this action, but these arguments are not persuasive. While Silbersher focuses on the initial development of Zytiga by Janssen Oncology's predecessor, ECF No. 35 at 16, he concedes that this work took place in Los Angeles, California (which is in the Central District of California) rather than this district, *id.* at 10. Further, it appears that the crux of Silbersher's FCA claims is that Defendants submitted false or misleading evidence during patent prosecution, an exchange that occurred between J&J's New Jersey office and the U.S. Patent and Trademark Office ("USPTO") in Virginia, ECF No. 30-1 ¶ 13. As discussed further below with respect to the convenience of parties and witnesses, Silbersher identifies no witness or evidence that is actually located within this district.

Silbersher additionally stresses that "six times as many false claims were submitted and paid in California than in New Jersey." ECF No. 35 at 17. This argument is flawed. First, it again fails to distinguish between this district and California as a whole. Second, it does not address the relevant question whether a *disproportionate* number of false claims occurred in this district versus New Jersey or any other forum. This district's sheer size does not simply displace less populous districts' interests in nationwide actions. *See Silva v. Aviva PLC*, No. 15-CV-02665-PSG, 2016 WL 1169441, at *6 (N.D. Cal. Mar. 25, 2016) ("Leaving aside the fact that Plaintiffs conflate California with this district, Plaintiffs' argument would mean that most nationwide class actions could be brought here. Section 1404(a) cannot require such a result." (citing *Italian Colors Rest. v. Am. Express Co.*, No. C 03-3719 SI, 2003 WL 22682482, at *3 (N.D. Cal. Nov. 10, 2003)).

Lastly, the Court considers Silbersher's argument that "the Northern District of California has a greater public policy interest in the controversy because . . . Relator has asserted claims under California law." ECF No. 35 at 19. That Silbersher asserts California state law claims hardly distinguishes that state from New Jersey, given that Silbersher asserts the claims of 28 states (including New Jersey state-law claims on behalf of the State of New Jersey) and the District of Columbia, in addition to making state law claims under California law. FAC ¶¶ 136-

473.

Accordingly, the Court gives Silbersher's selection of this district only minimal deference.

### 2. Convenience of the Parties

Section 1404(a) provides for transfer to a more convenient forum, "not to a forum likely to prove equally convenient or inconvenient." *Adobe Sys. Inc. v. Childers*, No. 5:10-cv-03571-JF/HRL, 2011 WL 566812, at *9 (N.D. Cal. Feb. 14, 2011) (quoting *Van Dusen*, 376 U.S. at 646). Transfer "should not be granted if the effect is simply to shift the inconvenience to the plaintiff." *Id.* (citing *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986)). "Defendants must show that the balance of conveniences weighs heavily in favor of transfer in order to overcome the strong presumption in favor of plaintiff's choice of forum." *Id.*

As explained above, the "strong presumption in favor of plaintiff's choice of forum" is weakened here because the case is a *qui tam* action and that Silbersher does not reside in the chosen forum. Moreover, Silbersher cites no inconvenience that he will experience in litigating this case in New Jersey, which is far closer to his home state of New York. For its part, Defendants contend that New Jersey will be more convenient because both J&J and Janssen Research & Development are headquartered there. The Court agrees that this factor favors New Jersey.

### 3. Convenience of the Witnesses

"The convenience of the witnesses, particularly non-party witnesses, is often the most important factor" in ruling on a motion to transfer venue under § 1404(a). *Grossman v. Johnson & Johnson*, No. 14-CV-03557-VC, 2015 WL 1743116, at *1 (N.D. Cal. Apr. 13, 2015) (citing *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1092 (N.D. Cal. 2002)). To evaluate this factor, "courts must consider not only the number of witnesses, but also the nature and quality of their testimony." *Broker Sols.*, 2019 WL 1024962, at *5 (quoting *Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009)). Furthermore, when "establishing inconvenience to witnesses, the moving party must name the witnesses, state their location, and explain their testimony and its relevance." *Hendricks v. StarKist Co.*, No. 13-CV-00729 YGR, 2014 WL 1245880, at *3 (N.D. Cal. Mar. 25, 2014) (quoting *Costco Wholesale Corp. v. Liberty*

8

*Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1193 (S.D. Cal. 2007)).

Neither party identifies any witness who resides in this district. Silbersher relies instead on a number of witnesses who reside in southern California. He first points to two inventors of the '438 patent, ECF No. 35 at 10-11, but does not explain how their testimony will relate to the allegedly fraudulent evidence of commercial success submitted during the patent prosecution, FAC ¶¶ 67-82. Silbersher also identifies three Janssen Oncology executives, ECF No. 35 at 11, 14, but the relevance of their testimony is likewise unexplained. Defendants do concede that one of the attorneys who prosecuted the '438 patent will be a key witness, but they argue that the inconvenience to her is less weighty because she is an employee witness. ECF No. 37 at 11 (citing *Hendricks*, 2014 WL 1245880, at *3).

Defendants also counter that the critical mass of relevant witnesses are located in New Jersey, including another of J&J's patent prosecution attorneys and the employees who provided the relevant pricing information during patent prosecution. ECF No. 30 at 12; ECF No. 30-1 ¶¶ 12, 17-19.

It appears that litigation in this district may be more convenient for the two patent inventors from southern California. The balance of convenience for Janssen's relevant employee witnesses, on the other hand, tips towards New Jersey. While non-party witnesses are more important for this factor, the inventors' testimony is of questionable relevance. Accordingly, the Court concludes this factor is neutral.

### 4. Ease of Access to the Evidence

Courts generally do not regard "the transportation of documents . . . as a burden because of technological advances in document storage and retrieval." *Hendricks*, 2014 WL 1245880, at *4 (citing *Van Slyke v. Capital One Bank,* 503 F. Supp. 2d 1353, 1362 (N.D. Cal. 2007)). While this diminishes the weight of this factor in the transfer determination, ease of access to the evidence remains a factor to consider. *Roe v. Intellicorp Records, Inc.*, No. 12-CV-0256-YGR, 2012 WL 3727323, at *3 (N.D. Cal. Aug. 27, 2012) (citing *Patent Mgmt. Found., LLC v. Analog Devices, Inc.*, Case No. C-10-3620 SBA, 2011 WL 197831, at *4 (N.D. Cal. Jan. 20, 2011)).

Defendants assert that because J&J prosecuted the '438 patent from New Jersey and its

9

government pricing team is located there, many of the relevant documents will be found in New Jersey. ECF No. 30 at 12. Silbersher does not dispute that relevant evidence is located in New Jersey, nor does he identify any evidence located in this district. Rather, Silbersher argues that this factor is neutral, given that many documents are likely to be stored electronically and that other documents may be scanned and transmitted with little difficulty. ECF No. 35 at 18.

While "[c]ourts in this district have expressed different views on the continuing relevance of this factor," this Court has not dispensed with this factor altogether. *Bakhtiar v. Info. Res., Inc.*, No. 17-CV-04559-JST, 2018 WL 1014616, at *4 (N.D. Cal. Feb. 22, 2018); *see also Broker Sols., Inc.*, 2019 WL 1024962, at *6 ("Although the ease of electronic discovery reduces the importance of this factor, 'costs of litigation can still be substantially lessened if the venue is in the district in which most of the documentary evidence is stored.'" (quoting *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1095 (N.D. Cal. 2013)). Accordingly, this factor weighs slightly in favor of transfer.

### 5.    Familiarity of Each Forum with the Applicable Law

As the FCA is a federal statute, courts in this district and the District of New Jersey are equally equipped to adjudicate these claims. Moreover, Silbersher does not dispute Defendants' characterization that his "claims under California and New Jersey law . . . both simply mirror their federal [false claims act] counterpart." ECF No. 30 at 9. This factor is therefore neutral. *See Roe*, 2012 WL 3727323, at *4.

### 6.    Feasibility of Consolidation of Other Claims

There are no pending actions that could be consolidated with this one. Defendants argue, however, that similar judicial economy concerns weighs in favor of transfer because a District of New Jersey court recently found the '438 patent invalid after a bench trial, a decision which is now on appeal to the Federal Circuit. *BTG Int'l, Ltd. v. Amneal Pharm. LLC*, No. 15-cv-05909-KM-JBC (D.N.J.), ECF Nos. 560, 561, 573.³ Defendants reason that the New Jersey court's

---

³ Though Defendants cite California's specific policy of judicial economy and avoiding inconsistent judgments, their argument is based on the universally applicable concerns implicated whenever courts consider the potential for consolidation or similar case-management efficiencies.

10

greater familiarity with the patent would make it easier to oversee this case. ECF No. 30 at 13. Silbersher responds that the cases are substantively distinct, and that the procedural posture renders any judicial economy benefits speculative at best. ECF No. 35 at 19.

The Court agrees with Defendants that the *Amneal* court – specifically, Judge McNulty – having conducted a bench trial on the '438 patent, is likely to be intimately familiar with the patent and its history, even if the issues are not necessarily co-extensive. While Silbersher argues that it is uncertain whether the Federal Circuit will remand the *Amneal* case, Judge McNulty may draw upon his store of knowledge regarding the patent even if there are no further proceedings ongoing in that case. *Eli Lilly & Co. v. Genentech, Inc.*, No. 13-CV-0919 YGR, 2013 WL 4396718, at *6 (N.D. Cal. Aug. 13, 2013) (finding efficiency gains where judge in transferee court had presided over other cases involving same or similar patents that had settled within last three years); *see also Soverain Software LLC v. Oracle Corp.*, No. 6:12-CV-141, 2014 WL 12621273, at *21 (E.D. Tex. Mar. 27, 2014) (denying transfer in part because "[a]s a result of its experience with the prior . . . cases, this Court has significant claim construction and trial experience regarding the asserted patents and accused technologies in these cases"). Nonetheless, given some of the differences between the cases, as well as the posture of the *Amneal* appeal, it is not a foregone conclusion that this case would be assigned to Judge McNulty upon transfer. Therefore, the Court will give this factor only slight weight. *See Park*, 964 F. Supp. 2d at 1096 ("While the potential consolidation with [another case in the district] weighs slightly against transfer, the advancement of [that case] in this District is too speculative to be decisive.").

### 7. Any Local Interest in the Controversy

In evaluating the interests of justice, a court may consider public interest factors, including local interests in deciding local controversies. *Decker Coal Co.*, 805 F.2d at 843.

Here, Silbersher repeats his arguments that California has a predominant local interest because it saw a higher absolute number of reimbursement claims for Zytiga than New Jersey, and because Silbersher asserts claims under California law. ECF No. 35 at 19. These arguments are meritless, for the reasons explained above.

**8.     The Relative Court Congestion and Time of Trial in Each Forum**

"The real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket." *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984); *Hendricks*, 2014 WL 1245880, at *6. Silbersher cites statistics showing that, for the 12-month period ending September 30, 2018, the median time from filing to trial in a civil case was 30 months in the Northern District, compared to 48.9 months in New Jersey. *See* U.S. District Courts – Federal Court Management Statistics – Comparison Within Circuit (Sept. 30, 2018), https://www.uscourts.gov/file/24854/download (accessed Apr. 29, 2019). The disparity in time to trial is mitigated somewhat by the fact that civil cases in New Jersey moved from filing to disposition in only 4.3 months during that same period, as opposed to 7.2 months in this district. *Id.* However, the per-judge caseload in the District of New Jersey is substantially heavier. *See id.* (showing 1,348 total filings per judge in the District of New Jersey and 639 total filings per judge in the Northern District during this period).

Thus, as Defendants concede, this factor weighs against transfer.

## CONCLUSION

In sum, Silbersher's choice of forum is entitled to only minimal weight, given the *qui tam* nature of this action and the absence of any particular connection to this district. The convenience of the parties, access to evidence, and judicial economy concerns favor transfer to varying degrees. While the relative docket congestion weighs against transfer, the remaining factors are neutral. Balancing these factors, the Court concludes that Defendants have carried their burden to demonstrate that the District of New Jersey is "the more appropriate forum for this action." *Jones*, 211 F.3d at 499.

The Court therefore grants the motion to transfer. The Court also vacates the hearing on Defendants' motion to dismiss. *See* ECF No. 32.

**IT IS SO ORDERED.**

Dated: April 29, 2019

_____
JON S. TIGAR
United States District Judge