# SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION

**The Legal Center**
**One Riverfront Plaza**
**Newark, New Jersey 07102-5400**
**Tel: 973-643-7000**
**Fax: 973-643-6500**

Jeffrey J. Greenbaum
Member
Direct Dial:  (973) 643-5430
E-mail: jgreenbaum@sillscummis.com

December 11, 2023

**By ECF**

Honorable Edward S. Kiel, U.S.M.J.
United States District Court, District of New Jersey
United States Post Office & Courthouse
Federal Square, Courtroom 8
Newark, New Jersey, 07101

      Re:    **United States ex rel. Silbersher v. Janssen Biotech Inc., et al.,**
               **Civil Action No. 19-12107 (MEF-ESK)**

Dear Judge Kiel:

The parties submit this letter in the above-captioned matter pursuant to Civil Local Rule 37.1 governing discovery disputes and the Court's Case Management Order.  The parties met and conferred on the issue raised in this letter on October 12 and 19, were unable to reach a resolution, and therefore are at an impasse.  In the parties' November 13, 2023 joint status letter (ECF 293), Defendants notified the Court of this impasse and indicated that the issue likely would require the Court's intervention.  After discussion at the November 16 status conference, the Court advised the parties to submit this joint discovery dispute letter.

I.  **Defendants' Statement**

Defendants respectfully request that this Court direct Relator Zachary Silbersher to produce 16 communications that he has withheld based on an unsubstantiated claim of attorney-client privilege.

Defendants asked Relator to produce documents relating to his pre-filing investigation that led to this case. As Defendants previously reported, *see* ECF 286 & 293, Relator ultimately produced a privilege log containing 82 communications that are responsive to Defendants' request, but that Relator contends are protected from disclosure by the attorney-client privilege.[1]

Defendants contest Relator's privilege assertions over 16 email exchanges between himself and two individuals, Gaston Kroub and Sergey Kolmykov, with whom Relator co-owns a patent consulting business, Markman Advisors, and who are also Relator's partners in a three-member law firm, Kroub, Silbersher & Kolmykov PLLC.[2] Relator's privilege log provides a conclusory assertion that these emails are privileged because they "reflect[] legal advice on IP litigation."[3]

---

[1] Relator initially refused to provide a privilege log, asserting that his investigation did not begin until he retained Mr. Herrera as counsel in September 2016. This Court ordered Relator to provide such a privilege log during the March 14, 2023 status conference. Relator failed to produce the privilege log before the July 18, 2023 status conference, when this Court again ordered Relator to do so. Relator finally provided the privilege log on August 23, 2023.

[2] See Exhibit A, Relator's Privilege Log (August 23, 2023). In this letter, Defendants dispute Relator's privilege assertions over the communications described in lines 53–64, 70, and 73–75 of the privilege log.

Separately, during the parties' meet and confers, Relator's counsel indicated that he, Relator, Kroub, and Kolmykov had communications about potentially filing a class action antitrust lawsuit based upon substantially the same the allegations set forth in Relator's current complaint. It is unclear whether Relator has identified these communications, which are undoubtedly responsive to Defendants' document requests, on his privilege log. Defendants intend to meet and confer further with Relator to determine the answer to that question. If those communications have not been identified on the privilege log, Defendants may seek additional relief related to those communications from this Court.

[3] *Id.*

But Relator has failed to identify any facts demonstrating that any attorney-client relationship existed between these individuals.

Most fundamentally, Relator concedes that he had no retainer agreement with Kroub or Kolmykov at the time of these communications, *still* has no retainer agreement with them, and has never received any invoice from Kroub or Kolmykov for any services rendered relating to this case. *See* ECF 293 at 11–12 ("Relator does not (yet) have a written retainer agreement with them (or received an invoice)"). In fact, Relator has expressly represented that the two entities he operates with Kroub and Kolmykov, "Markman Advisors and his law firm *have not acted on Relator's behalf* with respect to this case." Exhibit B, Dec. 16, 2022 Letter from N. Herrera, at 1 (emphasis added). Thus, Relator's own statements categorically refute his privilege claim.

### A. Relator Has Failed to Establish Any Attorney-Client Relationship Between Himself and Kroub or Kolmykov.

The 16 communications at issue are not protected by the attorney-client privilege. As the party claiming privilege, Relator bears "[t]he burden of proving that the (attorney-client) privilege applies." *In re Grand Jury*, 603 F.2d 469, 474 (3d Cir. 1979). Relator must therefore establish the "traditional elements of the privilege," including: (1) that he "is or sought to become a client" of Kroub and Kolmykov at the time the communications were made; (2) that Kroub and Kolmykov were "acting as a lawyer" "in connection with th[e] communication[s]"; (3) "the communication relates to a fact of which the attorney was informed [ ] by his client [ ] without the presence of strangers [ ] for the purpose of securing" legal advice; and (4) the privilege has not been waived. *Morisky v. Pub. Serv. Elec. & Gas Co.*, 191 F.R.D. 419, 423 (D.N.J. 2000) (quoting *In re Grand Jury*, 599 F.2d at 1233).

Relator has failed to carry this burden because Relator has not established—and cannot establish—that he "*is or sought to become a client*" of Kroub and Kolmykov at the time these

3

communications were made. *Id.* (emphasis added). That is fatal to his privilege claim. It is an elementary principle of law that the "attorney-client privilege" shields only those communications "made between attorney *and client*," *HPD Labs., Inc. v. Clorox Co.*, 202 F.R.D. 410, 414 n.7 (D.N.J. 2001) (emphasis added).

Relator's own representations unequivocally demonstrate that he had no attorney-client relationship with Kroub or Kolmykov at the time of these communications:

*First*, Relator has conceded that he had no retainer agreement with Kroub and Kolmykov at the time of the communications, *still* has no retainer agreement with them, and has never received any invoice from either individual for any services rendered relating to this case. *See* ECF 293 at 11–12 ("Relator does not (yet) have a written retainer agreement with them (or received an invoice)"). Nor has Relator identified any other "specific communication" establishing that he was a "client[] or sought to become [a] client[]" of Kroub or Kolmykov "at the time" of these communications. *Morisky*, 191 F.R.D. at 423. Without any such evidence to establish an attorney-client relationship, Relator cannot invoke the privilege. *Id.* Indeed, as the Third Circuit has held, there is no attorney-client relationship where a putative client "did not enter into any written agreement" with a lawyers, "w[as] not expressly advised by [the lawyer] that the law firm represented them," and "received no bills" from the law firm. *Speeney v. Rutgers*, 673 F. App'x 149, 153-54 (3d Cir. 2016). That is precisely the case here. Even today, Relator still has no such agreement and only hints that he is "preparing to execute" one. *Supra* at 9-10 and n.6.

*Second*, neither Kroub nor Kolmykov has represented Relator in any capacity in this case. Indeed, Relator expressly represented as much to Defendants in writing, stating that "Markman Advisors and his law firm [*i.e.*, Kroub, Silbersher & Kolmykov, PLLC] *have not acted on Relator's behalf* with respect to this case." Exhibit B, Dec. 1, 2022 Letter from N. Herrera, at 1

4

(emphasis added).  Markman Advisors and the law firm each have only three members:  Relator, Kroub and Kolmykov.  *See* Our Team, Kroub, Silbersher & Kolmykov PLLC, https://www.kskiplaw.com/ourteam.html; Team, Markman Advisors, https://www.markmanadvisors.com/team.  Thus, Relator's unequivocal statement that these entities have "not acted on Relator's behalf" is flatly inconsistent with his more recent claim he had an attorney-client relationship with Kroub and Kolmykov.[4]  This conclusion holds even if, as Relator claims, he has had "discussions among law partners of the same firm about an anticipated legal proceedings":  Such discussions may be privileged when they are had on behalf of a *client*, but they are not privileged just because they involve partners of the same law firm.

The context of Relator's December 16, 2022 statement demonstrates he sought to benefit from disclaiming that Kroub and Kolmykov were purportedly working on his behalf.  At the time, Defendants were engaged in discussions with Relator about the sufficiency of his discovery responses.  Thus, Defendants inquired whether other employees of Relator's law firm, including his partners, acted on his behalf in this matter or the preceding investigation so that Defendants could determine whether additional responsive material was in their possession.  Defendants' question to Relator unequivocally sought far more than whether Kroub and Kolmykov had merely entered an appearance on the docket in this case. Defendants relied on the veracity of Relator's

---

[4] Relator's statements in his December 16, 2022 letter disclaiming Kroub's and Kolmykov's representation of him is not his sole assertion to that effect.  In an October 10, 2022 Letter, Relator represented to Defendants that "[n]either Relator nor Kroub [i.e., Relator's law firm] have had *any legal clients* with respect to Zytiga or any of the patents at issue in this litigation." Exhibit C, Oct. 10, 2022 Letter from N. Herrera, at 3 (emphasis added).  Similarly, "[n]either Relator nor Kroub have had any consulting clients with respect to Zytiga or any of the patents at issue in this litigation." *Id.*  Again, these representations are entirely at odds with Relator's position here.  Moreover, if Kroub and Kolmykov acted in their capacity as members of Markman Advisors, a consulting firm, those discussions are not privileged.  Markman Advisors is not a law firm and does not provide legal advice.  *See* ECF 238 (describing Markman Advisors as a "third party consulting firm").

representation to inform their decisions as fact discovery proceeded, and Relator should be held to his representation.

In fact, as the docket demonstrates, over the five-and-a-half-year history of this litigation, Relator has retained three law firms and six attorneys to represent him, but neither Kroub nor Kolmykov has ever appeared on any filing or correspondence related to this case.  The fact that Relator hired these other "attorneys" to represent him in this matter is further evidence that Kroub and Kolmykov were not "acting as [his] attorney[s]" at the time of these communications.  *Oestreicher v. Rutgers*, 2015 WL 6460423, at *7 (D.N.J. Oct. 26, 2015) (quoting *FMC Corp. v. Guthery*, 2009 WL 485280, at *6 (D.N.J. Feb. 24, 2009)), *aff'd sub nom.*, *Speeney v. Rutgers*, 673 F. App'x 149.

Relator's contrary arguments are unavailing:

*First*, Relator claims that his inability to identify any "specific communication" establishing an attorney-client relationship between himself and Kroub and Kolmykov—such as a retainer agreement or an invoice—is "beside the point" because, in these communications, Relator was seeking their "legal advice."  ECF 293 at 12; *see also* ECF 285 at 29:9-15, 21-24 (arguing that Relator communicated with Kroub and Kolmykov in their capacity "as attorneys").  That ignores the basic elements of the attorney-client privilege.  The mere fact that a person asks an attorney for "advice" does not establish an attorney-client relationship.  Indeed, it is well established that "*[t]he privilege does not apply simply because a statement was made by or to an attorney.*" *Peterson v. Bernardi*, 262 F.R.D. 424, 428 (D.N.J. 2009) (emphasis added); *HPD Labs.*, 202 F.R.D. at 414 (same).  Furthermore, courts consistently have recognized that the privilege does not "attach 'simply because a statement conveys advice that is legal in nature.'" *Peterson*, 262 F.R.D.

6

at 427 (quoting *HPD Labs.*, 202 F.R.D. at 414).  Instead, there must be an actual attorney-client relationship between the parties to the communication, which Relator cannot establish here.

*Second*, Relator claims that these communications are "shielded" by the attorney-client privilege because Relator may retain Kroub and Kolmykov for legal "advice" and "expert discovery and trial" preparation in this case *in the future*.  ECF 293 at 12.  But whatever future arrangements Relator may enter into with Kroub and Kolmykov cannot create an attorney-client relationship between these parties "*at the time*" the communications were made.  *See Morisky*, 191 F.R.D. at 423 (emphasis added).  These communications occurred more than six year ago, in May and June of 2017.  Relator's claim that he can cloak them in privilege by retaining Kroub or Kolmykov in late 2023—or even later—strains credulity.

### B. Relator Has Failed to Establish That the Communications Are Protected by the Attorney Work Product Doctrine.

Finally, in the November 13, 2023 joint status letter, Relator alleged in passing that his 16 communications with Kroub and Kolmykov are protected by the "work product doctrine."  *See* ECF 293 at 12.  This claim fails for the same reasons that Relator's attorney-client privilege claim fails.  The work-product "doctrine is designed to protect material prepared by an attorney *acting for his client* in anticipation of litigation." *United States v. Rockwell*, 897 F.2d 1255, 1265 (3d Cir. 1990) (emphasis added).  Relator was not a client of either Kroub or Kolmykov at the time of these communications.  Similarly, Relator has represented that neither he nor his firm "have had any legal clients with respect to Zytiga or any of the patents at issues in this litigation." *Supra* note 4 (quoting Exhibit C at 3).  Relator thus fails to demonstrate that the work product doctrine applies to the communications identified on his privilege log, or any other communications between Relator and putative co-counsel with respect to a potential antitrust class action—which Relator never filed and for which Relator never had a client.

\*\*\*

Based on the foregoing, Defendants respectfully request that this Court direct Relator to produce the 16 communications with Kroub and Kolmykov described on his privilege log because he has failed to demonstrate that either the attorney-client privilege or the work-product doctrine applies.

**Relator's Statement**

Relator respectfully objects to Defendants' request to produce the 16 communications identified within Defendants' statement.

### A. The Attorney-Client Privilege Protects the Communications.

The Third Circuit has held that an express attorney-client relationship is created when "a person manifests to a lawyer that person's intent that the lawyer provide legal services" and "the lawyer manifests to the person consent to do so." *Dixon Ticonderoga Co. v. Estate of O'Connor*, 248 F.3d 151, 169 (3d Cir. 2001). The Third Circuit has also held that an implied attorney-client relationship is created when "a person manifests to a lawyer the person's intent that the lawyer provide legal services to the person," "the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services." *Id.* Finally, the Third Circuit has clarified that "[n]o bright-line rule governs the applicability of the attorney-client privilege and, as a result, the applicability of the privilege should be determined on a case-by-case basis." *Morisky*, 191 F.R.D. at 423; *See also*, *Speeney v. Rutgers*, 673 F. App'x at 153-54 (discussing whether a reasonable juror would find an attorney-client relationship existed).

The facts here establish that the Third Circuit's standard for an express and implied attorney-client relationship exists. The 16 communications occurred in 2016 during the pre-suit

8

investigation period before this action was filed.  The communications occurred among Relator, Kroub and Kolmykov.  Relator, Kroub and Kolmykov are each attorneys, and they are each partners of the same law firm.  During the pre-suit investigation period, Relator had communications with his law partners about legal matters related to this anticipated litigation.  Those communications sought an opinion on law, legal services ,or assistance in anticipated legal proceedings.  In short, Relator discussed legal matters with his law partners about potential lawsuits.  Those communications—among law partners within the same firm—operated under the oral understanding that they would be protected attorney-client communications.

     Defendants argue that the communications cannot be privileged because Relator does not yet have a written retainer agreement and has not yet been invoiced by Kroub and Kolmykov.  That argument is unavailing.  The Third Circuit has held—and Defendants do not dispute—that creation of an attorney-client relationship does *not* require a written contract or actual payment of any fees.  See *United States v. Costanzo*, 625 F.2d 465, 468 (3d Cir. 1980).[5]  Furthermore, Defendants rely upon *Speeney v. Rutgers*, 673 F. App'x at 153-54, but in that case, the court found an attorney-client relationship never existed because, in addition to there being no written agreement or paid fees, the attorney (Linda Celauro) expressly stated on the record that she did not represent the plaintiffs.  As a result, the court concluded that no reasonable juror could find that plaintiffs reasonably relied upon the existence of an attorney-client relationship.

---

[5] Nevertheless, as of the filing of this letter, Relator is preparing to execute a written retainer agreement with Kroub and Kolmykov, particularly in light of the current stage of litigation, which increasingly is focusing on complex intellectual property issues. To be clear, the written agreement is intended to memorialize the prior understanding between Relator, on the one hand, and Kroub and Kolmykov, on the other, that an attorney client relationship has existed with respect to this matter.

9

Defendants cite to an October 10, 2022 letter where counsel says that neither Silbersher nor his firm has represented "any legal clients with respect to Zytiga . . . ." Defendants take this statement wildly out of context. That statement was made in direct response to Defendants' Requests for Production of Documents 25 and 2—which is an important detail that Defendants conveniently omit. This omission is important, because Request No. 25 sought production of documents identifying "each client that You and/or Kroub, Silbersher & Kolmykov PLLC have represented as legal counsel since 2015." Clearly, the response was directed at clients *other* than "You" (which Defendants defined as embracing Silbersher "and/or" his law firm). Similarly, Request 28 sought production of documents showing "matters before Federal courts and/or the USPTO, including the Patent Trial and Appeal Board, in which You have appeared on behalf of, or acted as a consultant for . . . ." Again, "You" included both Silbersher and/or his firm. Counsel was confirming that Relator objected to these requests to the extent they sought documents relating to matters other than Zytiga and the patents at issue in this case, and that neither Silbersher nor his firm has represented anybody else concerning them. The focus of the discovery being discussed was whether there was any representation of any party *other than Relator*, because Defendants were seeking production of documents relating to any such *other* retainers.

Similarly, misplace emphasis on counsel's statement in a December 16, 2022 letter from counsel that "Markman Advisors and his law firm have not acted on Relator's behalf with respect to this case."  That statement correctly indicated that neither Markman Advisors nor KSK have formally appeared in this case on Relator's behalf.  But that does not refute the fact that an attorney-client relationship exists. Defendants do not suggest (or provide any authority) that an attorney-client relationship with respect to a particular legal proceeding can only exist with attorneys who have actually appeared on a litigation docket.

Defendants say that Relator has not identified any specific communication indicating he sought to become a client of Kroub and Silbersher "at the time" the communications were made. That is not true. The nature of the communications—discussions among law partners of the same firm about an anticipated legal proceeding—evidences that. And Relator is preparing to execute a formal retainer agreement that formally evidences that prior oral understanding. Defendants cite to *Morisky*, 191 F.R.D. at 423. Yet, in *Morisky*, the court was specifically addressing questionnaires distributed at work by non-attorney employees to other non-attorney employees. *Id.* The court relied upon the fact that these employees did not attend a subsequent meeting where the attorneys were present. Here, by contrast, Relator discussed legal matters with his law partners about potential legal proceedings.

Defendants also argue that it "strains credibility" for Relator to claim privilege over communications from six years ago by executing a formal retainer agreement with Kroub and Kolmykov today. But the facts show otherwise. At the time of the communications, Relator worked alongside Kroub and Kolmykov as law partners. As law partners do, they had a multi-year history of frequently turning to each other about legal questions and advice. Because Relator was communicating with his own law partners, rather than lawyers at a separate firm, that strengthened their joint understanding and agreement that discussing potential legal proceedings would be protected by the privilege.

In fact, the Third Circuit has held that a long, prior relationship between a party and an attorney is relevant to whether communications were made with the expectation they would be protected by the attorney-client privilege. *See Costanzo*, 625 F.2d at 469. Indeed, it would abuse the policy behind the attorney-client privilege, namely, to cultivate frank discussions

11

among lawyers and clients, if Relator's communications with his own law partners about an anticipated legal proceeding could be invaded.

In sum, the facts here—a lawyer seeking legal advice from his own law partners about a potential legal proceedings—not only compel a finding that an attorney-client relationship existed, but are starkly distinguishable from the cases cited by Defendants. For instance, Defendants cite to *HPD Labs., Inc. v. Clorox Co.*, 202 F.R.D. 410 (D.N.J. 2001) for the proposition that statements to an attorney alone do not create an attorney-client relationship. But the disputed communications in *HPD Labs* were not even made to an actual attorney, which is clearly distinguishable from this case.

### B. The Attorney Work Product Doctrine Protects the Subject Communications.

Finally, the communications challenged by Defendants are also protected by the work-product doctrine. Under Fed. R. Civ. P. 23(b)(3))A), a party ordinarily "may not discover documents and tangible things that are prepared in anticipation of litigation or for trail by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Defendants make no attempt to demonstrate any exceptions to the protections of the attorney work product doctrine except to repeat their incorrect assertion that Silbersher was purportedly not a client. As described above, this assumption is not true. Mr. Silbersher was a client or potential client seeking legal advice in preparation for potential litigation.

Moreover, Mr. Herrera's firm at the time was counsel in antitrust class actions on behalf of payors of medicine that were allegedly inflated by anticompetitive conduct involving their brand manufacturers. At the time of some of the communications, Relator was also contemplating filing a consumer class action in which his law firm would be retained as potential

12

counsel along with Mr. Herrera. Those communications clearly show they were created in anticipation of litigation, even though such class actions were not eventually filed by Relator or Mr. Herrera (although other law firms did). Fed. R. Civ. P. 26(b)(3)(A). Defendants' argument, without any citation to authority, that the communications of lawyers analyzing the viability of class action claims is not subject to attorney work product protection would essentially overturn the settled expectations of class action attorneys everywhere—and open up their legal analyses to unwarranted discovery in every single class action now pending or filed in the future. Such an unprecedented and dramatic change in the law should be rejected offhand.

***

Based on the foregoing, the Court should reject Defendants' motion. Relator is also prepared to submit the contested documents for the Court's review *in camera*.

**SILLS CUMMIS & GROSS P.C.**

By: *Jeffrey J. Greenbaum*
JEFFREY J. GREENBAUM
jgreenbaum@sillscummis.com
GREGORY E. REID
greid@sillscummis.com
One Riverfront Plaza
Newark, New Jersey 07102
Phone: (973) 643-7000
Facsimile: (973) 643-6500

**SIDLEY AUSTIN LLP**
GORDON D. TODD (*pro hac vice*)
gtodd@sidley.com
ROBERT D. KEELING (*pro hac vice*)
rkeeling@sidley.com
BRIAN P. MORRISSEY (*pro hac vice*)
bmorriss@sidley.com
LAUREN KATZEFF (*pro hac vice*)
lkatzeff @sidley.com
ALARIC R. SMITH (*pro hac vice*)
alaric.smith@sidley.com
1501 K Street, N.W.
Washington, DC 20005

**LITE DEPALMA GREENBERG & AFANADOR, LLC**

By: *Bruce D. Greenberg*
BRUCE D. GREENBERG
570 Broad St, Suite 1201
Newark, NJ 07102
Tel: (973) 623-3000
bgreenberg@litedepalma.com

**HERRERA KENNEDY LLP**
NICOMEDES SY HERRERA (*pro hac vice*)
1300 Clay Street, Suite 600
Oakland, California 94612
Telephone: (510) 422-4700
NHerrera@HerreraKennedy.com
LSeidl@HerreraKennedy.com

**SPARACINO PLLC**
TEJINDER SINGH (*pro hac vice*)
1920 L Street, NW, Suite 835
Washington, DC 20036
Telephone: (202) 629-3530
TSingh@sparacinopllc.com

Telephone: (202) 736-8000

*Attorneys for Defendants Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, and Johnson & Johnson*

*Attorneys for Plaintiff-Relator Zachary Silbersher*