# LITE DEPALMA GREENBERG & AFANADOR

570 Broad Street / Suite 1201 / Newark, NJ 07102
973.623.3000 Main / 973.623.0858 Fax / litedepalma.com

Newark / Philadelphia

May 10, 2024

**VIA ECF AND ELECTRONIC MAIL**
Hon. Douglas E. Arpert, U.S.M.J. (Ret.)
Three Gateway Center
100 Mulberry Street
15th Floor
Newark, New Jersey 07102

> Re:   ***U.S. ex rel. Silbersher v. Janssen Biotech Inc.***
> **Civil Action No. 19-12107(MEF)(CLW)**

Dear Judge Arpert:

Relator submits this letter pursuant to Civil Local Rule 37.1 governing discovery disputes and the Court's Order referring discovery disputes to the Special Master (ECF No. 331). The parties met and conferred on the issues raised with respect to Relator's Interrogatory No. 17, most recently on April 23, 2024. Defendants confirmed on April 25, 2024 that despite the parties' meet and confer, they will stand on their objection to this interrogatory.

Relator is also seeking a protective order under Fed. R. Civ. P. 26(c) prohibiting Defendants from taking third-party discovery against Flatline Capital as set forth in their third-party subpoena. (Attached as **Exhibit A**) Relator served written objections to the subpoena on February 26, 2024 and copied Flatline Capital's attorney. (Attached as **Exhibit B**) On April 30, 2024, Flatline Capital's attorney wrote to the parties saying that Flatline Capital understood that the parties were conferring on the propriety of the subpoena and would wait for that dispute to be resolved in due course prior to responding. On April 30, 2024, Relator's counsel wrote that "Relator served written notice of objections to the subpoena on February 26, 2024. Defendants

**LITE DEPALMA**
**GREENBERG &**
**AFANADOR**

Hon. Douglas E. Arpert, U.S.M.J. (Ret.)
May 10, 2024
Page 2

never responded . . . . If you are now belatedly seeking to enforce the subpoena, . . . we believe that before involving and harassing a third-party to this lawsuit, that Defendants submit their dispute to the Special Master." In response, Flatline's attorney wrote to the parties, confirming that Flatline's position was that the "parties should confer and we'll be guided accordingly." Relator sought to meet and confer with Defendant, but Defendants did not respond. Based on this, Relator believes that this issue is ripe for adjudication by Your Honor.

There are certain pending discovery items that Defendants have either been ordered to provide, which Defendants have not done, or as to which Defendants have said they would provide concrete proposals to provide narrowed discovery in an effort to avoid motion practice, which Defendants have not provided. Though Defendants thus far have not expressly refused to do those things, so there might technically not yet be an impasse, Relator describes those pending issues in order to avoid any claim that Relator has waived them, and to suggest that Your Honor address them with the parties to avoid further motion practice.

There is also one new potential discovery issue that has arisen from the deposition of Eric Harris, a former employee of Defendants, that took place on May 8, 2024. Mr. Harris confirmed the existence of key documents that are responsive to Relator's prior requests, but which have not been produced. Again, Relator raises this issue to avoid waiver and because Your Honor's intervention now may help avoid another motion.

## I.  Defendants' Deficient Responses to Relator's Interrogatory No. 17

Relator's Interrogatory No. 17 asks "For each of your responses to the Requests for Admission served with these Interrogatories that is not an unqualified admission, state all facts

**LITE DEPALMA**
**GREENBERG &**
**AFANADOR**

Hon. Douglas E. Arpert, U.S.M.J. (Ret.)
May 10, 2024
Page 3

upon which you base your response." Defendants object to this Interrogatory because, according to Defendants, it includes subparts and therefore exceeds the number of permissible interrogatories. Defendants therefore refuse to provide any answer whatsoever.

Defendants waived any objections to this interrogatory by failing to respond within 30 days as required under Rule 33. Relator served his Second Set of Interrogatories on Defendants on February 15, 2024. Defendants' responses were due by March 18, 2024, but they failed to serve them on time. Instead, and without any explanation for their tardy response, or any request for an extension of time to respond, Defendants served a mix of objections and responses seven days late, on March 25, 2024.

As a result, Defendants have waived any objections to these interrogatories. *See* Fed. R. Civ. P. R. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity. Any ground **not stated in a timely objection is waived** unless the court, for good cause, excuses the failure.") (emphasis added); *id.*, Notes of Advisory Committee on Rules–1993 Amendment ("Paragraph (4) is added to make clear that objections must be specifically justified, and that unstated or **untimely grounds for objection ordinarily are waived**.") (emphasis added); *Allen v. Banner Life Ins. Co.*, 340 F.R.D. 232, 239 (D.N.J. 2022) (referring to Rule 33's "automatic-waiver provision governing interrogatories"). *See Rohrbach v. NVR, Inc.*, 2022 U.S. Dist. LEXIS 160886, at *3-4 (E.D. Pa. July 8, 2022) (citing the waiver provision in Rule 33 in ordering that party provide "full and complete" responses to interrogatories "without objection").

Further, even if Defendants had not waived their objections, Relator's Interrogatory No. 17 would still be proper. *See Holbrook v. Jellen*, No. 3:14-CV-0028, 2015 WL 3540774, at **2, 5

**LITE DEPALMA**
**GREENBERG &**
**AFANADOR**

Hon. Douglas E. Arpert, U.S.M.J. (Ret.)
May 10, 2024
Page 4

(M.D. Pa. June 3, 2015) (rejecting defendants' argument that certain interrogatories improperly asked, "for each of your responses to plaintiffs' requests for admission (served concurrently herewith) which is not an unqualified admission, state the basis for your denial of the fact(s) stated in each request": "The defendants' responses to the plaintiffs' request for admissions can be met with interrogatories seeking to justify the response that is not an admission. The plaintiffs do not control the defendants' responses to the requests for admissions and therefore the plaintiffs are permitted to inquire further.").

II.    **Relator Seeks a Protective Order Under Fed. R. Civ. P. 26(c) Concerning Defendants' Improper Subpoena to Flatline Capital**

A party may move under Fed. R. Civ. P. 26(c) "for a protective order to enjoin the production of irrelevant information for subpoenas issued to non-parties." *Aetrex Worldwide, Inc. v. Burten Distribution, Inc.*, No. CIV.A. 13-1140 SRC, 2014 WL 7073466, at *5 (D.N.J. Dec. 15, 2014). Relator believes the Court should grant a protective order to enjoin Defendants from enforcing the subpoena to Flatline. Relator is not moving to quash the subpoena.

This is a simple issue. Flatline retained Mr. Silbersher to invalidate a completely different patent for a completely different drug manufactured by a completely different set of Defendants. Defendants have issued a subpoena to Flatline to obtain documents, including Mr. Silbersher's advice to Flatline, regarding that patent *inter partes* review proceeding. It has nothing to do with this case, and Defendants have never sought to justify why they are seeking this information. Moreover, Defendants have consistently taken the position in opposition to discovery Relator served on them that discovery concerning drugs or patents other than those at issue in this case is improper. This position should apply to their discovery as well.

Hon. Douglas E. Arpert, U.S.M.J. (Ret.)
May 10, 2024
Page 5

It would appear that Defendants wish to explore a past dispute between Relator and Flatline concerning whether Relator or Flatline should have been the proper Relator in connection with a completely different *qui tam* action pending in California. That dispute has no bearing on any issue in this litigation.

Defendants' subpoena to Flatline is disproportionately burdensome (because there is absolutely no legitimate purpose for obtaining such information with respect to any material issue in this case), and improperly seeks confidential information relating to the attorney-client relationship between Relator and his former client, Flatline.

III.    **Other Pending Discovery Issues Noted Above**

First, Defendants promised on April 25, 2024 to provide a possible proposal to resolve the parties' dispute concerning Relator's Requests for Production Numbers Request Nos. 90-93, 94, 96, and 98. Although Defendants said they would provide a response by May 3, they have not done so.

Second, the parties continue to have a disagreement on one search term request for the custodial files of Andrea Kamage, Timothy Tracy, and Paul Short. Relator provided the Court with an update on this dispute on May 8, 2024, and requested the Court to order the additional search term. Defendants wrongly claim that Relator should not have presented that issue.  Relator has also asked Defendants to confirm that they produce all documents that are returned by the agreed-upon search queries.  Defendants have not confirmed that.

**LITE DEPALMA**
**GREENBERG &**
**AFANADOR**

Hon. Douglas E. Arpert, U.S.M.J. (Ret.)
May 10, 2024
Page 6

Third, Defendants promised to provide Relator with a list of videos of depositions taken in the ANDA litigation, and to make a rolling production of them. Defendants have promised to do so, but they are overdue on their response and production.

Fourth, Relator has identified key information that was excluded from Defendants' document production during the deposition of Defendants' former employee, Eric Harris, on May 8, 2024. During his deposition, Mr. Harris, testified that certain assumptions, data, and models that Defendants used in generating their long range financial forecasts resided in Defendants' central database. These critical assumptions and data are not otherwise visible or included the Long Range Financial Forecasts and executive presentations incorporating these models and data revealing Defendants' internal projections of patent expiration or loss of exclusivity that are important to this case (and which Relator explained in his Motion for *In Camera Review* of Documents Not Subject to Privilege Pursuant to the Crime-Fraud Exception, ECF No. 346, at pp. 17-18 & Exhibits 22-24). Defendants did not produce these data and models, even though they were clearly called for in several requests for production, including, without limitation, Relator's Request Nos. 4, 22, and 25. Relator is requesting that Defendants immediately produce these critical and missing information for the time period from 2011 to 2016.[1] Relator continues to meet and confer with Defendants to obtain this information, but the issue would benefit from Your Honor's attention.

Fifth, Defendants committed to providing organizational charts and specific information concerning the precise employer of each deponent who is an employee or former employee, as

---

[1] Mr. Harris was responsible for modeling Zytiga forecasts from 2013 to 2014, but Relator is entitled not only to the assumptions, data, and models he used, but also those of his predecessor and successor from 2011 to 2016.

**LITE DEPALMA**
**GREENBERG &**
**AFANADOR**

Hon. Douglas E. Arpert, U.S.M.J. (Ret.)
May 10, 2024
Page 7

reflected by Defendants' submission to Your Honor, and Your Honor's subsequent order. (ECF No. 338) To date, Defendants have failed to provide *any* information relating to these issues.

Sixth, Relator's Requests for Admissions 21-25 ask Defendants to admit that documents produced by Defendants were authentic business records. Relator has discussed with Defendants narrowing the number of documents for which Relator seeks such admissions until such time that the parties confer about stipulations for the admissibility of documents for trial. If Defendants refuse to stipulate to the authenticity of business records, requiring testimony from custodians, then Relator reserves the right to insist on answers from Defendants concerning these Requests for Admission.

Seventh, for weeks, Relator has been asking Defendants to provide dates for several witnesses that Defendants' counsel represents. Defendants have not provided available dates. Scheduling these depositions is necessary for the expeditious completion of fact discovery, and Relator would like to discuss this issue with Your Honor if Defendants do not provide dates for the remaining witnesses within three business days.

Based on the foregoing, Your Honor should grant Relator's requested relief.

Respectfully,

*/s/ Bruce D. Greenberg*

Bruce D. Greenberg

BDG:emp

cc:    All Counsel of Record (via ECF and email)

# EXHIBIT A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

## for the

District of New Jersey

| | |
|---|---|
| United States ex rel. Silbersher, et al. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 19-12107-MEF-ESK |
| Janssen Biotech, Inc., et al | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:      Flat Line Capital LLC and Kevin Barnes
         8 The Green, Suite A, Dover, DE 19901

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

    See Attachment A

| Place: Sidley Austin LLP, Attn: Alaric R. Smith | Date and Time: |
|---|---|
| 1501 K Street, N.W. #600, Washington, DC 20005 | 02/26/2023 9:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____

|  *CLERK OF COURT* | OR | |
|---|---|---|
| | | /s/ Jeffrey J. Greenbaum |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* ___Defendants___
Janssen Biotech, Inc., et al._____ , who issues or requests this subpoena, are:

Jeffrey J. Greenbaum, Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, NJ 07102; Tel: 973-643-5430

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   19-12107-MEF-ESK

### PROOF OF SERVICE
#### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☑ I served the subpoena by delivering a copy to the named person as follows:   Emailed attorney at

efried@slarskey.com; service accepted by counsel Evan Fried, Esq. at Slarksey LLC by email on 1/25/2024.

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date:   01/25/2024                                   /s/ Alaric R. Smith
                                                    _____
                                                        *Server's signature*

                                        Alaric Smith, Senior Managing Associate
                                        _____
                                                    *Printed name and title*
                                                 Sidley Austin LLP
                                        1501 K St. NW, Washington, DC 20005

                                        _____
                                                    *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
   **(i)** is a party or a party's officer; or
   **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
   **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
   **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
   **(i)** fails to allow a reasonable time to comply;
   **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
   **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
   **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
   **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
   **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
   **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
   **(i)** expressly make the claim; and
   **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

### DEFINITIONS

1.       The singular shall be construed to include the plural, and vice versa, to make the discovery request inclusive rather than exclusive.

2.       The words "and" and "or," even when used without the other, shall be construed conjunctively or disjunctively as is necessary to make the discovery request inclusive rather than exclusive.

3.       The words "any," "all," and "each," even when used without another, shall be construed disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4.       The terms "Document" and "Documents" shall include those definitions contained in Fed. R. Civ. P. 34(a)(1)(A), Fed. R. Evid. 101(b)(4), and Fed. R. Evid. 1001.  These requests do not seek or require production of multiple, identical copies of a document (i.e., identical versions of a document that do not contain different notations, marks, alterations, data, comments, or other changes).  "Document" includes both tangible materials and electronically stored information ("ESI").

5.       The term "relating to" shall be read broadly and encompasses relating to, concerning, referring to, reflecting on, arising out of, supporting, negating, disclosing, memorializing, analyzing, reporting, communicating, showing, discussing, underlying, and constituting.

6.       The "Action" and "Litigation" means the above-captioned matter.

7.       The term "Defendants" means Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, and Johnson & Johnson.

8.      The term "Relator" refers to Zachary Silbersher and his agents and/or representatives, including but not limited to Joseph Saveri Law Firm, Inc; Markman Advisors; Kroub, Silbersher & Kolmykov PLLC; Goldstein & Russell P.C.; Herrera Purdy LLP; Herrera Kennedy LLP; Burns Charest LLP; and/or Morgan & Morgan.

9.      The term "Kroub, Silbersher & Kolmykov PLLC" includes each of its principals, including Zachary Silbersher, Gaston Kroub, and Sergey Kolmykov, as well as any other persons employed or retained by Kroub, Silbersher, & Kolmykov PLLC or acting on its behalf.

10.     The term "Markman Advisors LLC" includes each of its members, including Zachary Silbersher, Gaston Kroub, and Sergey Kolmykov, as well as any other persons employed or retained by Markman Advisors LLC or acting on its behalf.

11.     The term "'438 Patent" refers to United States Patent No. 8,822,438, titled "Methods and Compositions for Treating Cancer," including any application that claims priority to, or from which priority is claimed by, any of the applications that issued as the '438 patent.

12.     The terms "You" and "Your" refer to Flat Line Capital LLC and Kevin Barnes

## **INSTRUCTIONS**

1.      Documents must be produced in accordance with the Stipulation and Order Concerning Protocol For Discovery Of Electronically Stored Information and Hardcopy Documents entered into between the Parties, Dkt. 160 (July 19, 2021) (Attachment B), or as agreed by the parties or as ordered by the Court in any supplemental ESI protocol.

2.      These Requests pertain to all responsive documents in your possession, custody, or control, including the control of anyone engaged by you or acting on your behalf.

3.      Documents not otherwise responsive to these Requests shall be produced if such documents are attached to documents that are responsive to these Requests and constitute routing slips, transmittal memoranda, letters, cover sheets, comments, evaluations, or similar materials.

4.      The requests below are continuing in nature pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.

## **REQUESTS FOR PRODUCTION**

1.      All documents and communications with Relator, Markman Advisors LLC, and/or Kroub, Silbersher & Kolmykov PLLC relating to (a) allegations of fraud or inequitable conduct in a patent prosecution; (b) the effect and/or propriety of obtaining multiple patents on a single brand name drug; (c) "evergreening"; (d) the effect of a generic product's entry into the market; (e) the use or application of a "commercial success" argument to procure a patent; and/or (f) theories of liability for conduct before the USPTO.

2.      All documents and communications with Relator, Markman Advisors LLC, and/or Kroub, Silbersher & Kolmykov PLLC relating to the analysis of patent litigation, including, without limitation, post-trial analyses, *Markman* Hearing Preview Reports, Hatch-Waxman Litigation Updates, Bench Trial Cheat Sheets, and US Generic Entry Date Analyses.

3.      All documents and communications with Relator, Markman Advisors LLC, and/or Kroub, Silbersher & Kolmykov PLLC relating to Defendants, Zytiga, the '438 Patent, or the subject matter of this litigation.

4.      All documents and communications with Relator, Markman Advisors LLC, and/or Kroub, Silbersher & Kolmykov PLLC relating to the use of information contained in a patent file wrapper or from an *Inter Partes* Review proceeding in a litigation pursuant to the False Claims Act, 31 U.S.C. §§ 3729 – 3733, or Federal antitrust laws.

5.      All documents and communications with Relator, Markman Advisors LLC, and/or Kroub, Silbersher & Kolmykov PLLC relating to strategies for the monetization of patent litigation, or any other litigation based on underlying patent law issues.

6.      All documents and communications with Relator, Markman Advisors LLC, and/or Kroub, Silbersher & Kolmykov PLLC relating to the claims or allegations in Relator's Second Amended Complaint, including the origin of information resulting in those claims and allegations.

7.      All documents and communications with Relator, Markman Advisors LLC, and/or Kroub, Silbersher & Kolmykov PLLC relating to the claims and allegations in *United States ex rel. Silbersher v. Valeant Pharm. Int'l Inc., et al.*, Civil Case No. 3:18-cv-01496-JD (N.D. Cal.), including the origin of information resulting in those claims and allegations.

8.      All documents and communications with Relator, Markman Advisors LLC, and/or Kroub, Silbersher & Kolmykov PLLC relating to the claims and allegations in *United States ex rel. Silbersher v. Allergan, Inc, et al.*, Civil Case No. 2:18-cv-03018-JCS (N.D. Cal.), including the origin of information resulting in those claims and allegations.

9.      All agreements between You and Relator, Markman Advisors LLC, and/or Kroub, Silbersher & Kolmykov PLLC relating to the provision of legal or professional services.

10.     All other relevant documents or communications with Relator, Markman Advisors LLC, and/or Kroub, Silbersher & Kolmykov PLLC relating in any way to the facts and allegations in this Litigation.

**Attachment B**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: Zytiga Litigation | Master Docket No. 19-12107 (KM)(ESK) |
| This Document Relates To: *Qui Tam* Action and End-Payor Class Action | |

**STIPULATION AND ORDER CONCERNING PROTOCOL FOR**
**DISCOVERY OF ELECTRONICALLY STORED INFORMATION**
**AND HARDCOPY DOCUMENTS**

WHEREAS, in accordance with Federal Rule of Civil Procedure 26(f) and Local Rule 26.1(d), counsel have met and conferred regarding application of the discovery process set forth in the Federal Rules of Civil Procedure and the Local Civil Rules to this case;

WHEREAS, the Parties have reached agreement on certain of the issues discussed regarding such discovery;

WHEREAS, the Parties have entered into this Stipulation and Order Concerning Protocol for Discovery of Electronically Stored Information and Hardcopy Documents ("Stipulation and Order") to facilitate the conduct of discovery involving electronically stored information ("ESI") and to promote, to the fullest extent possible, the resolution of disputes regarding the discovery of ESI without Court intervention;

IT IS HEREBY ORDERED that:

1.  <u>Scope</u>.

    a.      Subject to the Protective Order entered in these actions, this Stipulation and Order shall govern the discovery of documents and ESI, as described in Fed. R. Civ. P. 26, 33, and 34;

1

b. All Parties are bound by and subject to the terms of this Stipulation and Order.

2. <u>Cooperation</u>.  The Parties agree to cooperate in seeking to efficiently conduct discovery in this matter.

3. <u>No Designation of Discovery Requests</u>.  Productions of materials in the reasonably usable form set out in this protocol, including Attachment A, need not be organized and labeled to correspond to the categories in the requests.  However, a producing party should provide information concerning the source of the documents being produced (*i.e.,* "this production consists of documents from the custodial files of Person A, Person B, and Person C.").

4. <u>Search Methodology</u>.

a. The Parties expect to employ one or more search methodologies, including possibly but without limitation the use of advanced search and retrieval technologies, to identify potentially relevant ESI, including email. The parties agree to further meet-and-confer on this subject prior to the commencement of discovery beyond that called for in the Court's Order of July 8, 2021.

b. The fact that any electronic file has been identified in agreed-upon searches shall not prevent any Party from withholding such file, or some portion of it, from production on the grounds that the file, or some portion of it, is protected from disclosure by applicable privilege or immunity, or is otherwise allowed to be withheld pursuant to the Parties' agreement or an Order entered by this Court.  In each case, any responsive portion(s) not subject to privilege, privacy law or regulation, or the Protective Order shall be produced.

c.      Nothing in this section shall limit a Party's right reasonably to seek agreement from the other Parties or a court ruling to modify previously agreed-upon search terms or procedures for advanced search and retrieval technologies.

5.      <u>Prioritized Searching</u>.

a.      <u>Data Sources that are Reasonably Accessible</u>.  Any search for potentially relevant documents or ESI shall involve searching for such documents in data sources within which such documents and ESI are likely to be most readily accessible.

6.      <u>Deduplication</u>.

a.      A Party is only required to produce a single copy of a responsive document.  Parties may deduplicate stand-alone documents or entire document families vertically within each custodian or horizontally (also referred to as globally) across custodians, as to exact duplicates.  Documents are exact duplicates if they have matching MD5 or SHA-1 hash values.  When duplicate ESI exists in the files of multiple agreed-on custodians and a party deduplicates its production, the names of those custodians shall be listed in the OTHER_CUSTODIANS field identified in Paragraph A.13(c) of Attachment A.

b.      When comparing document families, if a parent document is an exact duplicate but one or more attachments or embedded files are not exact duplicates, neither the attachments or embedded files nor the parent document will be deduplicated.

c.      Attachments to emails shall not be eliminated from their parent emails.  Where a stand-alone document is an exact duplicate of an email attachment, the email attachment must be produced and the stand-alone document may be deduplicated.

d.      If the Producing Party makes supplemental productions following an initial production, the Party shall also provide with each supplemental production an overlay filed to allow the Receiving Party to update the OTHER_CUSTODIANS field.

7.      <u>Known Software Files</u>.  Known software files (*i.e.*, applications) identified in the National Software Reference Library database maintained by the National Institute of Standards and Technology need not be collected or produced.

8.      <u>Email Threads</u>.

a.      The parties agree to further meet-and-confer on this subject prior to the commencement of discovery beyond that called for in the Court's Order of July 8, 2021.

9.      <u>Permissible Redactions</u>.

a.      The parties agree to further meet-and-confer on this subject prior to the commencement of discovery beyond that called for in the Court's Order of July 8, 2021.

10.      <u>Production Format for ESI</u>.

a.      <u>General Provisions</u>.  Except as provided in subparagraphs (b) and (c), below, documents originally collected as electronic files will be converted to *.tif image format with extracted or OCR text and associated metadata set forth on Attachment A ("TIFF-*Plus* format").  After such production in TIFF-*Plus* format is complete, a Party may request that particular ESI be reproduced in another format (including native), and the parties will meet-and-confer in good faith as to such requests.  If the Receiving Party believes in good faith that a document originally produced in black-and-white should be produced in color, it shall notify the Producing Party, who shall produce a color copy of any such document(s) if it has custody or control of a version of the document in color.  If the Producing Party believes that such requests are unduly burdensome, the parties shall meet and confer in good faith to attempt to resolve any

4

disputes.  All references in this Stipulation and Order to TIFF or *.tif images shall apply equally to color JPEG or *.jpeg images produced in according with this Stipulation and Order.

        b.    <u>Spreadsheets, Presentations, Desktop Databases, and Multimedia Files</u>.  Spreadsheet files including Microsoft Excel (*.xls, *.xlsx), desktop database files including Microsoft Access (*.mdb or *.accdb), electronic presentations (*e.g.,* PowerPoint), and multimedia files including audio and video will be produced in native format.  If any such file requires redaction, the file may be converted to the TIFF-*Plus* format and redacted as needed, or, when appropriate and cost-effective (as agreed upon by the parties after meeting and conferring or as ordered by the Court), a copy of the native file may be redacted (with the text "REDACTED" replacing the redacted content) and the redacted native copy may be produced.  Procedures for assigning production numbers and confidentiality information to files produced in native format are addressed in Appendix A, Paragraph A.15.

        c.    <u>Enterprise Databases</u>.  In instances in which discoverable electronically stored information in an enterprise database or database management system (*e.g.*, Oracle, SQL server, DB2) is to be produced, the parties shall meet-and-confer to discuss the most efficient format in which such information should be produced; if such information can be produced in an already existing and reasonably available report, the Parties shall specifically discuss whether production in the reasonably usable TIFF-image form described in Attachment A, is an acceptable report format.  If an existing report form is not reasonably available, the Parties shall export from the original database discoverable information in a format compatible with Microsoft Excel or Microsoft Access, and the information shall be produced in that native format.

d.      Time Zone.  Unless otherwise agreed, all dynamic date and time fields, where such fields are processed to contain a value, and all metadata pertaining to dates and times will be standardized to Universal Coordinated Time (UTC).  The Parties understand and acknowledge that such standardization affects only dynamic fields and metadata values and does not affect, among other things, dates and times that are hard-coded text within a file.  Dates and times that are hard-coded text within a file (for example, in an email thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced as part of the document text in accordance with subparagraph (a), above.

e.      Prior Productions:  The parties recognize that a large percentage of the information comprising initial discovery set to commence on August 11, 2021 will constitute information previously produced in the underlying litigation concerning abiraterone acetate between Defendants in this Action and generic manufacturers who are non-parties to this Action ("underlying litigation"). Defendants plan to re-produce that material in this case, in the form it was produced previously (*i.e.,* at no cost to Plaintiffs, with no redactions or withholdings that were not part of the prior productions, with the same Bates numbers that were on the initial production, etc.).  The parties agree to further meet-and-confer on this subject prior to the commencement of discovery beyond that called for in the Court's Order of July 8, 2021.

f.      The Parties agree not to degrade the searchability of Documents as part of the Document production process.

11.     Additional Procedures for Native Format Files.  Any Party seeking to use, in any proceeding in this Action, files produced in native format shall do so subject to the following:

6

a.      If the native file has been converted to TIFF-image or hardcopy, the original production number and confidentiality designation of the native file shall be stamped on each page of the resulting TIFF-image or hardcopy document representing the original native-format file.

b.      Use of a file in native format, or use of a TIFF-image or hardcopy document representing the original native-format file shall constitute a representation that the file being used is an accurate and complete depiction of the original native-format file.

12.     <u>Production Format for Hard Copy Documents</u>.  Documents that exist in hard copy will be produced in accordance with Fed. R. Civ. P. 34.  Documents in hard copy that are identified for production, either by the producing Party, or by the requesting Party upon inspection pursuant to Fed. R. Civ. P. 34(a), will be scanned to *.tif image format and produced in accordance with the specifications set forth on Attachment A.  Except as set out in section A.12 of the Appendix, the scanning of original hardcopy documents does not otherwise require that the scanned images be treated as ESI.

13.     <u>Authenticity and Admissibility</u>.  Nothing in this protocol shall be construed to affect the authenticity or admissibility of any document or ESI.  All objections to the authenticity or admissibility of any document or ESI are preserved and may be asserted at any time in the litigation prior to any court-imposed deadline.  The Parties agree to meet and confer in an attempt to address and/or narrow disputes of authenticity and admissibility in advance of a document's or ESI's use at trial.

14.     <u>Confidential Information</u>.  Nothing in this Stipulation and Order shall supersede or alter any discovery confidentiality order and/or protective order concerning protection of

confidential or otherwise sensitive information that may be entered by the Court in these proceedings.

15.     <u>Reimbursement of Costs</u>.  The parties agree to further meet-and-confer on this subject prior to the commencement of discovery beyond that called for in the Court's Order of July 8, 2021.

16.     <u>Preservation of Potentially Relevant Information</u>.

a.     Each Party shall be responsible for taking reasonable steps to preserve potentially relevant documents and ESI within its possession, custody, or control.

b.     The following categories of ESI need not be searched:

    i     Backup data files that are maintained in the normal course of business for purposes of disaster recovery, including (but not limited to) backup tapes, disks, SAN, and other forms of media and that are substantially duplicative of data that are more accessible elsewhere;

    ii     "deleted," "slack," "fragmented," or "unallocated" data only accessible by forensics;

    iii     random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

    iv     on-line access data such as (without limitation) temporary internet files, history, cache files, cookies, etc.;

    v     data in metadata fields frequently updated automatically, such as last-opened or last-printed dates;

vi   SAS program and data files;

vii   Server, system, network, or software application logs;

viii   Data remaining from systems no longer in use that is unintelligible on systems in use;

ix   Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report;

x   Structural files not material to individual file contents (e.g. .CSS, .XSL, .XML, .DTD, etc.);

xi   Operating System files that do not store user-created content (e.g. CAT, DLL, DMP, EXE, FON, PNF, OPS, SYS, etc.);

xii   Application source code, configuration, and other similar files necessary for the function of an application that do not store user-created content during ordinary use (E.g. BAK, BIN, CFG, DBF, DAT, JS, JSON, JAR, LUA, MSB, RES, WINNT, YTR, etc.) and

xiii   Other forms of ESI, not otherwise addressed in this protocol, whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

    c. The following categories of ESI need not be searched at this time, but must be preserved in a manner consistent with the Parties' obligations under the Federal Rules of Civil Procedure:

      i. Electronic data (*e.g.*, call logs, email, calendars, contact data, notes, and text messages) stored on mobile devices (*e.g.*, iPhone, iPad, Android, and BlackBerry devices);

      ii. Voicemail .wav files; and

      iii. Text messages and instant messages that are not retained in the ordinary course of business.

   17. <u>Definitions</u>.  As used in this Stipulation and Order, the following terms shall have the following meanings.

    a. <u>Attachment</u>.  An "attachment" is a file (or files) associated with another file (such as an email message) for retention and storage as a single unit.

    b. <u>Document Family</u>.  A "document family" is a collection of pages or files produced manually or by a software application, constituting a logical single communication of information, but consisting of more than a single stand-alone record. Specifically as to email, a "document family" is an email and any attachments associated with it.

    c. <u>Electronically Stored Information ("ESI")</u>.  "ESI" has the same meaning as in Federal Rule of Civil Procedure 34(a) and Federal Rule of Evidence 1001.

    d. <u>Email Message</u>.  An "email message" is a document created or received via any electronic mail system.  Any attachments that may be transmitted with an email message, such as word processing and other electronic documents, are not part of the email message, but are part of the Document Family.

        e.    <u>Load File</u>.  A "load file" is a file that provides certain information regarding a set of scanned images or electronically processed files.  An image load file indicates, *inter alia*, where individual pages or files belong together as documents, to include attachments, and where each document begins and ends.  A data load file typically contains data relevant to the individual documents, such as selected metadata, coded data, and extracted text.

        f.    <u>Native format</u>.  For any item of ESI, "native format" means the file structure defined by the original application in which the file was created.

It is hereby ORDERED:

        *Edward S. Kiel*
        ————————————————
Dated:  July **18**, 2021        **Edward S. Kiel, U.S.M.J.**

WE HEREBY CONSENT TO THE FORM AND SUBSTANCE OF THE FOREGOING ORDER:

**SILLS CUMMIS & GROSS P.C.**

By: /s/ Jeffrey J. Greenbaum
JEFFREY J. GREENBAUM
jgreenbaum@sillscummis.com
GREGORY E. REID
greid@sillscummis.com
One Riverfront Plaza
Newark, New Jersey 07102
Phone: (973) 643-7000
Facsimile: (973) 643-6500

**SIDLEY AUSTIN LLP**

GORDON D. TODD (pro hac vice)
gtodd@sidley.com
KIMBERLY LEAMAN (pro hac vice)
kimberly.leaman@sidley.com
1501 K Street, N.W.
Washington, DC 20005

By: /s/ James E. Cecchi
James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
(973) 994-1700

*Interim Liaison Counsel for End-Payor Plaintiffs and the Proposed End-Payor Class*

Thomas M. Sobol
Lauren G. Barnes
Gregory T. Arnold
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

11

**COVINGTON & BURLING LLP**

TIMOTHY C. HESTER (pro hac vice)
thester@cov.com
ASHLEY E. BASS (pro hac vice)
abass@cov.com
CAROL A. SZURKOWSKI (pro hac vice)
cszurkowski@cov.com
One CityCenter 850 Tenth Street, NW
Washington, DC 20001

*Attorneys for Defendants Janssen Biotech,
Inc., Janssen Oncology, Inc., Janssen Research
& Development, LLC, and Johnson & Johnson*

**WALSH PIZZI O'REILLY FALANGA
LLP**

By: /s/ Liza M. Walsh
LIZA M. WALSH
lwalsh@walsh.law
KATELYN O'REILLY
koreilly@walsh.law
WILLIAM T. WALSH, JR.
wwalsh@walsh.law
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
Phone: (973) 757-1100
Facsimile: (973) 757-1090

**WHITE & CASE LLP**

JACK E. PACE III (pro hac vice)
jpace@whitecase.com
ALISON HANSTEAD (pro hac vice)
ahanstead@whitecase.com
1221 Avenue of the Americas
New York, NY 10020-1095

PETER J. CARNEY (pro hac vice)
pcarney@whitecase.com
ADAM M. ACOSTA (pro hac vice)
adam.acosta@whitecase.com
701 Thirteenth Street, NW
Washington, DC 20005-3807

tom@hbsslaw.com
lauren@hbsslaw.com
grega@hbsslaw.com

Sharon K. Robertson
Donna M. Evans
COHEN MILSTEIN SELLERS & TOLL, PLLC
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
srobertson@cohenmilstein.com
devans@cohenmilstein.com

*Co-Chairs of the Co-Interim Lead Counsel
Committee for the Proposed End-Payor Class*

James R. Dugan II
David S. Scalia
TerriAnne Benedetto
THE DUGAN LAW FIRM, LLC
One Canal Place, Suite 1000
365 Canal Street
New Orleans, LA 70130
Telephone: (504) 648-0180
Facsimile: (504) 648-0181
jdugan@dugan-lawfirm.com
dscalia@dugan-lawfirm.com
tbenedetto@dugan-lawfirm.com

*Counsel for Plaintiffs Louisiana Health Service
& Indemnity Company d/b/a Blue Cross and
Blue Shield of Louisiana, HMO Louisiana, Inc.
and Co-Interim Lead Counsel for the Proposed
End-Payor Class*

Joseph H. Meltzer
Terence S. Ziegler
Donna Siegel Moffa
KESSLER TOPAZ MELTZER & CHECK LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
jmeltzer@ktmc.com
tziegler@ktmc.com

12

KEVIN M. BOLAN (pro hac vice)
kevin.bolan@whitecase.com
75 State Street Boston, MA 02109-1814
Telephone: (617) 979-9311

*Attorneys for Defendant BTG International
Limited*

dmoffa@ktmc.com

*Counsel for Plaintiff Iron Workers District
Council (Philadelphia and Vicinity) Health
Benefit Plan and Co-Interim Lead Counsel for
the Proposed End-Payor Class*

Joe P. Leniski, Jr.
J. Gerard Stranch, IV
James G. Stranch, III
BRANSTETTER, STRANCH & JENNINGS, PLLC
223 Rosa Parks Ave., Suite 200
Nashville, TN 37203
Telephone: 615/254-8801
Facsimile: 615/255-5419
joeyl@bsjfirm.com
gerards@bsjfirm.com
jims@bsjfirm.com

*Council for Plaintiff Kentucky Laborers
District Council Health and Welfare Fund and
Co-Interim Lead Counsel for the Proposed
End-Payor Class*

Richard A. Sherburne, Jr.
Jessica W. Chapman
LOUISIANA HEALTH SERVICE & INDEMNITY
COMPANY, D/B/A BLUE CROSS AND BLUE
SHIELD OF LOUISIANA
5525 Reitz Avenue (70809)
P.O. Box 98029
Baton Rouge, LA 70809-9029
Telephone: (225) 298-1144
Facsimile: (225) 297-2760
Richard.Sherburne@bcbsla.com
Jessica.Chapman@bcbsla.com

Bryan F. Aylstock
Justin G. Witkin
AYLSTOCK WITKIN KREIS OVERHOLTZ PLLC
17 East Main Street
Pensacola, FL 32502
Telephone: (850) 202-1010
Facsimile: (850) 916-7449
baylstock@awkolaw.com
jwitkin@awkolaw.com

13

*Counsel for Plaintiffs Louisiana Health Service
& Indemnity Company d/b/a Blue Cross and
Blue Shield of Louisiana, HMO Louisiana, Inc.*

Christopher J. Cormier
BURNS CHAREST LLP
4725 Wisconsin Avenue, NW Suite 200
Washington, DC 20016
ccormier@burnscharest.com

Warren T. Burns
Spencer Cox
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas 75201
Tel: (469) 904-4550
wburns@burnscharest.com
scox@burnscharest.com

Amanda Klevorn
BURNS CHAREST LLP
65 Canal Street, Suite 1170
New Orleans, Louisiana 70130
Tel: (504) 799-2845
lwright@burnscharest.com

*Counsel for Plaintiff the Mayor and City
Council of Baltimore and the Proposed End-
Payor Class*

Jane Lewis
CITY OF BALTIMORE DEPARTMENT OF LAW
City Hall, Room 109
100 N. Holiday Street
Baltimore, MD 21202
Telephone: (443) 388-2190
Jane.Lewis@baltimorecity.gov

*Counsel for Plaintiff the Mayor and City
Council of Baltimore*

Heidi M. Silton
Karen H. Riebel
Jessica N. Servais
LOCKRIDGE GRINDAL NAUEN PLLP

14

100 Washington Avenue S., Suite 2200
Minneapolis, Minnesota 55401
Tel: (612) 339-6900
Fax: (612) 339-0981
hmsilton@locklaw.com
khriebel@locklaw.com
jnservais@locklaw.com

Daniel C. Hedlund
Michelle J. Looby
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, Minnesota 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com

*Counsel for Plaintiff Pipe Trades Services MN
Welfare Fund and the Proposed End-Payor
Class*

By: /s/ Bruce D. Greenberg
Bruce D. Greenberg
LITE DEPALMA GREENBERG & AFANADOR,
LLC
570 Broad St, Suite 1201 Newark, NJ 07102
Tel: (973) 623-3000
Fax: (973) 623-0858
bgreenberg@litedepalma.com

Nicomedes Sy Herrera (pro hac vice)
Laura E. Seidl (pro hac vice)
HERRERA KENNEDY LLP
1300 Clay Street, Suite 600
Oakland, California 94612
Telephone: (510) 422-4700
NHerrera@HerreraKennedy.com
LSeidl@HerreraKennedy.com

Tejinder Singh (pro hac vice)
GOLDSTEIN & RUSSELL, P.C.
7475 Wisconsin Avenue, Suite 850
Bethesda, Maryland 20814
Telephone: (202) 362-0636
TSingh@goldsteinrussell.com

15

*Attorneys for Plaintiff-Relator Zachary Silbersher*

## ATTACHMENT A

A.1.   <u>Image Files</u>. Files produced in *.tif format will be single page black and white *.tif images at 300 DPI, Group IV compression. Files produced in color will be provided as single page *jpeg images.  To the extent possible, original orientation will be maintained (*i.e.*, portrait-to-portrait and landscape-to-landscape). Each *.tif/*.jpeg image will be assigned a unique name matching the production number of the corresponding page. Such files will be grouped in folders of no more than 1,000 *.tif/*.jpeg files each unless necessary to prevent a file from splitting across folders. Files will not be split across folders and separate folders will not be created for each file. Production ("Bates") numbers shall be endorsed on the lower right corner of all images. This number shall be a unique, consistently formatted identifier that will:

    a)    be consistent across the production;

    b)    contain no special characters; and

    c)    be numerically sequential within a given file.

Bates numbers should be a combination of an alpha prefix along with a 7- or 8-digit number (e.g. ABC00000001). The number of digits in the numeric portion of the Bates number format should not change in subsequent productions. Confidentiality designations, if any, will be endorsed on the lower left corner of all images and shall not obscure any portion of the original file.

A.2.   <u>File Text</u>. Except where ESI contains text that has been redacted under assertion of privilege, other protection from disclosure, or as otherwise provided in this Stipulation and Order, full extracted text will be provided in the format of a single *.txt file for each file (*i.e.*, not one *.txt file per *.tif/*.jpeg image). Where ESI contains text that has been redacted under assertion of privilege, other protection from disclosure, or as otherwise provided in this Stipulation and Order, the redacted *.tif/*.jpeg image will be OCR'd and file-level OCR text will be provided in lieu of extracted text.  In other instances where text extraction is not possible, such as with certain *PDF files, OCR text will be provided.  Searchable text will be produced as file-level multi-page UTF-8 text files with the text file named to match the beginning production number of the file. The full path of the text file must be provided in the *.dat data load file.

A.3.   <u>Word Processing Files</u>. Word processing files, including without limitation Microsoft Word files (*.doc and *.docx), will be produced in the above format with tracked changes, comments, and hidden text showing.

A.4.   <u>Presentation Files</u>. To the extent that presentation files, including without limitation Microsoft PowerPoint files (*.ppt and *.pptx), are produced in *.tif/*.jpeg image format, such *.tif/*.jpeg images will display comments, hidden slides, speakers' notes, and similar data in such files.

A.5.   <u>Spreadsheet or Worksheet Files.</u> To the extent that spreadsheet files, including without limitation Microsoft Excel files (*.xls or *.xlsx), are produced in *.tif/*.jpeg image format, such *.tif/*.jpeg images will display hidden rows, columns, and worksheets, if any, in such files.

A.6.   <u>Parent-Child Relationships</u>. Parent-child relationships (*e.g.*, the associations between emails and their attachments) will be preserved. Email and other ESI attachments will be produced as independent files immediately following the parent email or ESI record. Parent-child relationships will be identified in the data load file pursuant to paragraph A.14 below.

A.7.   <u>Dynamic Fields</u>. Files containing dynamic fields such as file names, dates, and times will be produced showing the field code (*e.g.*, "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

A.8.   <u>English Language.</u> To the extent any data exists in more than one language, the data will be produced in English, if available. If no English version of a file is available, the Producing Party shall not have an obligation to produce an English translation of the data.

A.9.   <u>Embedded Objects.</u> Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, and Access; and PDF. Subject to claims of privilege and immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded.  If the file with the embedded object is produced in native format, the embedded object need not be extracted.

A.10.   <u>Compressed Files.</u> Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

A.11.   <u>Encrypted Files.</u> The Producing Party will take reasonable steps, prior to production, to unencrypt any discoverable electronically stored information that exists in encrypted format (*e.g.*, because password-protected) and that can be reasonably unencrypted.

A.12.   <u>Scanned Hardcopy Documents</u>

    a)   In scanning hardcopy documents, multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, hard copy documents should be logically unitized).

    b)   OCR shall be performed on a document level and provided in document-level *.txt files named to match the production number of the first page of the document to which the OCR text corresponds. OCR text should not be delivered in the data load file or any other delimited text file.

    c)   In the case of an organized compilation of separate hardcopy documents—for example, a binder containing several separate documents behind numbered tabs—the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the family fields set out below.

A.13.   <u>Production Numbering</u>.

18

In following the requirements of Paragraph A.1, the Producing Party shall take reasonable steps to ensure that attachments to documents or electronic files are assigned production numbers that directly follow the production numbers on the documents or files to which they were attached. If a production number or set of production numbers is skipped, the skipped number or set of numbers will be noted. In addition, wherever possible, each *.tif image will have its assigned production number electronically "burned" onto the image.

A.14.   Data and Image Load Files.

a)   <u>Load Files Required</u>. Unless otherwise agreed, each production will include a data load file in Concordance (*.dat) format and an image load file in Opticon (*.opt) format.

b)   <u>Load File Formats</u>.

i.   Load file names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat or ABC001_metadata.dat would be acceptable.

ii.   Unless other delimiters are specified, any fielded data provided in a load file should use Concordance default delimiters. Semicolon (;) should be used as multi-entry separator.

iii.   Any delimited text file containing fielded data should contain in the first line a list of the fields provided in the order in which they are organized in the file.

c)   <u>Fields to be Included in Data Load File</u>. For all documents or electronic files produced, the following metadata fields for each document or electronic file, if available at the time of collection and processing and unless such metadata fields are protected from disclosure by attorney-client privilege or work-product immunity or otherwise prohibited from disclosure by law or regulation, will be provided in the data load file pursuant to subparagraph (a), above, except to the extent that a document or electronic file has been produced with redactions. The term "Scanned Docs" refers to documents that are in hard copy form at the time of collection and have been scanned into *.tif or *.jpeg images. The term "Email and E-Docs" refers to files that are in electronic form at the time of their collection.

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| PRODBEG [Key Value] | ABC00000001 | Yes | Yes | Beginning production number |
| PRODEND | ABC00000008 | Yes | Yes | Ending production number |
| PRODBEGATT | ABC00000009 | Yes | Yes | Beginning production number of parent in a family |
| PRODENDATT | ABC0001005 | Yes | Yes | Ending production number of last page of the last attachment in a family |

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| NATIVEFILE | Natives\001\001\ABC00000001.xls | N/A | Yes | Path and file name for native file on production media |
| FILEDESC | Microsoft Office 2007 Document | N/A | Yes | Description of the type file for the produced record. |
| FILENAME | Document1.doc | N/A | Yes | Name of original electronic file as collected. |
| DOCEXT | DOC | N/A | Yes | File extension for email or e-doc |
| PAGES | 2 | Yes | Yes | Number of pages in the produced document or electronic file (not applicable to native file productions). |
| CUSTODIAN | John Beech | Yes | Yes | Custodian who possessed the document or electronic file. |
| CUSTODIAN_OTHER | Frank Maple; Janice Birch | N/A | Yes | When global de-duplication is used, these are custodians whose file has been de-duplicated; multiple custodians separated by semicolons. |
| SUBJECT | Changes to Access Database | N/A | Yes | "Subject" field extracted from email message or metadata properties of the document |
| FROM | John Beech | N/A | Yes | "From" field extracted from email message |
| TO | Janice Birch | N/A | Yes | "To" field extracted from email message |
| CC | Frank Maple | N/A | Yes | "Cc" or "carbon copy" field extracted from email message |
| BCC | John Oakwood | N/A | Yes | "Bcc" or "blind carbon copy" field extracted from email message |
| AUTHOR | John Oakwood | N/A | Yes | "Author" field extracted from document |
| DATECREATED | 10/10/2005 | N/A | Yes | "Created" field extracted document |
| DATELASTMOD | 10/11/2005 | N/A | Yes | "Last modified" field extracted from document |
| DATESENT | 10/10/2005 | N/A | Yes | Sent date of email message (mm/dd/yyyy format) |
| TIMESENT | 10:33 am | N/A | Yes | Sent time of email message, time zone set to UTC |
| DATERCVD | 10/10/2005 | N/A | Yes | Received date of email message (mm/dd/yyyyformat) |
| TIMERCVD | 10:33 am | N/A | Yes | Received time of email message, time zone set to UTC |
| CONFIDENTIALITY | HIGHLY CONFIDENTIAL | Yes | Yes | Text of confidentiality designation, if any |
| TEXTPATH | Text\001\001\ABC00000001.txt | Yes | Yes | Path to *.txt file containing extracted or OCR text |
| PRODVOL | VOL001 | Yes | Yes | Name of the Production Volume |

A.15.   Files Produced in Native Format. Any electronic file produced in native file format shall be given a file name consisting of a unique Bates number and, as applicable, a suitable

confidentiality designation; for example, "ABC00000002_Confidential." For each native file produced, the production will include a *.tif image slipsheet (a) indicating the production number of the native file, (b) with respect to any confidential document, setting forth the confidentiality designation applicable to the native file as provided in the Stipulated Discovery Confidentiality Order, (c) as applicable, indicating that information from the native file has been redacted, and (d) stating "File Provided Natively". To the extent that it is available, the original file text shall be provided in a file-level multi-page UTF-8 text file with a text path provided in the *.dat file; otherwise the text contained on the slipsheet shall be provided in the *.txt file with the text path provided in the *.dat file.

A.16.   <u>Production Media</u>. Unless otherwise agreed, documents and ESI will be produced on optical media (CD/DVD), external hard drive, secure FTP site, or similar electronic format. Such media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive. Volumes should be numbered consecutively (ABC001, ABC002, etc.). Deliverable media should be labeled with the name of this action, the identity of the producing Party, and the following information: Volume name, production range(s), and date of delivery.

A.17.   <u>Encryption of Production Media</u>. To maximize the security of information in transit, any media on which documents or electronic files are produced may be encrypted by the producing Party. In such cases, the producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media. The receiving parties in this matter are on notice that certain data produced may originate from custodians in the European Union and the receiving parties therefore agree to follow the strictest security standards in guarding access to said data.

**Attachment C**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: Zytiga Litigation | Master Docket No. 19-12107 (KM)(ESK) |
| This Document Relates To: All Actions | **STIPULATED AMENDED DISCOVERY CONFIDENTIALITY ORDER** |

WHEREAS the Parties have, through counsel, stipulated to the entry of this Discovery Confidentiality Order to prevent dissemination or disclosure of confidential material, the Court hereby enters the following Discovery Confidentiality Order pursuant to Federal Rule of Civil Procedure 26(c) and Local Rule 5.3:

WHEREAS discovery in the above-captioned case (the "Action") may involve the disclosure of certain documents, things, and information in the possession, custody, or control of Plaintiffs and Defendants or other persons that constitute or contain personal, sensitive proprietary information, such as trade secrets or other confidential research, development, technical, financial, business, competitive, or commercial information, within the meaning of Rule 26(c)(l)(G) of the Federal Rules of Civil Procedure or other laws and regulations protecting such information;

WHEREAS such trade secret, confidential, or proprietary information must be protected in order to preserve the legitimate business interests of the parties or other persons;

WHEREAS, the Parties acknowledge that this Protective Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords only extends to the information or items that are entitled, under this Order and the applicable legal principles, to confidential treatment;

WHEREAS, the Parties further acknowledge that this Protective Order does not create entitlement to file Protected Information under seal, other than as set forth in this Order and Local Rule 5.3; and

WHEREAS the parties have, through counsel, stipulated to the entry of this Discovery Confidentiality Order for the purpose of advancing the progress of this Action and to protect the confidentiality of trade secret, confidential, personal or proprietary information that will be exchanged in the course of discovery in this Action; and

WHEREAS the parties have established good cause for entry of this appropriately tailored Discovery Confidentiality Order governing discovery in this Action;

Therefore, the following provisions of this Discovery Confidentiality Order shall control the disclosure, dissemination, and use of information in this case:

IT IS HEREBY ORDERED that:

1.      Definitions

A.      The term "Discovery Material" means any document or thing, and includes, without limitation, any writings, video, or audio tapes, computer-generated or recorded information in any form, materials, oral or written testimony, interrogatories, answers to interrogatories, requests for admission, responses to requests for admissions, document requests, responses to document requests, deposition testimony, deposition, hearing, or trial transcripts and exhibits, and other responses to requests for information or any tangible thing, produced by a party or non-party in this action.

B.      The term "Protected Information" means information that has been designated in good faith by a party or non-party as containing or comprising "Confidential Information" or "Highly Confidential Information" pursuant to the provisions of this Discovery

Confidentiality Order, or that was designated "Highly Confidential OCEO Information" in underlying litigation concerning abiraterone acetate between Defendants in this Action and generic manufacturers who are non-parties to this Action ("underlying litigation"). Protected Information may include, without limitation, Discovery Material and other documents produced in this Action, during formal discovery or otherwise; information produced by non-parties which the Producing Party is under an obligation to maintain in confidence; and tangible things or objects that are designated as containing or comprising Protected Information. The information contained therein and all copies, abstracts, excerpts, analyses, or other writings that contain, reflect, reveal, suggest, or otherwise disclose such information shall also be deemed Protected Information. Information originally designated as Protected Information shall not retain that status after any ruling by the Court denying such status to it. Notwithstanding anything to the contrary herein, the description of Protected Information shall apply to all information so designated by the Producing Party absent an order of the Court, subsequent written agreement of the Producing Party providing otherwise, or if the document has since become public as a result of publication not involving a violation of this Order.

C. The term "Producing Party" means the persons or entities producing information and designating documents or information as Protected Information under this Discovery Confidentiality Order—including without limitation the parties to this Action, their representatives, agents, experts and consultants, all third parties providing discovery in this action, and all other interested persons with actual or constructive notice of this Protective Order.

D. The term "Receiving Party" shall mean the party or non-party subject to this Discovery Confidentiality Order to whom Protected Information is disclosed.

E.      The term "Confidential Information" shall mean only those portions of confidential or sensitive, nonpublic product, business, commercial, or financial information or information of a proprietary technical nature that the Producing Party believes, in good faith, to be protected from public disclosure under Federal Rule of Civil Procedure 26(c), L. Civ. R. 5.3, or other applicable laws or regulations.

F.      The term "Highly Confidential Information" relates to highly sensitive Confidential Information, the public disclosure of which the Producing Party believes, in good faith, will cause harm to the business, commercial, financial or personal interests of the Producing Party and/or a third party to whom a duty of confidentiality is owed. Examples of such information may include without limitation, nonpublic, highly sensitive information such as:

    i.      Information relating to research and development for or production of products, including internal specifications;

    ii.     Regulatory information, including information regarding Abbreviated New Drug Applications or New Drug Applications;

    iii.    Business or research information;

    iv.    Pending or abandoned patent, trademark and copyright applications, foreign or domestic, unless published or otherwise publicly available;

    v.     Claims and reimbursement data;

    vi.    Transactional data; or

    vii.   Information protected by federal or state privacy laws or regulations.

G.      The term "Highly Confidential-OCEO Information" relates only to information so designated in underlying litigation. The parties hereto agree to the maintenance of such designations in order to facilitate timely production of this category of information, but further

4

agree that any party may challenge the designation at any time if it believes, in good faith, that the designation is incorrect or improper. In such event, the challenging party shall utilize the dispute resolution mechanism set forth in paragraph 2.G, including, as appropriate, presenting the issue to the Court for resolution as set forth therein.

**Designation of Protected Information**

2.      A Producing Party, whether a party to this action or a third party/non-party, may designate Protected Information as subject to this Discovery Confidentiality Order as follows:

A.      With respect to documents or copies, by marking the document or the initial page and the page or pages on which any Protected Information appears with the legend "CONFIDENTIAL" (in the case of Confidential Information), or the legend "HIGHLY CONFIDENTIAL" (in the case of Highly Confidential Information). In the case of computer media, the Producing Party will note such designation in an accompanying cover letter and the designation shall be placed on the medium and its label and/or cover. To the extent practical, the designation shall be placed near the Bates number. In the case of a native file, the Producing Party will note such designation in an accompanying cover letter or slip sheet and the designation shall be included in the metadata and/or at the end of the file name and prior to the file extension.

B.      When documents or things containing Protected Information are produced for inspection, the documents or things may be collectively designated as containing Protected Information for purposes of the inspection, by letter or otherwise, without marking each document or thing "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," and such documents or things will be treated as so designated under this Discovery Confidentiality Order. If any such documents or things are subsequently provided to the requesting party, they shall be marked in accordance with the preceding paragraph at that time.

C.      A Producing Party may designate all or part of a deposition transcript as Protected Information (1) on the record at the deposition, or (2) by notifying the reporter and all counsel of record, in writing within thirty (30) days of receipt of the portion of the official transcript, the pages and line numbers containing such information by the Producing Party. All deposition testimony shall automatically be treated as containing Protected Information subject to this Discovery Confidentiality Order until thirty (30) days after the official transcript of such testimony is received by the party whose Protected Information is at issue.

D.      Discovery Material, or any relevant portion of any letter, brief, memorandum, motion, affidavit, discovery response, discovery request, or other papers filed with the Court, may be designated as Protected Information by prominently marking such document or portion thereof with the legend "CONFIDENTIAL," the legend "HIGHLY CONFIDENTIAL," or, for documents so designated in the underlying litigation, the legend "HIGHLY CONFIDENTIAL-OCEO."

E.      If more than one designation has been applied to the same document, then the more restrictive designation controls.

F.      An inadvertent failure to designate a document, thing, or testimony as Protected Information does not constitute forfeiture of a claim of confidentiality to that document, thing or testimony or to the same or related subject matter. In the event a Producing Party produced Protected Information without labeling or marking it as provided in this Discovery Confidentiality Order, the Producing Party may give written notice to the Receiving Party or parties after learning of the inadvertent production, that the document, thing or other discovery information, response or testimony contains or comprises Protected Information and should be treated as such in accordance with the provisions of this Discovery Confidentiality Order. The Producing Party will also promptly

6

provide properly marked copies of the information. Upon receipt of such notice and properly marked information, the Receiving Party or parties shall either return said unmarked or incorrectly marked information to the extent reasonably practicable and shall not retain copies thereof, or certify in writing that the Receiving Party has destroyed the unmarked or incorrectly marked information to the extent reasonably practicable, and shall undertake reasonable efforts to correct any disclosure of such information contrary to the redesignation. Prior to receipt of such notice, disclosure of such documents, things, information, responses, and testimony to persons not authorized to receive Protected Information shall not be deemed a violation of this Discovery Confidentiality Order. This paragraph shall be interpreted to provide the maximum confidentiality protection allowed under applicable law.

G.      Any Receiving Party may at any time request that the Producing Party or a third-party who originally designated the document in prior proceeding (a "Designating Third-Party") withdraw a designation with respect to any document, object, or information. Any such request shall be in writing, and shall particularly identify the Protected Information that the Receiving Party contends is not properly designated as Protected Information, along with the reasons supporting that contention. If the Producing Party or Designating Third-Party does not agree to withdraw the designation, the Producing Party and/or the Designating Third-Party shall then meet and confer with the Receiving Party to attempt to resolve the dispute without involvement of the Court. If the parties cannot resolve the dispute, then the Receiving Party may file an application to redesignate the document(s) or information in question no less than seven (7) days after the Receiving Party's initial request to withdraw the designation, unless exigent circumstances warrant a shorter time period for resolving the dispute, and shall serve the application on any Designating Third-Party. With respect to any such application, the Producing

Party or the Designating Third-Party shall bear the burden of establishing that the document(s) or information is properly designated under this Discovery Confidentiality Order. Until the application is resolved by agreement of the parties or by the Court, information designated as Protected Information shall retain its designation.

H.      Any information previously designated in the underlying litigation may be produced in this Action bearing the same confidentiality designation assigned to it in the underlying litigation. No additional markings need to be put on those documents prior to production in this Action, and the information contained in such documents shall be treated under the initial designation as spelled out in this Order.

**Disclosure of Protected Information**

3.      **Disclosure of Confidential Information.** The Receiving Party may make Confidential Information of the Producing Party, and any document, analysis, report, or other item containing Confidential Information of the Producing Party, available and accessible only to the following individuals:

A.      Attorneys, employees, or staff employed by any of the law firms of record representing a party in this Action.

B.      A person identified in the Protected Information as an author; source; addressee; recipient of the material or who already has a copy of it; any person who according to the face of the document has knowledge of the document or the Protected Information therein; any deponent, at their deposition, who counsel has a good-faith basis to believe reviewed or had personal knowledge of the specific subject matter of the Discovery Material prior to its production in this Action, and such a belief is confirmed by first laying a foundation as to that personal knowledge consistent with Federal Rule of Evidence 602; any employee, director, or agent of the

Producing Party; or any witness designated to testify as a Rule 30(b)(6) witness on behalf of the Producing Party.

C.     Independent consultants or experts (and their staff) retained by an attorney for a party or by a party either as consultants or expert witnesses for the purposes of this litigation, provided such person has first executed the Declaration of Compliance in the form annexed as an Exhibit hereto.

D.     Vendor(s) retained by or for a party to assist in preparing for pretrial discovery, trial, and/or hearings including, but not limited to, outside copying and computer services necessary for document handling, trial consultants, translators, and other litigation support personnel (*e.g.*, graphic designers and animators.)

E.     The Court, including any appellate court, Court personnel, court reporters, mediators or arbitrators, interpreters, and videographers, and their staff, engaged in association with this Action.

F.     The parties.

4.     **Disclosure of Highly Confidential Information.** The Receiving Party may make Highly Confidential Information of the Producing Party, and any document, analysis, report, or other item containing Highly Confidential Information of the Producing Party, available and accessible only to those persons listed in paragraphs 3(A) – (E) and additional persons as set forth in subparagraphs (A)-(F) below.

A.     A total of no more than four individual representatives (along with their secretarial and/or paralegal staff) for each party.

B.      For purposes of this paragraph, Defendants Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development LLC, and Johnson & Johnson (collectively, "Janssen") shall be considered a single corporate party.

C.      For purposes of this paragraph, Defendant BTG International Limited shall be able to have four representatives designated specifically for the antitrust cases and four representatives designated specifically for the qui tam case.

D.      For purposes of this paragraph, Janssen shall be able to have four representatives designated specifically for the antitrust cases and four representatives designated specifically for the qui tam.

E.      The designated party representatives are prohibited from using such Highly Confidential Information or information derived therefrom for any purpose other than to carry out their duties related to this litigation. Designated party representatives are prohibited from giving, showing, making available, discussing, or otherwise communicating Highly Confidential Information in any manner, either directly or indirectly, to any person or entity not authorized to receive such information under the terms of this Order.

F.      Should a designated party representative transition off of duties related to this litigation, a party may replace that prior designated party representative with a newly designated representative.

5.      **Disclosure of Highly Confidential-OCEO Information.** The Receiving Party may make Highly Confidential-OCEO Information of the Producing Party, and any document, analysis, report, or other item containing Highly Confidential-OCEO Information of the Producing Party, available and accessible only to those persons listed in paragraphs 3(A) – (E) and subject to any conditions thereof. Defendants will not challenge the adequacy of the named plaintiff representatives

in this litigation for class certification purposes based upon the plaintiffs' inability to review the documents produced by Defendants as 'Highly Confidential-OCEO' or any documents that quote documents produced by Defendants as 'Highly Confidential-OCEO' under this paragraph.

6.      **Data Security and Protection.** Protected Information must be stored and maintained by a Receiving Party at a location and in a secure manner that reasonably ensures that access is limited to the persons authorized under this Order, as such material may be proprietary, commercially sensitive or contain personally identifying information. Each person who has access to Protected Information shall (i) take all necessary and prudent measures to preserve the security of the Protected Information and prevent the unauthorized access to or inadvertent disclosure of such material; and (ii) shall physically store, maintain, and transmit Protected Information solely within the United States.

7.      **Breach of Data Security and Protection.** The following requirements apply in the event that unauthorized access to or acquisition of Protected Information (other than a party's own Protected Information) is reasonably likely to have occurred (a "Breach"):

A.      Persons with knowledge of the Breach shall take immediate necessary and prudent remedial measures, including any measures in compliance with state and regulatory requirements, to prevent reoccurrence of a Breach.

B.      Persons with knowledge of the Breach shall promptly inform the Producing Party of all facts relating to the Breach, including identification of Protected Information subject to the Breach, and remedial measures taken in response to the Breach.

**Use and Control of Protected Information**

11

8.      The restrictions of this Discovery Confidentiality Order continue to apply to any person who is, or was at any time, an authorized recipient of Protected Information under Paragraphs 3, 4, or 5.

9.      All information designated as Protected Information pursuant to this Discovery Confidentiality Order and disclosed in this Action shall be used by a recipient thereof solely for the purposes of this litigation and not for any business, commercial, regulatory, competitive, patent prosecution purposes, or other purposes.

10.     If a person or entity serves a party in this action with a request, subpoena, or order ("demand") for disclosure of Protected Information of a Producing Party, the party receiving the demand, if not prohibited under applicable law and within 48 hours of receipt, shall deliver a copy of the demand to the Producing Party's counsel. The party shall not disclose any Protected Information prior to the date specified for disclosure except as required by law or a Court. In its sole discretion and at its own cost, the Producing Party may oppose or seek to limit the demand in any legal manner. If the Producing Party does not, by the date specified for disclosure, advise the party who received the demand that it intends to seek prompt judicial relief, the party receiving the demand shall produce it to the requesting party.

11.     Nothing herein shall prevent (a) any party from disclosing and using its own Protected Information in any manner that it considers appropriate; (b) counsel for either party from showing or using Protected Information obtained from the opposing party during examination (at deposition, trial, or other proceeding in this Action) of any current or former officer, employee, agent, Rule 30(b)(6) designee, or retained expert of the party who designated the information; or (c) the disclosure of Protected Information of a Producing Party to any person who either authored the Protected

Information in whole or in part, or who received the Protected Information while he or she was an officer, employee, agent, or otherwise affiliated with the Producing Party.

12.     In the event that any question is asked at a deposition that calls for the disclosure of Protected Information, the witness shall nevertheless answer such question subject to any legal privilege or protection that may prevent the witness from answering. Any person present for the deposition who is not authorized to receive Protected Information, as appropriate, may be asked to leave the room and upon such request shall leave the deposition room until such time as the Protected Information is no longer being disclosed.

**<u>Miscellaneous</u>**

13.     This Discovery Confidentiality Order shall remain in force and effect indefinitely until modified, superseded, or terminated by order of this Court. The entry of this Order does not preclude any party in this action from seeking further order of this Court, including modification of this Order, or from objecting to discovery that the party believes to be improper.

14.     This Order is binding on all current and future parties in this action (including their respective corporate parents, subsidiaries, affiliates, successors, and attorneys and all other representatives or agents), their counsel, and all signatories to Exhibit 1, the Declaration of Compliance with the Discovery Confidentiality Order (deemed to be part of this Order), and all other persons or entities authorized under this Order or any other Order of this Court to receive or view Protected Information.

15.     Nothing herein shall be construed as an admission or concession by a Producing Party that any Protected Information constitutes relevant, material, or admissible evidence in this matter.

16.     Any party seeking to file papers with the Court containing Protected Information shall file them temporarily under seal and subsequently file a joint motion to seal, or otherwise restrict public access to, those materials pursuant to Local Civil Rules 5.3(c), as amended March 24, 2021. All such documents so filed shall be released from confidential treatment by the Court only upon further order of the Court or agreement of the parties.

A.     The burden of proving to the Court that such material designated as Protected Information should be sealed under Local Civil Rule 5.3 shall at all times remain with the party that initially produced the material and designated it as Protected Information, and

B.     If the party filing the material is not the Producing Party, the filing party nonetheless is obligated to make a reasonable effort when filing material designated as Protected Information to meet the provisions of Local Civil Rule 5.3 to protect the Producing Party's materials.

C.     In addition to the filing of a motion to seal, the parties, including designating non-parties, agree to comply with the procedures for filing public redacted versions as set forth in Local Civil Rule 5.3(c)(4).

17.     Nothing in this Discovery Confidentiality Order shall bar or otherwise restrict any attorney for the parties from rendering advice to his or her client with respect to this litigation. In the course of doing so, said attorney may generally refer to or rely upon his or her examination of Protected Information but shall not disclose the specific contents of such information to persons not authorized to receive such information pursuant to this Discovery Confidentiality Order, except by written agreement with opposing counsel of record.

18.     Each Receiving Party shall, within ninety (90) days of final termination of this Action (including all appeals), either return to the Producing Party or destroy all of the Producing Party's

Protected Information in the Receiving Party's possession. Notwithstanding the foregoing: As to those materials that contain, reflect, incorporate, attach, or reference attorney work product, counsel of record for the Parties shall be entitled, without violating this Order, to retain such work product in their files, so long as the terms of this Order will continue to govern any such retained materials. In addition, counsel of record for the Parties shall be entitled, without violating this Order, to retain pleadings, affidavits, motions, briefs, expert reports (and exhibits thereto), correspondence (including internal correspondence and e-mail), any other papers filed with the Court (including exhibits), deposition transcripts, and the trial record (including exhibits) even if such materials contain or describe Confidential Material or Highly Confidential Material, so long as this Order will continue to govern any such retained materials. The Receiving Party's commercially reasonable efforts shall not require the return or destruction of materials that (a) are stored on backup storage media made in accordance with regular data backup procedures; (b) are located in the email archive system or archived electronic files of departed employees; or (c) are subject to legal hold obligations, provided, however, that (i) any such material shall be treated in accordance with this Order; (ii) to the extent that any material is accessed from backup storage media, information protected by data privacy obligations shall be destroyed or returned; (iii) to the extent that any material is accessed from an email archive system or archived electronic files of departed employees, information protected by data privacy obligations shall be destroyed or returned; and (iv) legal hold obligations shall be periodically reviewed for necessity and proportionality and information protected by data privacy obligations shall not be retained in perpetuity. Nothing in this Paragraph shall obligate any Party to destroy its own Confidential Information at the close of this Action or at any other time. This Order shall continue to apply to any such materials retained by counsel.

19.    The parties have agreed that they do not intend to disclose Privileged Information in this Action. Pursuant to FRE 502(d) and 28 U.S. Code § 1738, any disclosure of Privileged Information ("Disclosed Privileged Information"), inadvertent or otherwise, shall not constitute in this or any other action a waiver or forfeiture of any privilege otherwise attaching to the Disclosed Privileged Information and its subject matter.  This Court retains jurisdiction to address all issues relating to F.R.E. 502, including the assessment of whether a disclosure constitutes waiver or forfeiture under Rule 502(b). This Order shall be enforceable and granted full faith and credit in all other state and federal proceedings. A party that produces documents or information subject to the attorney-client privilege or work-product immunity may request return of such documents or information after the Producing Party learns of its production. After receipt of such a request, the Receiving Party shall promptly return, sequester, or destroy the specified information and any copies of and notes pertaining to such information as soon as possible, and in any event within seven (7) days of receipt of such a request. For purposes of this section, it shall be irrelevant which party initially discovers the produced information, documents, or tangible items that are otherwise properly subject to a claim of attorney-client privilege, work product immunity, or any other protection from discovery. Any subsequent conflict of law analysis shall apply the law most protective of privilege and work product. For avoidance of doubt, nothing in this provision shall prevent any party from challenging another party's designation of information as privileged or subject to the attorney work product doctrine.

It is hereby ORDERED:

Dated: October 21st, 2021
_____
Hon. Edward S. Kiel, U.S.M.J.
United States Magistrate Judge

## EXHIBIT 1

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: Zytiga Litigation | Master Docket No. 19-12107 (KM)(ESK) |
| This Document Relates To: All Actions | |

### DECLARATION OF COMPLIANCE

I, _____ , state the following under penalty of perjury:

I have read the attached Stipulated Discovery Confidentiality Order entered in the above-captioned case and understand its terms. I will hold in confidence and not disclose to anyone not qualified under the Stipulated Discovery Confidentiality Order any Protected Information or any words, summaries, abstracts or indices of such information disclosed to me. In particular, I further understand that I may use information designated as Confidential, Highly Confidential, or Highly Confidential-OCEO pursuant to the Discovery Confidentiality Order only for the purposes of this litigation and not for any business, commercial, regulatory, competitive, patent prosecution or other purposes. No later than the final conclusion of this case, upon request, I will return or destroy all Confidential, Highly Confidential, or Highly Confidential-OCEO Information and summaries, abstracts and indices thereof which come into my possession, and documents or things which I have prepared relating thereto, to counsel for the party for whom I was employed or retained. By signing this declaration, I agree to be bound by all the terms of the Stipulated Discovery Confidentiality Order entered in this case, and I submit to the jurisdiction of United States District Court for the District of New Jersey for purposes of the enforcement of that Order.

Dated: _____     Signature: _____

17

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, STATES OF CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VERMONT, AND WASHINGTON; THE COMMONWEALTHS OF MASSACHUSETTS AND VIRGINIA; and THE DISTRICT OF COLUMBIA, <br><br> *ex rel.* ZACHARY SILBERSHER, <br><br>        Plaintiffs, <br><br>    vs. <br><br> JANSSEN BIOTECH, INC., JANSSEN ONCOLOGY, INC., JANSSEN RESEARCH & DEVELOPMENT, LLC, and JOHNSON & JOHNSON, <br><br>        Defendants. | Civil Action No. 19-12107 (MEF) (ESK) <br><br> Hon. Michael E. Farbiarz, U.S.D.J. <br> Hon. Edward S. Kiel, U.S.M.J. |

---

**PLAINTIFF-RELATOR ZACHARY SILBERSHER'S
OBJECTIONS TO SUBPOENA TO PRODUCE DOCUMENTS UPON
FLAT LINE CAPITAL, LLC AND KEVIN BARNES**

---

**LITE DEPALMA GREENBERG & AFANADOR, LLC**
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ  07102
Tel: (973) 623-3000
Fax: (973) 623-0858
bgreenberg@litedepalma.com

*Attorneys for Plaintiff-Relator Zachary Silbersher*
[Additional Counsel on Signature Page]

1

Plaintiff-Relator Zachary Silbersher ("Plaintiff"), by and through his counsel, hereby sets forth his written objections and responses to the subpoena to produce documents ("Subpoena") served by Defendants Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, and Johnson & Johnson (collectively, "Defendants" or "Janssen") upon Flat Line Capital LLC ("FLC") and Kevin Barnes ("Barnes") (collectively, "FLC/Barnes"), addressed to 8 The Green, Suite A, Dover, DE 19901.  Plaintiff reserves the right to supplement these objections as additional information becomes available, to move to quash, or to otherwise seek judicial relief.

### GENERAL OBJECTIONS

Plaintiff makes the following general objections in addition to the specific objections to specific document requests, as set forth below.  Each of these general objections is incorporated into and made a part of Plaintiff's response to each and every request set forth in the Subpoena.

1.  Plaintiff objects to this Request as harassing, unduly burdensome, overly broad and directed to information that is irrelevant to any claim or defense in this case.  The request is harassing because it is improper for Defendants to badger Plaintiff's former legal or consulting clients.  Defendants previously clarified that they did not intend to subpoena Plaintiff's former clients (*see* Dkt. 238 at 7), yet that is exactly what Defendants have done.  The request is especially harassing, as well as being unduly burdensome, because the requested information can be equally sought from a party to this action rather than from a third-party.  Indeed, Defendants can and have already sought much of this same discovery directly from Plaintiff, and Plaintiff has already produced information responsive to that discovery, and therefore, it is harassing and unduly burdensome to seek the same discovery from a third-party.  The request is also overly

2

broad and unduly burdensome because neither FLC nor Barnes ever retained Markman Advisors, LLC, and Barnes never retained Kroub, Silbersher & Kolmykov, PLLC. To the extent that FLC was a former client of Kroub, Silbersher & Kolmykov, PLLC, the request seeks information protected by the attorney/client, work product and other applicable privileges or confidentiality obligations. Finally, the request seeks information that is irrelevant to any claims or defense in this action because Defendants' liability will ultimately be assessed against the applicable legal principles as determined by the Court, not against Plaintiff's non-public communications with private clients on matters totally unrelated to this case. In addition, the requested information is irrelevant and overly broad because neither FLC, Barnes, Kroub, Silbersher & Kolmykov, PLLC or Markman Advisors, LLC are parties to this action or have anything to do with this action, and any documents exchanged between those parties are wholly irrelevant to any claims or defenses to this case.

2. Plaintiff objects to each and every request to the extent that it seeks information in the public domain, available from a party to this litigation, or available from other sources in a manner that is more convenient, less burdensome, or less expensive than seeking discovery from a third-party.

3. Plaintiff objects to each and every request to the extent that it seeks information or documents that are not relevant to the claim or defense of any party.

4. Plaintiff objects to each and every request to the extent that it purports to impose requirements or discovery obligations that exceed those imposed by the Federal Rules of Civil Procedure, the Local Rules of the District of New Jersey, or any other applicable rule, law, or regulation.

3

5.   Plaintiff objects to each and every request to the extent that it seeks information or documents protected from discovery including but not limited to those protected by the attorney-client privilege, the attorney-work-product doctrine, or that are trial preparation materials.  If any information or documents protected from discovery by any privilege are inadvertently revealed, it is not intended to and shall not operate as a waiver of these objections.

6.   Plaintiff objects to each and every request to the extent that it seeks information subject to confidentiality agreements with third parties.

7.   Plaintiff objects to each and every request to the extent that it is overbroad, unduly burdensome, oppressive, harassing, and not narrowly tailored to lead to the production of admissible evidence.

8.   Plaintiff objects to each and every request on the grounds that it is vague and ambiguous.

9.   Plaintiff objects to each and every request on the grounds that it is unintelligible, incomplete and incomprehensible.

## SPECIFIC OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

10. Plaintiff objects to the definitions of "Relator," "You," and "Your" on the grounds those definitions encompass numerous entities who are not parties to this action.  Markman Advisors, LLC and Kroub, Silbersher & Kolmykov, PLLC are also not parties to this action, and the named Plaintiff does not have majority control of either firm.

11. Plaintiff objects to the definitions of "Markman Advisors, LLC" or "Kroub, Silbersher & Kolmykov, PLLC," to the extent they include any entities or persons retained by those respective firms given that neither firm has any control over the information within the exclusive possession, custody or control of existing or prior clients.

12. Nothing contained in these general and specific objections constitutes, nor should be construed as, an admission or acknowledgement as to the admissibility, materiality, or relevance of any information sought by the Subpoena.

5

## SPECIFIC OBJECTIONS TO REQUESTS FOR PRODUCTION OF DOCUMENTS

### Request No. 1:

All documents and communications with Relator, Markman Advisors LLC, and/or

Kroub, Silbersher & Kolmykov PLLC relating to (a) allegations of fraud or inequitable conduct

in a patent prosecution; (b) the effect and/or propriety of obtaining multiple patents on a single

brand name drug; (c) "evergreening"; (d) the effect of a generic product's entry into the market;

(e) the use or application of a "commercial success" argument to procure a patent; and/or (f)

theories of liability for conduct before the USPTO.

### Response:

Plaintiff incorporates his General Objections as though fully set forth herein.  Plaintiff

specifically objects to this Request as harassing, unduly burdensome, overly broad and directed

to information that is irrelevant to any claim or defense in this case.  The request is harassing

because it is improper for Defendants to badger Plaintiff's former legal or consulting clients.

Defendants previously clarified that they did not intend to subpoena Plaintiff's former clients

(*see* Dkt. 238 at 7), yet that is exactly what Defendants have done.  The request is especially

harassing, as well as being unduly burdensome, because the requested information can be

equally sought from a party to this action rather than from a third-party.  Indeed, Defendants can

and have already sought this same discovery directly from Plaintiff, and Plaintiff has already

produced information responsive to that discovery, and therefore, it is harassing and unduly

burdensome to seek the same discovery from a third-party.  The request is also overly broad and

unduly burdensome because neither FLC nor Barnes ever retained Markman Advisors, LLC, and

Barnes never retained Kroub, Silbersher & Kolmykov, PLLC.  To the extent that FLC was a

former client of Kroub, Silbersher & Kolmykov, PLLC, the request seeks information protected

by the attorney/client, work product and other applicable privileges or confidentiality

obligations.  Finally, the request seeks information that is irrelevant to any claims or defense in

this action because Defendants' liability will ultimately be assessed against the applicable legal

principles as determined by the Court, not against Plaintiff's non-public communications with

private clients on matters totally unrelated to this case.  In addition, the requested information is

irrelevant and overly broad because any communications *from* a third-party *to* Plaintiff regarding

the topics in this Request are clearly not relevant to any claims or defenses in this action.

**Request No. 2:**

All documents and communications with Relator, Markman Advisors LLC, and/or

Kroub, Silbersher & Kolmykov PLLC relating to the analysis of patent litigation, including,

without limitation, post-trial analyses, Markman Hearing Preview Reports, Hatch-Waxman

Litigation Updates, Bench Trial Cheat Sheets, and US Generic Entry Date Analyses.

**Response:**

Plaintiff incorporates his General Objections as though fully set forth herein.  Plaintiff

specifically objects to this Request as harassing, unduly burdensome, overly broad, ambiguous

and directed to information that is irrelevant to any claim or defense in this case.  The request is

harassing because it is improper for Defendants to badger Plaintiff's former legal or consulting

clients.  Defendants previously clarified that they did not intend to subpoena Plaintiff's former

clients (*see* Dkt. 238 at 7), yet that is exactly what Defendants have done.  The request is

especially harassing, as well as being unduly burdensome, because the requested information can

be equally sought from a party to this action rather than from a third-party.  Indeed, Defendants

can and have already sought this same discovery directly from Plaintiff, and Plaintiff has already

produced information responsive to that discovery, and therefore, it is harassing and unduly

burdensome to seek the same discovery from a third-party.  The request is overly broad, unduly

burdensome and ambiguous because it seeks "analysis", "reports", "updates", and so forth, that

are wholly unconnected or tethered to any actual issues at stake in this litigation.  The request is

also overly broad and unduly burdensome because neither FLC nor Barnes ever retained

Markman Advisors, LLC, and Barnes never retained Kroub, Silbersher & Kolmykov, PLLC.  To

the extent that FLC was a former client of Kroub, Silbersher & Kolmykov, PLLC, the request

seeks information protected by the attorney/client, work product and other applicable privileges

or confidentiality obligations.  Finally, the request seeks information that is irrelevant to any

claims or defense in this action because Defendants' liability will ultimately be assessed against

the applicable legal principles as determined by the Court, not against Plaintiff's non-public

communications with private clients on matters totally unrelated to this case.  In addition, the

requested information is irrelevant and overly broad because any communications *from* a third-

party *to* Plaintiff regarding the topics in this Request are clearly not relevant to any claims or

defenses in this action.

**<u>Request No. 3:</u>**

All documents and communications with Relator, Markman Advisors LLC, and/or

Kroub, Silbersher & Kolmykov PLLC relating to Defendants, Zytiga, the '438 Patent, or the

subject matter of this litigation.

**<u>Response:</u>**

Plaintiff incorporates his General Objections as though fully set forth herein.  Plaintiff

specifically objects to this Request as harassing, unduly burdensome, overly broad and directed

to information that is irrelevant to any claim or defense in this case.  The request is harassing

because it is improper for Defendants to badger Plaintiff's former legal or consulting clients.

Defendants previously clarified that they did not intend to subpoena Plaintiff's former clients (*see* Dkt. 238 at 7), yet that is exactly what Defendants have done.  The request is especially harassing, as well as being unduly burdensome, because the requested information can be equally sought from a party to this action rather than from a third-party.  Indeed, Defendants can and have already sought this same discovery directly from Plaintiff, and Plaintiff has already produced information responsive to that discovery, and therefore, it is harassing and unduly burdensome to seek the same discovery from a third-party.  The request is also overly broad and unduly burdensome because neither FLC nor Barnes ever retained Markman Advisors, LLC, and Barnes never retained Kroub, Silbersher & Kolmykov, PLLC.  To the extent that FLC was a former client of Kroub, Silbersher & Kolmykov, PLLC, the request seeks information protected by the attorney/client, work product and other applicable privileges or confidentiality obligations.  The request is also irrelevant because neither FLC nor Barnes are parties to this litigation or have anything whatsoever to do with this litigation, and information that might be responsive to this request is not reasonably calculated to lead to the discovery of admissible or relevant evidence.

**Request No. 4:**

All documents and communications with Relator, Markman Advisors LLC, and/or Kroub, Silbersher & Kolmykov PLLC relating to the use of information contained in a patent file wrapper or from an Inter Partes Review proceeding in a litigation pursuant to the False Claims Act, 31 U.S.C. §§ 3729 – 3733, or Federal antitrust laws.

**Response:**

Plaintiff incorporates his General Objections as though fully set forth herein.  Plaintiff specifically objects to this Request as harassing, unduly burdensome, overly broad, ambiguous

and directed to information that is irrelevant to any claim or defense in this case.  The request is harassing because it is improper for Defendants to badger Plaintiff's former legal or consulting clients.  Defendants previously clarified that they did not intend to subpoena Plaintiff's former clients (*see* Dkt. 238 at 7), yet that is exactly what Defendants have done.  The request is especially harassing, as well as being unduly burdensome, because the requested information can be equally sought from a party to this action rather than from a third-party.  Indeed, Defendants have not even attempted to seek this same discovery directly from Plaintiff, and it is harassing and unduly burdensome to seek the same discovery from a third-party.  The request is overly broad, unduly burdensome and ambiguous because the phrase, "use of information contained in a patent file wrapper or from an Inter Partes Review proceeding in a litigation pursuant to the False Claims" is ambiguous, and it is not clear what type of information the request seeks.  The request is also overly broad and unduly burdensome because neither FLC nor Barnes ever retained Markman Advisors, LLC, and Barnes never retained Kroub, Silbersher & Kolmykov, PLLC.  To the extent that FLC was a former client of Kroub, Silbersher & Kolmykov, PLLC, the request seeks information protected by the attorney/client, work product and other applicable privileges or confidentiality obligations.  Finally, the request seeks information that is irrelevant to any claims or defense in this action because neither FLC nor Barnes are parties to this action or have anything to do with this action, and information that might be responsive to this request is not reasonably calculated to lead to the discovery of admissible or relevant evidence.

**Request No. 5:**

All documents and communications with Relator, Markman Advisors LLC, and/or Kroub, Silbersher & Kolmykov PLLC relating to strategies for the monetization of patent litigation, or any other litigation based on underlying patent law issues.

10

**Response:**

Plaintiff incorporates his General Objections as though fully set forth herein.  Plaintiff specifically objects to this Request as harassing, unduly burdensome, overly broad, ambiguous and directed to information that is irrelevant to any claim or defense in this case.  The request is harassing because it is improper for Defendants to badger Plaintiff's former legal or consulting clients.  Defendants previously clarified that they did not intend to subpoena Plaintiff's former clients (*see* Dkt. 238 at 7), yet that is exactly what Defendants have done.  The request is especially harassing, as well as being unduly burdensome, because the requested information can be equally sought from a party to this action rather than from a third-party.  Indeed, Defendants have not even attempted to seek this same discovery directly from Plaintiff, and it is harassing and unduly burdensome to seek the same discovery from a third-party.  The request is overly broad, unduly burdensome and ambiguous because the phrase, "monetization of patent litigation" is ambiguous, and it is not clear what type of information the request seeks.  The request is also overly broad and unduly burdensome because neither FLC nor Barnes ever retained Markman Advisors, LLC, and Barnes never retained Kroub, Silbersher & Kolmykov, PLLC.  To the extent that FLC was a former client of Kroub, Silbersher & Kolmykov, PLLC, the request seeks information protected by the attorney/client, work product and other applicable privileges or confidentiality obligations.  Finally, the request seeks information that is irrelevant to any claims or defense in this action because neither FLC nor Barnes are parties to this action or have anything to do with this action, and even if there existed responsive information related to "monetization of patent litigation" that was exchanged with FLC or Barnes, that topic is not related or connected to any claim or defense to this action.

**Request No. 6:**

11

983551.1

All documents and communications with Relator, Markman Advisors LLC, and/or
Kroub, Silbersher & Kolmykov PLLC relating to the claims or allegations in Relator's Second
Amended Complaint, including the origin of information resulting in those claims and
allegations.

**Response:**

Plaintiff incorporates his General Objections as though fully set forth herein.  Plaintiff
specifically objects to this Request as harassing, unduly burdensome, overly broad, ambiguous
and directed to information that is irrelevant to any claim or defense in this case.  The request is
harassing because it is improper for Defendants to badger Plaintiff's former legal or consulting
clients.  Defendants previously clarified that they did not intend to subpoena Plaintiff's former
clients (*see* Dkt. 238 at 7), yet that is exactly what Defendants have done.  The request is
especially harassing, as well as being unduly burdensome, because the requested information can
be equally sought from a party to this action rather than from a third-party.  The request is
ambiguous and seeks irrelevant information because the phrase "origin of information resulting
in those claims" is ambiguous, and even if responsive information existed, it would not be
relevant to any claim or defense to this action.  The request is also overly broad and unduly
burdensome because neither FLC nor Barnes ever retained Markman Advisors, LLC, and Barnes
never retained Kroub, Silbersher & Kolmykov, PLLC.  To the extent that FLC was a former
client of Kroub, Silbersher & Kolmykov, PLLC, the request seeks information protected by the
attorney/client, work product and other applicable privileges or confidentiality obligations.
Finally, the request seeks information that is irrelevant to any claims or defense in this action
because neither FLC nor Barnes are parties to this action or have anything to do with this action,

983551.1

and even if there existed responsive information that was exchanged with FLC or Barnes, that topic is not related or connected to any claim or defense to this action.

**Request No. 7:**

All documents and communications with Relator, Markman Advisors LLC, and/or Kroub, Silbersher & Kolmykov PLLC relating to the claims and allegations in United States ex rel. Silbersher v. Valeant Pharm. Int'l Inc., et al., Civil Case No. 3:18-cv-01496-JD (N.D. Cal.), including the origin of information resulting in those claims and allegations.

**Response:**

Plaintiff incorporates his General Objections as though fully set forth herein.  Plaintiff specifically objects to this Request as harassing, unduly burdensome, overly broad, ambiguous and directed to information that is irrelevant to any claim or defense in this case.  The request is harassing because it is improper for Defendants to badger Plaintiff's former legal or consulting clients.  Defendants previously clarified that they did not intend to subpoena Plaintiff's former clients (*see* Dkt. 238 at 7), yet that is exactly what Defendants have done.  The request is especially harassing, as well as being unduly burdensome, because the requested information can be equally sought from a party to this action rather than from a third-party.  The request is ambiguous and seeks irrelevant information because the phrase "origin of information resulting in those claims" is ambiguous, and even if responsive information existed, it would not be relevant to any claim or defense to this action.  The request is irrelevant for the additional reason that it seeks information about another litigation, and the purported origins of that litigation, that have nothing to do with this action, and even if responsive information existed, that information would not be relevant to any claims or defenses in this case.  The request is also overly broad and unduly burdensome because neither FLC nor Barnes ever retained Markman Advisors, LLC, and

13

Barnes never retained Kroub, Silbersher & Kolmykov, PLLC.  To the extent that FLC was a former client of Kroub, Silbersher & Kolmykov, PLLC, the request seeks information protected by the attorney/client, work product and other applicable privileges or confidentiality obligations.  Finally, the request seeks information that is irrelevant to any claims or defense in this action because neither FLC nor Barnes are parties to this action or have anything to do with this action, and even if there existed responsive information that was exchanged with FLC or Barnes, that topic is not related or connected to any claim or defense to this action.

**Request No. 8:**

All documents and communications with Relator, Markman Advisors LLC, and/or Kroub, Silbersher & Kolmykov PLLC relating to the claims and allegations in United States ex rel. Silbersher v. Allergan, Inc, et al., Civil Case No. 2:18-cv-03018-JCS (N.D. Cal.), including the origin of information resulting in those claims and allegations.

**Response:**

Plaintiff incorporates his General Objections as though fully set forth herein.  Plaintiff specifically objects to this Request as harassing, unduly burdensome, overly broad, ambiguous and directed to information that is irrelevant to any claim or defense in this case.  The request is harassing because it is improper for Defendants to badger Plaintiff's former legal or consulting clients.  Defendants previously clarified that they did not intend to subpoena Plaintiff's former clients (*see* Dkt. 238 at 7), yet that is exactly what Defendants have done.  The request is especially harassing, as well as being unduly burdensome, because the requested information can be equally sought from a party to this action rather than from a third-party.  The request is ambiguous and seeks irrelevant information because the phrase "origin of information resulting in those claims" is ambiguous, and even if responsive information existed, it would not be

14

relevant to any claim or defense to this action.  The request is irrelevant for the additional reason

that it seeks information about another litigation, and the purported origins of that litigation, that

have nothing to do with this action, and even if responsive information existed, that information

would not be relevant to any claims or defenses in this case.  The request is also overly broad and

unduly burdensome because neither FLC nor Barnes ever retained Markman Advisors, LLC, and

Barnes never retained Kroub, Silbersher & Kolmykov, PLLC.  To the extent that FLC was a

former client of Kroub, Silbersher & Kolmykov, PLLC, the request seeks information protected

by the attorney/client, work product and other applicable privileges or confidentiality

obligations.  Finally, the request seeks information that is irrelevant to any claims or defense in

this action because neither FLC nor Barnes are parties to this action or have anything to do with

this action, and even if there existed responsive information that was exchanged with FLC or

Barnes, that topic is not related or connected to any claim or defense to this action.

**<u>Request No. 9:</u>**

All agreements between You and Relator, Markman Advisors LLC, and/or Kroub,

Silbersher & Kolmykov PLLC relating to the provision of legal or professional services.

**<u>Response:</u>**

Plaintiff incorporates his General Objections as though fully set forth herein.  Plaintiff

specifically objects to this Request as harassing, unduly burdensome, overly broad and directed

to information that is irrelevant to any claim or defense in this case.  The request is harassing

because it is improper for Defendants to badger Plaintiff's former legal or consulting clients.

Defendants previously clarified that they did not intend to subpoena Plaintiff's former clients

(*see* Dkt. 238 at 7), yet that is exactly what Defendants have done.  The request is especially

harassing, as well as being unduly burdensome, because the requested information can be

equally sought from a party to this action rather than from a third-party.  The request is also overly broad and unduly burdensome because neither FLC nor Barnes ever retained Markman Advisors, LLC, and Barnes never retained Kroub, Silbersher & Kolmykov, PLLC.  To the extent that FLC was a former client of Kroub, Silbersher & Kolmykov, PLLC, the request seeks information protected by the attorney/client, work product and other applicable privileges or confidentiality obligations.  Finally, the request seeks information that is irrelevant to any claims or defense in this action because Defendants' liability will ultimately be assessed against the applicable legal principles as determined by the Court, not against Plaintiff's non-public communications with private clients on matters totally unrelated to this case.  In addition, the requested information is irrelevant and overly broad because neither FLC, Barnes, Kroub, Silbersher & Kolmykov, PLLC or Markman Advisors, LLC are parties to this action or have anything to do with this action, and any prior legal agreements between those parties are wholly irrelevant to any claims or defenses to this case.

**Request No. 10:**

All other relevant documents or communications with Relator, Markman Advisors LLC, and/or Kroub, Silbersher & Kolmykov PLLC relating in any way to the facts and allegations in this Litigation.

**Response:**

Plaintiff incorporates his General Objections as though fully set forth herein.  Plaintiff specifically objects to this Request as harassing, unduly burdensome, overly broad and directed to information that is irrelevant to any claim or defense in this case.  The request is harassing because it is improper for Defendants to badger Plaintiff's former legal or consulting clients. Defendants previously clarified that they did not intend to subpoena Plaintiff's former clients

16

(*see* Dkt. 238 at 7), yet that is exactly what Defendants have done.  The request is especially

harassing, as well as being unduly burdensome, because the requested information can be

equally sought from a party to this action rather than from a third-party.  The request is also

overly broad and unduly burdensome because neither FLC nor Barnes ever retained Markman

Advisors, LLC, and Barnes never retained Kroub, Silbersher & Kolmykov, PLLC.  To the extent

that FLC was a former client of Kroub, Silbersher & Kolmykov, PLLC, the request seeks

information protected by the attorney/client, work product and other applicable privileges or

confidentiality obligations.  Finally, the request seeks information that is irrelevant to any claims

or defense in this action because Defendants' liability will ultimately be assessed against the

applicable legal principles as determined by the Court, not against Plaintiff's non-public

communications with private clients on matters totally unrelated to this case.  In addition, the

requested information is irrelevant and overly broad because neither FLC, Barnes, Kroub,

Silbersher & Kolmykov, PLLC or Markman Advisors, LLC are parties to this action or have

anything to do with this action, and any documents exchanged between those parties are wholly

irrelevant to any claims or defenses to this case.


Date: February 26, 2024                     Respectfully submitted,


                                            **LITE DEPALMA GREENBERG
                                            & AFANADOR, LLC**


                                            By: */s/ Bruce D. Greenberg*
                                            BRUCE D. GREENBERG
                                            570 Broad St, Suite 1201
                                            Newark, NJ 07102
                                            Tel: (973) 623-3000
                                            bgreenberg@litedepalma.com


17

983551.1

**HERRERA KENNEDY LLP**
NICOMEDES SY HERRERA (*pro hac vice*)
BRET D. HEMBD (*pro hac vice*)
1300 Clay Street, Suite 600
Oakland, California 94612
Telephone: (510) 422-4700
NHerrera@HerreraKennedy.com
BHembd@HerreraKennedy.com

**SPARACINO PLLC**
TEJINDER SINGH (*pro hac vice*)
1920 L Street, NW, Suite 835
Washington, DC 20036
Telephone: (202) 629-3530
TSingh@sparacinopllc.com

**MORGAN & MORGAN**
JAMES YOUNG (*pro hac vice*)
501 Riverside Ave, Suite 1200
Jacksonville, FL 32202
Telephone: (904) 361-0012
JYoung@ForThePeople.com

**MORGAN & MORGAN**
CLARK BOLTON (*pro hac vice*)
JUAN MARTINEZ (*pro hac vice*)
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
CBolton@ForThePeople.com
JuanMartinez@ForThePeople.com

*Attorneys for Plaintiff-Relator
Zachary Silbersher*

18

983551.1

## CERTIFICATE OF SERVICE

I certify that on February 26, 2024, a true and accurate copy of the above document,

**PLAINTIFF-RELATOR ZACHARY SILBERSHER'S
OBJECTIONS TO SUBPOENA TO PRODUCE DOCUMENTS UPON
FLAT LINE CAPITAL, LLC AND KEVIN BARNES**

was served, pursuant to F.R.C.P. 45(d)(2)(B), through electronic mail upon the attorneys of record for Defendants identified within the Subpoena.

Date: February 26, 2024

By: /s/ Nicomedes Sy Herrera

19

983551.1