S ILLS  C UMMIS  &  G ROSS
A PROFESSIONAL CORPORATION

**The Legal Center**
**One Riverfront Plaza**
**Newark, New Jersey 07102-5400**
**Tel: 973-643-7000**
**Fax: 973-643-6500**

**Jeffrey J. Greenbaum**
Member
Direct Dial:  (973) 643-5430
E-mail: jgreenbaum@sillscummis.com

May 31, 2024

**By ECF**
Hon. Douglas E. Arpert, U.S.M.J. (Ret.)
Three Gateway Center
100 Mulberry Street
15th Floor
Newark, New Jersey 07102

  Re: **United States ex rel. Silbersher v. Janssen Biotech Inc., et al.,**
     **Civil Action No. 19-12107 (MEF-CLW)**

Dear Judge Arpert:

  The Johnson & Johnson ("J&J") Defendants respectfully submit this letter in response to Relator's letter of May 28, 2024 ("Relator's Letter"), which offered supplemental argument in opposition to Defendants' request that the Court quash the deposition of Pearl Pugh pursuant to the apex doctrine.

  Ms. Pugh's deposition should be quashed for all the reasons stated in Defendants' prior letter. *See* ECF 341 at 13–17. She lacks any personal, superior, or unique knowledge of the alleged fraud because she was not hired by J&J until March 2015, well *after* the disputed patent prosecution. She presently serves in a highly senior executive position—President of Neuroscience for Johnson & Johnson Innovative Medicine—precisely the sort of position the apex doctrine protects. *Id.* at 5–7.[1] And to the extent Relator had questions for J&J's Director of Marketing for the Prostate Franchise—a position Ms. Pugh formerly held from 2015–2017, he already has received both fact and 30(b)(6) deposition testimony from Melissa Magee, the J&J executive who currently occupies that role. *Id.* at 14–15.

  Relator's Letter alleges that Ms. Pugh's deposition is still necessary because the recent depositions of Mr. Eric Harris and Ms. Victoria Vakiener indicate that "Ms. Pugh has unique and personal knowledge of important issues in this case." As set forth in his pending Motion for *In*

---

[1] Defendants previously requested that the Court quash Ms. Pugh's deposition based on her former senior-executive position as J&J's Vice President and Global Commercial Disease Area Stronghold Leader for Rheumatology and Dermatology. *Id.* at 5. Her promotion to an even more senior position further demonstrates that it is necessary and appropriate to quash this deposition on apex grounds.

1

*Camera* Review of Documents Pursuant to the Crime-Fraud Exception ("Motion"), Relator contends that Defendants' Long Range Financial Plans ("LRFP") betray a fraudulent intent by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ECF 346 at 14–25. Accordingly, he seeks privileged documents from allowance of the '438 patent in July 2013 and ending with its issuance on September 2, 2014. *Id.* As to Ms. Pugh, Relator contends that as Director of Marketing for the Prostate Franchise, she was responsible for these LOE assumptions: "Ms. Pugh took over responsibility for this important function in 2014, and … would have the most direct knowledge of these critical assumptions from 2014 onward to the end of the relevant time period."

Not to put too fine a point on it, but Relator's account is false. Far from being involved with Defendants' financial planning in 2014, Ms. Pugh did not join J&J until March 2015. What is more, Ms. Vakiener's testimony was quite clear as to Ms. Pugh's start date. When asked directly when Ms. Pugh took over as Director of Marketing for Oncology, Ms. Vakiener testified that Ms. Pugh started in "early 2015." *See* Ex. A, Vakiener Tr. at 209:8–22. Moreover, Relator's counsel's own questioning indicates that he *already knew* Ms. Pugh had not joined J&J until 2015, based on his review of Ms. Pugh's LinkedIn profile prior to Ms. Vakiener's deposition. *Id.* at 209:12–13 ("Ms. Pugh's LinkedIn says that she started in that role in 2015."). Nothing in Ms. Vakiener's testimony called that knowledge into question, including the specific exchanges Relator cites to support his claim that Ms. Pugh took over this function in 2014. *See id.* at 93, 208–09. Relator's representations to the Court to that end are extremely troubling.

By Relator's own admission, the distinction between 2014 and 2015 is pivotal. In his pending Motion, Relator demands review of documents generated from July 2013 to September 2014. *See* ECF 346. Relator devotes six pages describing his view of the *2014* LRFP process. *See id.* at 16–22. Contrary to Relator's representation that Ms. Pugh "would have the most direct knowledge [during] the relevant time period," she in fact did not even work for J&J during that period. As such, she had no involvement whatsoever in the 2013 or 2014 LRFP processes that Relator has put at issue.

In sum, Mr. Harris and Ms. Vakiener's testimony provide no new evidence suggesting that Ms. Pugh is an appropriate deponent. On the contrary, they only confirm that she has no personal knowledge of the events that Relator is now focused on. Ms. Pugh currently serves as President of J&J's neuroscience business, focusing on high-level strategy and operations, and is well-suited to application of the apex doctrine.

Relator's opposition should be rejected and Defendants' request to quash Ms. Pugh's deposition should be granted.

Respectfully yours,

*/s/ Jeffrey J. Greenbaum*

Jeffrey J. Greenbaum

cc:   Counsel of Record (via ECF and Email)