UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA,** *et al.*, *ex rel.* **ZACHARY SILBERSHER,** <br><br> Plaintiffs, <br><br> v. <br><br> **JANSSEN BIOTECH, INC.,** *et al.*, <br><br> Defendants. | Civil Action No. 19-cv-12107-MEF-SDA <br><br> Civil Action No. 24-cv-06598-MEF-SDA <br> (Related Case) <br><br> **SPECIAL MASTER ORDER** |

**THIS MATTER** having come before the undersigned Special Master appointed by Order entered on March 18, 2024 (ECF No. 331); and the Order providing that the Special Master "shall oversee the schedule for completion of discovery, and all discovery disputes and motions related thereto, pursuant to procedures for practice that the Special Master may establish and modify as necessary", *id.* at 2, ¶ 2; and the Special Master, in order to address and resolve the parties' respective discovery disputes, having entered an Order on April 12, 2024 (ECF No. 337) setting deadlines for submissions relating to "[e]ach party's first set of unresolved discovery issues" along with "[e]ach party's second set of unresolved discovery issues", *id.* at 1, ¶¶ 2-3; and Defendants having filed, on May 20, 2024, a Motion to Compel Production of Documents from non-parties, Flat Line Capital LLC and Kevin Barnes ("Motion"), in the United States District Court for the District of Columbia[1] ("Matter"); and the Matter having been transferred, on May 31, 2024, from the United States District Court for the District of Columbia to the United States District Court for

---

[1] *See Janssen Biotech, Inc. et al. v. Flat Line Capital LLC*, Miscellaneous Action Case No. 1:24-mc-00067-BAH, ECF No. 1. Defendants state that, because the subpoena at issue sets the place of compliance as Washington, D.C., Defendants initially filed the Motion in the United States District Court for the District of Columbia. (*Silbersher* ECF No. 352, p. 3.)

1

the District of New Jersey[2]; and Relator having filed, on June 21, 2024, opposition to the Motion (ECF No. 6)[3]; and Defendants having filed, on June 26, 2024, a reply in further support of the Motion (ECF No. 7); and Relator's submission of May 10, 2024[4] ("Application for Protective Order") having addressed the dispute over Defendants' subpoena to Flat Line Capital LLC and Kevin Barnes (*Silbersher* ECF No. 350)[5]; and Defendants' response of May 17, 2024 having likewise addressed the dispute over Defendants' subpoena to Flat Line Capital LLC and Kevin Barnes (*Silbersher* ECF No. 352); and the Special Master having considered the issues, arguments, and positions set forth in the foregoing submissions with respect to the present dispute; and good cause appearing for the entry of this order

**IT IS** on this **26th** day of **July 2024 ORDERED** as follows:

1. Defendants' Motion to Compel is **GRANTED**.

2. Flat Line Capital LLC and Kevin Barnes are **ORDERED** to comply with and respond to Defendants' Rule 45 subpoena. Flat Line Capital LLC and Kevin Barnes shall produce documents responsive to the subpoena within twenty-one (21) days of Flat Line Capital LLC's and Kevin Barnes' receipt of this Order.

3. Defendants are directed to transmit a copy of this Order to Flat Line Capital LLC and Kevin Barnes (or alternatively, to any counsel known to be representing Flat Line Capital LLC and Kevin Barnes) by e-mail within two (2) business days of the entry of this Order.

---

[2] *See Janssen Biotech, Inc. et al. v. Flat Line Capital LLC* ("*Flat Line*"), Civil Action No. 2:24-cv-06598-MEF-SDA, ECF No. 5.
[3] Citations to docket entries in this Order shall refer to filings in the *Flat Line* matter, unless otherwise noted.
[4] Relator's submission of May 10, 2024 states that Relator seeks a protective order under Rule 26(c) with respect to Defendants' subpoena.
[5] Citations to docket entries in this Order that refer to filings in 19-cv-12107-MEF-SDA shall be preceded by "*Silbersher*".

4.      Relator's Application for a Protective Order is **DENIED**.

## SPECIAL MASTER DECISION

The Special Master presumes the parties are well acquainted with the pertinent facts and procedural history of this matter. Before the Special Master is Defendants' Motion to Compel the production of documents by Flat Line Capital LLC and Kevin Barnes, which specifically seeks "all documents and communications between [Flat Line Capital LLC] or Barnes and Relator relating to J&J, Zytiga, the '438 Patent, or the subject of the *Silbersher* litigation." (ECF No. 1-1, p. 14.) Relator opposed the Motion, and Defendants submitted a reply. The parties also previously addressed this dispute in prior submissions. (*Silbersher* ECF Nos. 350 and 352.)

By way of background, Defendants explain that Flat Line Capital LLC is a former client of Relator, who is an attorney. (*Silbersher* ECF No. 352, p. 2.) Relator brought a separate False Claims Act action[6] against another pharmaceutical manufacturer alleging "a substantially identical theory of fraud to the one [Relator] pursues here. In that litigation, [Flat Line Capital LLC] filed a motion to intervene, alleging that Relator's [False Claims Act] complaint was based on 'confidential client information and work-product' Relator had 'misappropriated' from [Flat Line Capital LLC]." *Id.*

According to Defendants, Flat Line Capital LLC and Kevin Barnes (collectively, "Subpoenaed Parties")[7] have "shown a keen interest in this case" *Id.* For instance, in the *Silbersher* litigation, Mr. Barnes attended a status conference before Judge Edward S. Kiel in December 2023, e-mailed Johnson & Johnson's counsel noting that Flat Line Capital LLC had "information

---

[6] *See Silbersher, et al. v. Valeant Pharms., Int'l, Inc., et al.*, Case No. 20-16176, United States Court of Appeals for the Ninth Circuit (Opening Date: June 16, 2020).
[7] In Defendants' Motion in the *Flat Line* matter, the Subpoenaed Parties are described as "Defendants". (ECF No. 1-1, p. 7.)

relevant to this dispute", and stated that Flat Line Capital LLC would "cooperate with any subpoena issued by Defendants." *Id.*[8]

In response, Defendants served a subpoena on the Subpoenaed Parties on January 25, 2024 ("Subpoena"), seeking "documents and communications between [the Subpoenaed Parties] and Relator pertaining to J&J, Zytiga, and the types of allegations that Relator has pursued against J&J in this litigation." *Id.* at 2. Relator objected to the Subpoena on February 26, 2024. *Id.* The Subpoenaed Parties have neither objected nor responded to the Subpoena.

On April 30, 2024, Defendants were told by counsel for the Subpoenaed Parties that counsel had been informed by Relator's counsel that Relator and Defendants were conferring on the propriety of the Subpoena. *Id.* at 2-3. Defendants dispute the accuracy of this statement from Relator's counsel to counsel for the Subpoenaed Parties. Consequently, the Subpoenaed Parties refrained from responding to the Subpoena pending resolution of the dispute between Relator and Defendants over the Subpoena. *Id.* at 3. Defendants state that the Subpoenaed Parties "take[] no position" on the instant Motion. *Id.*

## I.     Defendants' Motion to Compel (ECF Nos. 1-1 and 7; *Silbersher* ECF No. 352)[9]

Defendants move to compel the Subpoenaed Parties' compliance with the Subpoena, which requests "documents and communications between [the Subpoenaed Parties] and Relator pertaining to J&J, Zytiga, and the allegations of inequitable conduct in patent prosecutions that Relator has pursued in the *Silbersher* litigation." (ECF No. 1-1, pp. 11-12.) Relying on Mr. Barnes'

---

[8] *See also* ECF No. 1-1, p. 6 (stating that the Subpoenaed Parties would be as "helpful as possible" with respect to any subpoena issued by Defendants).

[9] In its response of May 17, 2024, Defendants submit that "[t]his discovery dispute letter is not the appropriate vehicle to resolve Relator's objections to Defendants' third-party subpoena to [Flat Line Capital LLC]. Defendants … will file a motion to compel [Flat Line Capital LLC]'s response to the subpoena and Relator's objections[.]" (*Silbersher* ECF No. 352, pp. 1-2.)

4

representation that the Subpoenaed Parties possess relevant information with respect to Relator's claims (and specifically, Defendants' defenses), Defendants served the Subpoenaed Parties with the Subpoena at issue. *Id.* at 12.  Defendants note that the deadline for compliance of the Subpoena was June 21, 2024, yet, as noted, the Subpoenaed Parties have neither objected nor responded to the Subpoena. (ECF No. 7, p. 1.)

According to Defendants, it was *Relator* – not the Subpoenaed Parties – who objected to the Subpoena as "harassing" and "unduly burdensome." (ECF No. 1-1, p. 12.)  Defendants highlight, however, that the Subpoenaed Parties "specifically *asked* to receive [the subpoena]", and moreover, have not objected to it. *Id.*  On April 30, 2024, counsel for the Subpoenaed Parties informed Defendants that they would not be producing documents in response to the Subpoena based on Relator's representation to counsel that Relator and Defendants were conferring. *Id.* Counsel for the Subpoenaed Parties informed Defendants that they would "sit by and await further instruction" pending resolution of Relator's objections to Defendants' Subpoena. *Id.* at 13.

In support of their Motion, Defendants submit that the evidence sought from the Subpoenaed Parties is relevant insofar as it "relate[s] to the novel legal theory of [False Claims Act] liability that Relator presses in this case", and thus, is "plainly relevant" and proportional to the needs of this case. *Id.* at 14.  Defendants point out that the Subpoenaed Parties have previously represented to the Ninth Circuit that Relator has derived claims in similar litigation from "confidential client information and work product misappropriated from [Flat Line Capital LLC]." *Id.* (referencing *Silbersher v. Valeant Pharms. Int'l, Inc.*, 89 F.4th 1154 (9th Cir. 2024)). Defendants, "[a]ccepting at face value" the claims made by the Subpoenaed Parties in the Ninth Circuit regarding Relator's misappropriation of information used to "undergird[] his claims," assert that it is "reasonable, appropriate, and relevant" to inquire as to whether the Subpoenaed

5

Parties possess similar information to Relator's claims in the current action, "especially since Barnes specifically contacted J&J to solicit a subpoena." (ECF No. 1-1, p. 15.)

Furthermore, Defendants argue, Relator lacks standing to object to the Subpoena. (ECF No. 7, p. 2.) While Defendants explain that Relator maintains two objections – first, that the subpoena is "disproportionately burdensome"; and second, that the Subpoena seeks privileged attorney-client information – Defendants submit that both objections belong to the Subpoenaed Parties, not Relator. (ECF No. 1-1, p. 16.) Defendants contend that "Relator's views about the burden associated with compliance with the subpoena" are irrelevant because the Subpoena is directed at third-parties—the Subpoenaed Parties, "who have made no such objections." *Id.* And because Flat Line Capital LLC is the former client of Relator, the privilege belongs to Flat Line Capital LLC, not Relator. *Id.* at 16-17. Defendants add that Relator has offered no basis for why he has standing to assert any objection to the Subpoena. (ECF No. 7, p. 2.) With respect to the manner by which the Subpoena was issued, from a procedural standpoint, Defendants note the Subpoenaed Parties were properly served. (ECF No. 1-1, pp. 15-16.)

## II. Relator's Opposition to Defendants' Motion to Compel (ECF No. 6; *Silbersher* ECF No. 350)

Relator chiefly advances two arguments in support of his opposition to Defendants' Motion to Compel. (*See* ECF No. 6.) First, Relator argues that the Subpoena seeks information neither relevant nor material to Defendants' defenses. Second, Relator argues that the Subpoena improperly seeks information from a Third-Party. According to Relator, "[t]his is a simple issue[:] Flatline retained [Relator] to invalidate a completely different patent for a completely different drug manufactured by a completely different set of Defendants." (*Silbersher* ECF No. 350, p. 4.) Relator claims that Defendants issued the Subpoena to the Subpoenaed Parties "to obtain documents, including Mr. Silbersher's advice to Flatline, regarding that patent *inter partes*

6

proceeding." *Id.* Relator claims the Subpoena is disproportionately burdensome and improperly seeks confidential information relating to the attorney-client relationship between Relator and the Subpoenaed Parties. *Id.*

In support of these arguments, Relator raises various points. First, Relator claims that the information sought by Defendants does not exist because Relator never communicated with the Subpoenaed Parties regarding Zytiga or the '438 Patient. *Id.* Relator states that Defendants' "real motivation behind the subpoena is to improperly take discovery of the dispute between Relator and [the Subpoenaed Parties] in connection with an unrelated case." *Id.* Second, Relator highlights that Defendants have overlooked the "unreliability of Barnes' accusations" in the Ninth Circuit case by "omit[ting] Barnes' harassing and defamatory conduct directed against Relator."[10] *Id.* at 5.

Third, Relator points out that Defendants have omitted that Mr. Barnes' attempt to intervene in the Ninth Circuit *Valeant Qui Tam* was denied, and his allegations were never proven. *Id.* Fourth, Relator claims that Mr. Barnes has not made any allegations or claims relating to the current action, which belies the suggestion by Defendants that they are attempting to obtain discovery from the Subpoenaed Parties concerning this case. *Id.*

Fifth, Relator notes that "even assuming, *arguendo*," that Mr. Barnes had information in connection with Relator's misappropriation of information in this case, "[i]n a *qui tam* action, the claims belong to the Government" and "Relator's unclean hands [are] irrelevant to the merits of the claims." *Id.* Sixth, Relator highlights that "over two years ago" Defendants served the same discovery request to Relator to which he objected. *Id.* at 9. Relator notes that despite the objection,

---

[10] Relator claims that Mr. Barnes contacted Relator's wife, created a fake social media page to impersonate Relator, threatened to have Relator disbarred, created a website to impersonate, harass, and humiliate Relator, and sent Relator's counsel an email quoting a line from the film *American Psycho*. (*See* ECF No. 6, pp. 7-8.)

7

Defendants never moved to compel discovery from Relator and "should not be permitted to compel discovery from a third-party when it failed to move to compel that same discovery from a party to the action." *Id.* at 6, 9.

### III. Legal Standard

Pursuant to Fed.R.Civ.P. 45, a party may direct a subpoena "to third-party individuals commanding them to, *inter alia,* attend and testify at a deposition and to produce designated documents, electronically stored information, or tangible things in their possession, custody, or control." *Korotki v. Cooper Levenson, April, Niedelman & Wagenheim, P.A.*, No. 20-cv-11050, 2022 WL 2191519, at *2 (D.N.J. June 17, 2022). Additionally, Rule 26 "sets broad parameters on discovery, providing that parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *New Jersey Dep't of Env't Prot. v. Am. Thermoplastics Corp.*, No. 98-cv-04781, 2021 WL 4551337, at *2 (D.N.J. Oct. 5, 2021); Fed.R.Civ.P. 26(b)(2).

"Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). A court has the authority to quash or modify a subpoena if it falls outside the scope of permissible discovery and "requires disclosure of privileged or other protected matter," or "subjects a person to undue burden." Fed.R.Civ.P. 45(d)(3)(A). The burden of persuasion in a motion to quash a subpoena or for a protective order lies with the movant. *Mondis Technology Ltd. v. LG Electronics, Inc.*, No. 15-cv-04431, 2017 WL 4155121, at *2 (D.N.J. Sept. 9, 2017).

"Generally speaking, a party does not have standing to quash a subpoena served on a third party." *Thomas v. Marina Associates*, 202 F.R.D. 433, 434 (E.D. Pa. 2001). Standing to challenge a third-party subpoena "depends upon the type of challenge being advanced." *Castellani v. City of*

8

*Atlantic City*, No. 13-cv-05848, 2016 WL 7131578, at *2 (D.N.J. June 30, 2016) (quoting *Malibu Media LLC v. John Does No. 1-30*, No. 12-cv-03896, 2012 WL 6203697, at *2 (D.N.J. Dec. 12, 2012)).  An exception to this is made where a party seeks to quash based on a claim of privilege relating to the documents or information sought. *Thomas*, 202 F.R.D. at 434; *First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F. Supp 2d. 362, 387 (E.D. Pa. 2013) ("An exception to this rule permits a party to move to quash when it claims some personal right or privilege in respect to the subject matter of a subpoena duces tecum directed to a nonparty.") (internal quotation marks omitted).  As to the attorney-client privilege, "[a]lthough the privilege belongs to the client, and only the client may waive it, an attorney may assert the privilege on the client's behalf." *Haines v. Liggett Group Inc.*, 975 F.2d 81, 90 (3d Cir. 1992).

## IV.     Special Master's Decision

The Special Master finds that Defendants' Motion to Compel should be granted.  Flat Line Capital LLC and Kevin Barnes are directed to produce documents and communications responsive to Defendants' Subpoena within twenty-one (21) days of their receipt of this Order.

The Special Master finds that the Subpoena seeks relevant information, including documents and communications between the Subpoenaed Parties and Relator.  According to Defendants, the Subpoena pertains to J&J, Zytiga, and the allegations of inequitable conduct in patent prosecutions that Relator has pursued in the *Silbersher* litigation.  Despite the parties' competing statements on the relevance of the materials sought by the Subpoena, on balance the Special Master finds that the Subpoena does seek information that is potentially relevant to the claims, defenses, and issues in the *Silbersher* litigation.  The Special Master concludes that Defendants should not be precluded from inquiring as to whether the Subpoenaed Parties possess information that Relator has used to support his complaint in the *Silbersher* action.  The Special

9

Master is not persuaded by Relator's argument that, because the Subpoenaed Parties have neither intervened in the current action nor filed a claim of interest, the Subpoenaed Parties therefore do not possess information relevant to the current action. In addition, Mr. Barnes sent an e-mail to J&J on December 14, 2023 indicating just the opposite; that is, the Subpoenaed Parties *were* in possession of information relevant to *Silbersher*. Indeed, in opposition to the Motion, Relator seems to suggest he does not even know what documents, communications, or information the Subpoenaed Parties possess.

Moreover, the Special Master finds that Relator lacks standing to object to the Subpoena. Relator has a "heavy burden" to show that the Subpoena should not be enforced. *In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013) (quoting *Millenium TGA, Inc. v. Comcast Cable Commc'ns LLC*, 286 F.R.D. 8, 11 (D.D.C. 2012)). Relator must show that the documents and communications sought by the Subpoena are privileged. While Relator may assert the privilege on behalf of his former clients, the Subpoenaed Parties, Relator does not purport to assert any privilege objection at the behest of the Subpoenaed Parties. Because the Subpoenaed Parties hold the attorney-client privilege, may waive the privilege, and have foregone asserting the privilege here, Relator's objection based on attorney-client privilege or confidentiality is ineffectual.

As to Relator's objection that the Subpoenaed Parties' production of the requested documents and communications would be unduly burdensome, Relator has not demonstrated sufficiently that he possesses standing to object to the Subpoena based on undue burden. The Subpoena is also directed to the Subpoenaed Parties, so even if Relator had standing to make an objection based on burden, it is unclear what the precise burden would be where the Subpoenaed Parties would be the ones tasked with preparing and completing a production of documents

10

responsive to the Subpoena. And, far from claiming any burden, the Subpoenaed Parties have done the opposite by *volunteering* to provide the materials at issue and *inviting* the Subpoena from Defendants. Relator's assertions that the Subpoena imposes an undue burden are unpersuasive. Relator adds that "much of the information the Subpoena seeks has already been covered by discovery sought by J&J and produced by Relator in this action." (ECF No. 6, pp. 10, 11.) Accepting this statement as true, it remains unclear to the Special Master how any production by the Subpoenaed Parties that may contain duplicates of documents and communications already produced in the *Silbersher* litigation would present an undue burden to Relator or to the Subpoenaed Parties.

Additionally, Relator notes that Defendants never moved to compel further information from Relator after serving Relator with discovery requests similar to the requests set forth in the Subpoena. *Id.* at 11. Relator argues that the Special Master should not grant Defendants' Motion if the information sought from the Subpoenaed Parties was available and could have been sought from Relator. *Id.* at 13. But Relator at the same time has represented that "much of the information the Subpoena seeks has already been covered by discovery sought by J&J *and produced by Relator in this action*." *Id.* at 10-11 (emphasis added). If Relator already produced responsive information covered by the Subpoena, Relator's objection to the Subpoena based on relevance would seem improper. It is also unclear what precisely Defendants should have sought from Relator through motion practice notwithstanding Relator's production of responsive information.

And despite Relator's claimed production of information responsive to Defendants' discovery requests in the *Silbersher* litigation, Relator acknowledges that he objected to Defendants' Request for Production No. 27[11] on several grounds, including relevance, and

---

[11] Defendants' Request for Production No. 27 states as follows:

11

otherwise stated in response that, aside from any documents "not specifically excluded, [Relator] states that there are no responsive documents." *Id.* at 9.  If Relator refused to produce documents in response to Defendants' Request for Production No. 27 – which would seem to contradict Relator's statement that Relator already produced responsive information – it seems unreasonable for Relator to insist that Defendants should have engaged in motion practice to compel the production of documents when the Subpoenaed Parties have volunteered the items in question.[12]

Elsewhere, Relator argues that the Subpoenaed Parties do not possess any "responsive information for the discovery that J&J primarily seeks … namely, communications and documents between Relator and [the Subpoenaed Parties] related to *this* action. Relator never had any communications with [the Subpoenaed Parties] about Zytiga, the '438 patent or this action. There is nothing there." (ECF No. 6, p. 4.)  But, at the same time, Relator concedes that he "has no idea

---

"All communications with Flat Line Capital LLC, or any person acting on Flat Line Capital LLC's behalf, relating to the claims and allegations in United States ex rel. Silbersher v. Valeant Pharm. Int'l Inc., et al., Civil Case No. 3:18-cv-01496-JD (N.D. Cal.), including the origin of information resulting in those claims and allegations, and any documents and communications with current and/or former clients relating to the use of information for litigation pursuant to the False Claims Act, 31 U.S.C. §§ 3729 – 3733, or Federal antitrust laws, and documents concerning those communications."

Relator's Response and Objection to Defendants' Request for Production No. 27 states as follows:

"In addition to the foregoing General and Specific Objections, Plaintiff objects to this Request as overbroad and neither relevant to the claims or defenses of any party to this litigation, nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to producing any documents within its possession, custody or control relating to any of his clients unrelated to Zytiga® or this litigation. As to any documents not specifically excluded, Plaintiff states that there are no responsive documents."

(*See* ECF No. 6, p. 9.)

[12] It is rather ironic that a seemingly direct and efficient avenue to the documents and communications at issue – through a Rule 45 subpoena where the Subpoenaed Parties offered the materials and forewent objections – ended up prompting motion practice between Relator and Defendants anyway.

12

what dirt Barnes thinks he can provide to J&J, short of Barnes manufacturing information[.]" (ECF No. 6, p. 12.)

In the Special Master's view, Relator's suppositions as to what documents and communications the Subpoenaed Parties possess appear speculative. Relator's position in this regard is also, once again, belied by Relator's own statements that Relator produced responsive information already, and that the Subpoenaed Parties' production of documents and communications would be duplicative of that information. Relator also states that he "is not aware of any prior communications or documents exchanged with [the Subpoenaed Parties] regarding this lawsuit, Zytiga, the '438 patent, or the subject matter of this action." *Id.* But Relator's mere lack of awareness over what specific materials the Subpoenaed Parties may have that are responsive to Defendants' Subpoena would not seem to be a proper basis to object to the Subpoena and successfully oppose the Motion. If Relator does not even know what documents and communications the Subpoenaed Parties currently possess, Relator cannot persuasively argue that the Subpoenaed Parties do not possess responsive information.

Relator's other points in opposition to the Motion do not merit extensive discussion. Relator focuses on arguments tied to the *Valeant Qui Tam* action, specifically noting the following: Mr. Barnes' "threatening, harassing, and defamatory misconduct directed against Relator" was documented in the *Valeant* case, is recounted here, and demonstrates the "unreliability" of Mr. Barnes' accusations in the *Valeant* case and the impropriety of interjecting those accusations here. *Id.* at 5. In the Special Master's view, the alleged misconduct described at footnote 10 of this Order, *supra*, although potentially concerning, is an ancillary issue that, at bottom, is not a factor in determining whether to compel the Subpoenaed Parties' compliance with the Subpoena.

Relator points out that Mr. Barnes' motion to intervene in the *Valeant Qui Tam* action was denied and that Mr. Barnes never filed a subsequent suit. This would not seem to undermine Defendants' representation to the Special Master that the Subpoenaed Parties have claimed they possess information that is relevant to the *Silbersher* litigation. As such, despite Relator's contention that Mr. Barnes has not "made any allegations or claims whatsoever regarding *this* action", the Special Master has no basis to refute the Subpoenaed Parties' statement, through Defendants, that they possess relevant information that can be produced in response to the Subpoena.[13] Relator's various arguments questioning the relevance of that information are not persuasive.

## V.     Conclusion

For the reasons set forth above, Defendants' Motion to Compel the Production of Documents from non-parties, Flat Line Capital LLC and Kevin Barnes, is **GRANTED**. Relator's Application for a Protective Order is **DENIED**.

**IT IS SO ORDERED.**

Dated: July 26, 2024

*s/ Douglas E. Arpert*
**DOUGLAS E. ARPERT**
**SPECIAL MASTER**

---

[13] (*See* ECF No. 1-6.)