**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** *et al.*, *ex rel.* **ZACHARY SILBERSHER,**<br><br>Plaintiffs,<br><br>v.<br><br>**JANSSEN BIOTECH, INC.,** *et al.*,<br><br>Defendants. | Case No. 19-cv-12107 (MEF) (SDA)<br><br>**OPINION**<br><br>**September 22, 2025** |

**STACEY D. ADAMS, UNITED STATES MAGISTRATE JUDGE**

**FACTUAL BACKGROUND/RELEVANT PROCEDURAL HISTORY[1]**

Relator Zachary Silbersher ("Relator") brings this lawsuit against Defendants Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research and Development, LLC, and Johnson & Johnson (collectively, "Defendants") alleging violations of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733 and numerous state laws in connection with their acquisition of a patent covering Zytiga, U.S. Patent No. 8,822,438 (the "'438 Patent"). (ECF No. 179 at 1). Zytiga is the brand-name version of abiraterone acetate, used to extend the lives of individuals with castration-resistant prostate cancer. (*Id.* at 2). Zytiga was approved by the United States Food and Drug Administration in April 2011 for use with prednisone, an anti-inflammatory steroid, on patients who have already undergone chemotherapy. (*Id.*). It received further approval in 2012 for patients who had never undergone chemotherapy. (*Id.*). Johnson & Johnson previously held the chemical

---

[1] The following summary is gleaned from the Opinion on the Motion to Dismiss by Hon. Kevin McNulty, U.S.D.J. on December 17, 2021 (ECF No. 179), which summarized the facts from Relator's Second Amended Complaint (Second Am. Compl., ECF No. 63).

compound patent covering Zytiga, U.S. Patent No. 5,604,213 (the "'213 Patent"). (*Id.*). In 2014, Defendants obtained the patent at issue in this litigation, the '438 Patent, which claims as its proposed invention the co-administration of Zytiga and prednisone at specific dosages to treat prostate cancer. (*Id.*). The '213 Patent expired in December 2016, meaning the '438 Patent was the sole patent covering Zytiga until January 2018, when it was invalidated in a separate lawsuit as obvious in light of prior art. *BTG Int'l Ltd. v. Amneal Pharms. LLC*, 352 F. Supp. 3d 352 (D.N.J. 2018), *aff'd*, 923 F.3d 1063 (Fed. Cir. 2019).

Relator is a patent attorney and co-founder of a patent-consulting firm, who conducted independent research and investigations allegedly showing that Defendants improperly misrepresented Zytiga's commercial success and withheld information from the United States Patent and Trademark Office to obtain the '438 Patent, thereby preventing generic competition and facilitating Defendants' ability to charge an inflated price for Zytiga to government programs such as Medicare and Medicaid. (*Id.* at 2).

On March 18, 2024, then-Magistrate Judge Edward S. Kiel appointed Hon. Douglas Arpert, U.S.M.J. (ret.) ("Judge Arpert") as the Special Master. (ECF No. 331). Pursuant to the Order, Judge Arpert "shall oversee the schedule for completion of discovery, and all discovery disputes and motions related thereto, pursuant to procedures for practice that the Special Master may establish and modify as necessary." (*Id.* at 2). Any appeals of his decisions are to be resolved by the Magistrate Judge. (*Id.*).

On May 3, 2024, Relator filed a motion requesting the Special Master conduct an *in camera* review of documents he claimed were not subject to privilege pursuant to the crime-fraud exception. (ECF No. 348 (filed under seal)). Relator initially asked the Special Master to review 965 withheld or redacted documents, consisting of thousands of pages. (ECF No. 354, p. 7).

Relator subsequently narrowed that request to an initial *in camera* review of 200 "priority" documents. (ECF No. 364). Following full briefing, on October 4, 2024, the Special Master entered an Order denying Relator's motion and declining to conduct an *in camera* review of any privileged documents. (ECF No. 374).

Relator filed an objection to the Special Master's decision on October 25, 2024 (ECF Nos. 393, 396, 397), which was opposed by Defendants (ECF No. 413). On December 10, 2024, the undersigned issued an Order directing the Special Master to conduct an *in camera* review of 50 documents designated by Relator for priority review. (ECF No. 417). In that Order, the Court did not make any substantive determinations as to the various arguments made for or against the application of the crime-fraud exception by the parties. (*Id.*).[2] On January 31, 2025, after conducting the *in camera* review of the documents, the Special Master found that there was no evidence the crime-fraud exception applied. (ECF No. 422).

Relator now files the instant Motion objecting to that Order. (ECF No. 424). In filing his Motion, Relator focuses not on the reasons why Judge Arpert's review was flawed but, rather, on the original arguments made in support of the need to conduct the *in camera* review in the first place. Relator essentially asks this Court to conduct an independent review of the 50 documents

---

[2] Relator argues that, in directing the Special Master to conduct a limited *in camera* review, this Court implicitly (i) rejected Defendants' arguments that Relator's motion was untimely; and (ii) determined that Relator "established a 'factual basis to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.'" (Reply, ECF No. 435, at 5, 7) (citing *United States v. Zolin*, 491 U.S. 554, 572 (1989)). The Court made no such findings. Rather, after reviewing the record as a whole, the Court decided the prudent course of action was to require the Special Master to do a limited review of a sub-set of the privileged documents to ascertain whether they contained any evidence that the crime-fraud exception applied. If they did not, there was no reason to further address the substantive arguments of the parties.

already reviewed by Judge Arpert, for unspecified reasons, simply because Relator believes Judge

Arpert somehow got it wrong.

## **GOVERNING LAW**

Any appeal of an action or decision by Judge Arpert is appealable to the undersigned.

(Special Master Order at 2). A party must file any objections to the Special Master's order within

twenty-one days. Fed. R. Civ. P. 53(d)(2). The court must review all legal conclusions of law

recommended by the Special Master *de novo*. Fed. R. Civ. P. 53(d)(4). However, "[t]he Special

Master's management of the discovery process is entitled to great deference," and this Court may

set aside the Special Master's decision addressing a discovery dispute "only for an abuse of

discretion." *In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.,* No. 19-md-2921,

2022 WL 3211421, at *2 (D.N.J. Aug. 9, 2022) (internal quotation marks and citations omitted);

*see also* Fed. R. Civ. P. 53(f)(5). The burden of setting forth the manner in which the special master

has erred rests with the objecting party. *Id.* at *3; *Net2Phone, Inc. v. Ebay, Inc.*, No. 06-cv-2469,

2008 WL 8183817, at *13 (D.N.J. June 26, 2008) (stating the party objecting to a Special Master's

ruling bears the burden of proving the Special Master erred).

The attorney-client privilege is the "oldest of the privileges for confidential

communications known." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The "central

concern" of the privilege is "to encourage full and frank communication between attorneys and

their clients and thereby promote broader public interests in the observance of law and

administration of justice." *United States v. Zolin*, 491 U.S. 554, 562 (1989) (quoting *Upjohn*, 449

U.S. at 389). However, "the privilege can be overridden if the client used the lawyer's services to

further a continuing or future crime or fraud." *In re Grand Jury Investigation*, 445 F.3d 266, 274

(3d Cir. 2006) (internal citations omitted). Known as the "crime-fraud" exception, the burden of

proof falls on the party seeking application of the exception. *Id.* This requires:

> a *prima facie* showing that (1) the client was committing or intending to commit a fraud or crime, and (2) the attorney-client communications were in furtherance of that alleged crime or fraud. A "prima facie showing" requires presentation of "evidence which, if believed by the fact-finder, would be sufficient to support a finding that the elements of the crime-fraud exception were met.

*Id.* (internal citations omitted). "Typically, application of the crime-fraud exception begins with

'presentation of the factual basis for a good faith belief that the exception would apply,' followed

by 'in camera evaluation of the material by the court,' and the provision of an opportunity to be

heard to the party opposed to disclosure." *In re Neurontin Antitrust Litig.*, 801 F. Supp. 2d 304,

307 (D.N.J. 2011) (quoting *Prudential Ins. Co. of Am. v. Massaro*, 47 F. App'x 618, 619 (3d Cir.

2002)). However, it is well-settled law that, even if the Court determines that an *in camera* review

is warranted based upon an assertion of the crime-fraud exception, it does not necessarily follow

that production of the reviewed documents to the requesting party is automatically warranted. *See*

*Zolin*, 491 U.S. at 572 (holding "that a lesser evidentiary showing is needed to trigger *in camera*

review than is required ultimately to overcome the privilege"); *Wachtel v. Guardian Life Ins. Co.*,

239 F.R.D. 376, 379 (D.N.J. 2006) (holding that the standard for overcoming a privilege shielding

documents from production is high, whereas the burden to make a *prima facie* showing for the

crime-fraud exception is not particularly heavy).

## ANALYSIS

In the instant Motion, Relator challenges the Special Master's conclusion, after conducting

an *in camera* review of 50 documents, that there was nothing in those documents evincing that the

crime-fraud exception applied. (ECF No. 424). Relator provides no argument as to why the Special

Master's conclusion was erroneous and warrants a secondary review by the Court. (*Id.*). Instead,

the entirety of Relator's Motion focuses on why Relator has made a *prima facie* showing that an *in camera* review of the privileged documents is warranted. (*Id.*). However, that can already be assumed by virtue of the fact that the Court has already ordered the requested review. The Court effectively granted Relator's request, over the objection of Defendants, to conduct the *in camera* review and Relator's arguments in this regard are therefore moot.

Relator appears to be under the misimpression that, simply by asserting a *prima facie* case that the crime-fraud exception *may* apply (which the Court assumes solely for purposes of the instant Motion), he is automatically entitled to *production* of the documents in question. (ECF No. 424-1 at 14) ("The Third Circuit's decision in *In re Abbott* compels the production of communications questioning the viability of the '438 patent"). This misstates the holding in *Abbott*. *See* 96 F.4th 371 (3d Cir. 2004). *Abbott* does not stand for the proposition that, once a determination is made that the crime-fraud exception may apply, all of the withheld documents should automatically be turned over. Rather, in *Abbott*, the District Court ordered the *in camera* review of 100 documents to determine whether they were subject to disclosure under the crime-fraud exception. *Id.* at 377. Following this review, the Court ordered only 19 of those documents to be produced, because those specific documents evidenced the furtherance of a fraud by the attorneys. *Id.* at 378. This is precisely what happened in the instant matter except that, following the *in camera* review, the Special Master concluded that none of the documents contained evidence that the crime-fraud exception applies. (ECF No. 422).

Although Relator offered not a single reason why Judge Arpert's review was insufficient, he nevertheless asks this Court to do a secondary, independent review of the same 50 documents, because perhaps the undersigned will reach a different outcome. A second bite at the apple is not, however, a sound basis for objecting to the Special Master's decision. If that were the case, then

every decision the Special Master entered would be subject to review simply because a party disagreed with the outcome, which would completely undermine the purpose of Fed. R. Civ. P. 53 and the appointment of the Special Master.

Regardless, the undersigned conducted an independent and *de novo* review of the 50 documents to ascertain whether any contained evidence that the crime-fraud exception applied under any of the theories advanced in Relator's moving papers. The Court wholly agrees with the Special Master's conclusion that none of the documents contain evidence that the crime-fraud exception applies. Namely, they do not demonstrate that Defendants or their attorneys were engaged in or intending to commit a fraud or crime, or that attorney-client communications were being misused in furtherance of a fraud or crime. The Court will not elaborate further as to do so would be to violate the sanctity of the privilege.

## **CONCLUSION**

For the foregoing reasons, Relator's Motion is **DENIED**, and the Special Master's Order stands.

Dated: September 22, 2025

s/ *Stacey D. Adams*
Hon. Stacey D. Adams
United States Magistrate Judge